ELECTRONICALLY FILED

Christopher K. Tahbaz
Jennifer R. Cowan
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Tel. (212) 909-6000
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

INNA GUDAVADZE, LIANA ZHMOTOVA and IYA
PATARKATSISHVILI,

                              Plaintiffs,

v.

JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI, A/K/A
JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI, A/K/A
IOSEB KAKIASHVILI) AND EMANUEL ZELTSER,

                              Defendants.

------------------------------------------------------------------ x

: 08-civ-3363 (RJS)

: VERIFIED
: COMPLAINT

       Plaintiffs Inna Gudavadze, Liana Zhmotova and Iya Patarkatsishvili (collectively

"Plaintiffs"), by their attorneys Debevoise & Plimpton LLP, for their Complaint against

Defendants Joseph Kay (a/k/a Joseph Kakalashvili, a/k/a Joseph Kej, a/k/a Ioseb

Kakalashvili, a/k/a Ioseb Kakiashvili) and Emanuel Zeltser, allege as follows:

## NATURE OF THE ACTION

      1.    Plaintiffs are the widow and daughters of Arkady (Badri) Patarkatsishvili,

who died unexpectedly on February 12, 2008. They are among the primary beneficiaries

of Mr. Patarkatsishvili's estate, and they are currently in the process of applying for

letters of administration for the estate in the United Kingdom, where they reside and where a portion of Mr. Patarkatsishvili's assets are found.

2.     By this action, Plaintiffs seek to prevent Defendants, citizens and residents of New York, from interfering with Plaintiffs' efforts to ensure the lawful distribution of Mr. Patarkatsishvili's assets and the orderly administration of Mr. Patarkatsishvili's estate under the supervision of a court of competent jurisdiction.  Defendants have engaged in such interference by, among other things, misrepresenting their authority to speak or act on behalf of Mr. Patarkatsishvili and his estate and using invalid or fraudulent documents to assert control over assets that Mr. Patarkatsishvili owned or in which he otherwise had an interest.  Defendants' misconduct began within days of Mr. Patarkatsishvili's death, intended, upon information and belief, to take advantage of the period of time preceding judicial appointment of an administrator and Plaintiffs' grief and shock at suddenly losing their husband and father.

3.     Mr. Patarkatsishvili was the beneficial owner of substantial assets throughout the world.  Although Plaintiffs are still in the process of inventorying and valuing Mr. Patarkatsishvili's estate, upon information and belief it is worth well over $1 billion.

4.     Defendant Kay was Mr. Patarkatsishvili's half-cousin, and upon information and belief, he managed certain of Mr. Patarkatsishvili's assets during Mr. Patarkatsishvili's life.  Defendant Zeltser has claimed that he acted as Mr. Patarkatsishvili's attorney and that he represents Mr. Patarkatsishvili's estate.  He also recently advised Plaintiffs that he represents Defendant Kay.  Both Defendants are

2

citizens and residents of New York State, and, according to official New York State records, Defendant Zeltser is a lawyer licensed by New York State with his place of business in Manhattan.

5.      Upon information and belief, since Mr. Patarkatsishvili's untimely death, Defendants have exploited his demise by, among other things, approaching his business associates throughout the world and, relying on invalid and fraudulent documents allegedly executed in New York, demanding information about and control over Mr. Patarkatsishvili's assets.

6.      Indeed, upon information and belief, working in concert with Defendant Zeltser, Defendant Kay has already succeeded in gaining control over Imedi Television ("Imedi TV"), a broadcast television station located in the country of Georgia and a valuable asset in which Mr. Patarkatsishvili beneficially owned the majority interest at the time of his death.  Upon  information and belief, Defendant Kay gained control of Imedi TV by misrepresenting his legal authority to act on behalf of Mr. Patarkatsishvili and his estate and by relying on documents which he obtained from Defendant Zeltser and which both Defendants knew to be fraudulent and invalid.

7.      Defendant Kay has represented himself as the executor of Mr. Patarkatsishvili's estate even though, upon information and belief, he has not filed for letters of administration, probate of any will, letters testamentary or a similar grant of authority in any court.

8.    Defendants have also refused to provide Plaintiffs or their attorneys with copies of the documents that they claim authorize them to act as representatives of Mr. Patarkatsishvili and his estate.

9.    To prevent the Defendants, who are citizens and residents of New York State, from further interfering with the orderly administration of Mr. Patarkatsishvili's estate, and to prevent Defendants from misappropriating any assets that rightly should pass to Mr. Patarkatsishvili's heirs, by this action Plaintiffs seek the following:

a)    a declaratory judgment that neither Defendant is authorized to act or speak on behalf of Plaintiffs or as a representative of Mr. Patarkatsishvili or his estate, unless and until a court of competent jurisdiction finds to the contrary;

b)    a declaratory judgment that neither the "Deed of Appointment of Executor" nor the "Letter of Wishes," nor any other document that Defendants have been using in an attempt to gain control over Mr. Patarkatsishvili's assets, empowers Defendant Kay to act as the executor of Mr. Patarkatsishvili's estate or in any other representative capacity unless and until a court of competent of jurisdiction finds to the contrary;

c)    a declaratory judgment that, as a matter of law, the "Power of Attorney" that Defendant Zeltser has used in an attempt to assert control over Mr. Patarkatsishvili's assets became invalid at the time of Mr. Patarkatsishvili's death (regardless of whether it was valid during his life);

d)      an order compelling Defendants to produce to Plaintiffs, for inspection, the original, signed versions of all documents that they claim provide them with authority to control assets in which Mr. Patarkatsishvili had an interest and/or to serve as representatives of Mr. Patarkatsishvili's estate;

e)      an order compelling Defendants to hold in constructive trust any assets in which Mr. Patarkatsishvili held a beneficial interest and over which Defendants, or either of them, exercises control or dominion, as well as any income that they may have received from such assets and any proceeds that they may have realized from any sale of such assets;

f)      an order compelling Defendants to account to Plaintiffs for any assets in which Mr. Patarkatsishvili held a beneficial interest and over which Defendants, or either of them, exercises control or dominion, as well as any income that they may have received from such assets and any proceeds that they may have realized from any sale of such assets; and

g)      damages for any harm caused by Defendants' conduct, as well as costs, expenses and attorneys' fees incurred in prosecuting this action.

## PARTIES

10.      Inna Gudavadze is a citizen of the Russian Federation currently resident in England and Wales.  She is the widow of Mr. Patarkatsishvili.

11.     Liana Zhmotova and Iya Patarkatsishvili are both citizens of the Russian Federation currently resident in England and Wales.  They are the daughters of Mr. Patarkatsishvili and Mrs. Gudavadze.

12.     Upon information and belief, Defendant Kay is a United States citizen residing at 6 Wright Drive, Dix Hills, New York 11746.  Kay was a half-cousin and a business associate of Mr. Patarkatsishvili.

13.     Upon information and belief, Defendant Zeltser is a United States citizen residing at 235 W. 76th Street, New York, New York 10023.  According to the New York State Office of Court Administration attorney registration database, Mr. Zeltser is an attorney licensed to practice in New York State; his business address is 119 West 72nd Street, #229, New York, New York 10023.

14.     Badri Patarkatsishvili was a citizen of the country of Georgia domiciled in the country of Georgia at the time of his death.  Upon information and belief, Mr. Patarkatsishvili did not leave a will or other valid direction to govern the disposition of his assets.

15.     Because Mr. Patarkatsishvili was a citizen of and domiciled in Georgia, and because he died without a will, under the law of England and Wales (where Plaintiffs will soon be applying for letters of administration), Georgian law determines the devolution of all moveable assets in Mr. Patarkatsishvili's estate, devolution of immovable assets being governed by the law of the situs of those assets.  Under Georgian law, the surviving spouse has a pre-existing community property ownership interest in half of the assets acquired during the marriage (which do not pass through the estate), and

the first degree heirs (the spouse, children and parents) of an individual who dies intestate are the beneficiaries of the estate.

16.    Under Georgian law, therefore, Mrs. Gudavadze is entitled to 50% of the assets acquired since the date of her marriage to Mr. Patarkatsishvili in 1979 (excluding assets obtained by Mr. Patarkatsishvili as an inheritance or a gift) as the surviving co-owner of those assets. In addition, under Georgian law, Plaintiffs collectively are entitled to another 30% of the assets acquired during the marriage and 60% of all other assets in Mr. Patarkatsishvili's estate. As heirs and beneficiaries of his estate (and, in the case of Mrs. Gudavadze, as the surviving co-owner of property in which she had a common interest with Mr. Patarkatsishvili), Plaintiffs are being harmed by the misconduct of Defendants. (Hereinafter the word "heirs" is defined to encompass Mrs. Gudavadze as a surviving co-owner of community property as well as an heir.)

## JURISIDICTION AND VENUE

17.    This action arises under the laws of the State of New York.

18.    Because Plaintiffs are citizens of the Russian Federation, who all currently are resident in England and Wales, and Defendants are citizens of New York, and the value in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. § 1332(a)(2). Personal jurisdiction is proper by virtue of Defendants' residences in New York and by virtue of Defendant Zeltser conducting business in New York.

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2).

20.    The Court may enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

Mr. Patarkatsishvili's Global Business Interests

21.    Mr. Patarkatsishvili was a businessman and investor with business interests throughout the world, including interests in a number of assets located in Georgia.

22.    Upon information and belief, Mr. Patarkatsishvili was the beneficial owner of assets managed or held by Defendant Kay.  In addition, upon information and belief, Mr. Patarkatsishvili may have jointly owned certain assets with Defendant Kay.

Mr. Patarkatsishvili's Untimely Death

23.    On February 12, 2008, Mr. Patarkatsishvili suffered a heart attack and died unexpectedly outside of London, where he and his family had been staying.

The Unlawful Conduct Of Defendants

24.    Within days of Mr. Patarkatsishvili's death, Defendants began to assert to Plaintiffs and others that they had exclusive authority to act on behalf of Mr. Patarkatsishvili's estate, and that Defendant Zeltser had a will and other documents through which Mr. Patarkatsishvili allegedly had expressed his wishes for the administration of his estate and distribution of his assets.  Upon information and belief, Defendants made these assertions knowing that they were untrue and without basis, and

knowing that the documents on which they were relying were fraudulent or otherwise invalid.

25.     On or about February 14, 2008 – two days after Mr. Patarkatsishvili's death – Defendants visited Plaintiffs at their home outside of London.  Defendant Zeltser told Mrs. Gudavadze that he had acted as her husband's attorney, and that he had possession of her husband's will.  He also told Mrs. Gudavadze that her husband had appointed Defendant Kay as the executor of his estate.

26.     Upon information and belief, Defendant Zeltser made these assertions knowing that they were untrue and without basis, and knowing that the documents on which he was relying were fraudulent or otherwise invalid.

27.     On or about February 15, 2008, Defendants visited the London offices of Salford Capital Partners Inc. ("Salford"), a private equity firm that managed some of Mr. Patarkatsishvili's investments.  During this visit, Defendant Kay told Salford representatives that, in the wake of Mr. Patarkatsishvili's death, he effectively stood in Mr. Patarkatsishvili's shoes and that Salford should treat him accordingly, and he demanded information about Mr. Patarkatsishvili's accounts.  Upon information and belief, Defendant Kay made these assertions knowing that they were untrue and without basis.

28.     When Salford representatives demanded to see proof of Defendants' authority to act on behalf of Mr. Patarkatsishvili, Defendant Zeltser showed the Salford representatives a document titled General Durable Power of Attorney, attached hereto as Exhibit A (hereinafter "Power of Attorney").

29.     Upon information and belief, Defendant Zeltser did this knowing that the "Power of Attorney" was fraudulent, expired upon Mr. Patarkatsishvili's death, or was otherwise invalid.

30.     Defendant Zeltser did not at this time provide the Salford representatives with a copy of the "Power of Attorney."  Instead, Defendant Zeltser only allowed the Salford representatives to view the document on the screen of his laptop computer.

31.     Also on or about February 15, 2008, Defendant Zeltser spoke with Nicholas Keeling, a director of Mainstay Trust Limited in Gibraltar, an entity through which Mr. Patarkatsishvili, among others, had made investments managed by Salford. Defendant Zeltser made to Mr. Keeling the same demand for information that Defendant Kay had previously made to the Salford representatives.

32.     Mr. Keeling and his solicitor also refused to provide any information to Defendants unless they could provide satisfactory evidence of their authority to act on behalf of Mr. Patarkatsishvili.  Upon information and belief, in response, Defendant Zeltser later emailed Mr. Keeling and his solicitor the "Power of Attorney."

33.     On or about February 17, 2008, Defendant Zeltser wrote to Mr. Keeling. A copy of that letter is attached hereto as Exhibit B.   Defendant Zeltser identified himself as counsel for Mr. Patarkatsishvili and for his estate.  He requested:

> any and all information, documents and records in your custody or within your control or power to obtain concerning Mr. Patarkatsishvili and any of his financial and business interests, whether held in his own name or through or in conjunction with any third party or parties, directly or indirectly, overtly or covertly or through any nominee (legal entity or physical person), in which you know or have a reason to believe Mr.

10

Patarkatsishvili had interest or business or other involvement, no matter how small, or was a shadow director or a principal *de facto.*

34.    Upon information and belief, Defendant Zeltser fraudulently misrepresented that the requested information was needed so that Defendant Zeltser could assist law enforcement authorities in their investigation of Mr. Patarkatsishvili's death.

35.    Upon information and belief, Defendant Zeltser made these assertions knowing that they were untrue and without basis, and, upon information and belief, knowing that the "Power of Attorney" on which he was relying was fraudulent or otherwise invalid.

36.    Mr. Keeling's solicitor, Michael Lindley, advised Defendant Zeltser that Mainstay could not release information to Defendants based on the "Power of Attorney." As Mr. Lindley stated in an email to Defendant Zeltser on February 19, 2008, "I have been advised that, as a matter of New York Law, the Power of Attorney on which you purport to rely is not, and may never have been, valid.  In the circumstances it is clearly not appropriate for either my client or me, or indeed any other party, to provide you with any information or documents which may in any way relate to Mr. Patarkatsishvili's affairs."  This email, as well as related emails with Defendant Zeltser, is attached hereto as Exhibit C.

37.    Upon information and belief, Salford similarly declined to provide information to Defendants based on the "Power of Attorney."

38.    The "Power of Attorney" appears to have been acknowledged before a New York-licensed notary public, and the geographical authority of a New York notary is limited to New York State.  If the signature is authentic, it appears to have been executed in New York State.  The language of the "Power of Attorney" also appears to be a modification of the New York statutory language for a durable general power of attorney in N.Y. General Obligation Law § 5-1501.  Therefore, if authentic, the "Power of Attorney" is subject to interpretation pursuant to New York State law.

39.    Under New York law,  the "Power of Attorney" terminated upon the death of the principal, Badri Patarkatsishvili.  This is so despite the fact that the "Power of Attorney" claims on its face that "This Power of Attorney . . . shall not be affected by my subsequent death, disability or incompetence." (emphasis in the original).

40.    On or about February 20, 2008, Defendant Kay met with Mrs. Gudavadze, Michelle Duncan, a lawyer with Cadwalader, Wickersham & Taft LLP in London who then represented Mrs. Gudavadze, and others at Mrs. Gudavadze's home outside London. Ms. Duncan asked Defendant Kay questions about the documents related to Mr. Patarkatsishvili's estate.  Defendant Kay said that he did not know where the will was but agreed that it should be produced.  When Ms. Duncan asked him about his relationship with Mr. Zeltser, he became confrontational and would not answer her questions.

41.    Ms. Duncan asked Defendant Kay to put her in contact with Defendant Zeltser and asked him for assistance in obtaining from Defendant Zeltser copies of Mr. Patarkatsishvili's will and other documents.  Defendant Kay said he could only ask

Defendant Zeltser to meet with Ms. Duncan, and that he could not ask him to provide copies of the documents.

42.    Mrs. Gudavadze asked Defendant Kay for assistance in identifying Mr. Patarkatsishvili's assets and explained that she was making similar requests of many business associates of her husband.  Defendant Kay agreed to assist and said he would call Ms. Duncan either late that day or the next day to set up a meeting.

43.    On or about February 20, 2008, Defendant Zeltser telephoned Ms. Duncan.  She told him that the "Power of Attorney" had become ineffective at the time of Mr. Patarkatsishvili's death.  Upon information and belief, Defendant Zeltser disagreed and maintained that the "Power of Attorney" remained valid but that regardless, he was also acting pursuant to many other documents in his possession, including a will of Mr. Patarkatsishvili dated November 14, 2007, which named Defendant Kay as executor with broad powers.

44.    Upon information and belief, Defendant Zeltser knew these assertions to be untrue and without basis and that the referenced documents were fraudulent or otherwise invalid.

45.    During that conversation, Ms. Duncan requested that Defendant Zeltser provide her with copies of any documents in his possession related to Mr. Patarkatsishvili's estate.  Defendant Zeltser refused.

46.    Ms. Duncan and Defendant Zeltser agreed to meet on February 22, 2008 in New York.  At Defendant Zeltser's subsequent request, the meeting was moved to February 24, 2008.

47.     On or about February 22, 2008, Ms. Duncan telephoned Defendant Kay to schedule a meeting so that Defendant Kay could help identify assets to which Mr. Patarkatsishvili was connected, as had been agreed at the February 20 meeting.

48.     Upon information and belief, Defendant Kay told Ms. Duncan that she should communicate with him only through his personal attorney, Defendant Zeltser.

49.     On or about February 24, 2008, Ms. Duncan, Defendant Zeltser and others met at the Buddha Bar, 25 Little West 12th Street, New York, New York.

50.     During that meeting, Defendant Zeltser showed Ms. Duncan, on his computer screen, images of documents related to Mr. Patarkatsishvili including a "Letter of Wishes," which was several pages long, and a one-page "Deed of Appointment of Executor."  Both of these documents were purportedly signed by Mr. Patarkatsishvili in New York on November 14, 2007.

51.     Upon information and belief, although Mr. Patarkatsishvili was in New York City on November 14, 2007, he arrived in the late evening and then had dinner with friends and business associates until early in the morning of November 15.  Upon information and belief, he did not meet with Defendant Zeltser on that day nor did he sign any documents in Defendant Zeltser's presence on that day.

52.     During her February 24, 2008 meeting with Defendant Zeltser, Ms. Duncan asked him for copies of the documents displayed on his computer screen.  Upon information and belief, he said he would send them later that evening or the following day.

53.     Defendant Zeltser failed to send copies of the documents as promised. Ms. Duncan repeated her request for these documents in writing on or about February 25 and February 27, 2008.  Defendant Zeltser failed again to provide her with copies of these documents.

54.     On or about March 5, 2008, Defendant Zeltser met with Mrs. Gudavadze, Ms. Duncan and others at the Four Seasons Hotel in London.  Ms. Duncan and Mrs. Gudavadze again raised with Defendant Zeltser questions about the documents related to Mr. Patarkatsishvili's estate and asked Defendant Zeltser to provide them with copies of the documents.  Defendant Zeltser avoided answering the questions and made various excuses about why he would not produce the documents.

55.     On or about March 7, 2008, Plaintiffs and other members of their family met with Defendant Kay in Tbilisi, Georgia and asked him for copies of the documents that supported his claims of being the executor of Mr. Patarkatsishvili's estate and having authority to speak and act on behalf of Mr. Patarkatsishvili and the estate.  Defendant Kay refused to provide the documents, and he claimed that Defendant Zeltser had the documents.

56.     On March 10, 2008, Peter Goldsmith of Debevoise & Plimpton LLP in London, who had been engaged recently to act as counsel to Mrs. Gudavadze, wrote to Defendant Zeltser (in Defendant Zeltser's capacity as counsel for Defendant Kay) and requested copies of the relevant documents: "[I]f Mr. Kay believes he has documentation establishing that he in fact has authority to speak on behalf of Mr. Patarkatsishvili in any

capacity, notwithstanding our belief to the contrary, we would request that you provide us with copies of that documentation as soon as possible."

57.    On March 10, 2008, Defendant Zeltser responded by email and refused to provide copies of the documents: "The documents expressing Badri's wishes, vested in us as his counsel, are being disclosed in due course to proper bodies in such jurisdictions as are appropriate and in strict accordance with our client's final instructions."  Upon information and belief, Defendant Zeltser made this assertion knowing that the documents to which he referred were fraudulent or otherwise invalid.

Defendants' Misappropriation of Imedi TV

58.    Although, as described above, Defendants failed to obtain information about Mr. Patarkatsishvili's investments from Salford or Mainstay, Defendants had better luck obtaining control over Imedi TV.

59.    Upon information and belief, Mr. Patarkatsishvili owned a controlling interest in Imedi TV through beneficial ownership of shares in a parent company, JSC JMG Consulting Ltd.  Also upon information and belief, most of Mr. Patarkatsishvili's shares in JSC JMG Consulting Ltd. were held for his benefit by Giorgi Jaoshvili, a business associate in Georgia.

60.    Upon information and belief, Defendants together agreed to effect the improper transfer of shares of JSC JMG Consulting Ltd. from the estate of Mr. Patarkatsishvili to Defendant Kay.  Upon information and belief, Defendants knew that

this transfer would harm Mr. Patarkatsishvili's heirs and beneficiaries, including Plaintiffs.

61.     Upon information and belief, on or about February 19, 2008 – just one week after Mr. Patarkatsishvili's unexpected death – Defendant Kay approached Mr. Jaoshvili and, relying on documents including one described as a power of attorney, directed him to transfer the shares in JSC JMG Consulting Ltd. which Mr. Jaoshvili held beneficially for Mr. Patarkatsishvili.  Also upon information and belief, Mr. Jaoshvili complied with this direction.

62.     Upon information and belief, Defendant Kay effected this transfer by relying on documents which he obtained from Defendant Zeltser and which both Defendants knew to be fraudulent or otherwise invalid.

63.     Plaintiffs have demanded that Defendant Kay transfer to them the shares in JSC JMG Consulting Ltd., because they do not belong to Mr. Kay; half belong to Mrs. Gudavadze (being matrimonial property) and Mr. Patarkatsishvili's half devolve to his heirs.  Defendant Kay has refused to do that.

64.     Instead, Defendant Kay has proclaimed in public statements reported by the media that he purchased his shares in JSC JMG Consulting Ltd. for an undisclosed price.  For example, according to the Russian newspaper Kommersant on March 27, 2008, Defendant Kay claimed in an interview that he purchased the shares "legally" but that the amount he paid was "a commercial secret."

65.     As a result of Defendants' misconduct, Defendant Kay appears to control Imedi TV, rather than Mr. Patarkatsishvili's heirs or his estate.  This occurred even

though Defendant Kay has produced no documentation to Plaintiffs or to any authorized representative of Mr. Patarkatsishvili's estate demonstrating that this was Mr. Patarkatsishvili's desire.

The Arrest of Defendant Zeltser

66.     On March 3, 2008, Ms. Duncan (who was then still acting as Mrs. Gudavadze's counsel) wrote to the Prosecutor General of Belarus to notify him that Mr. Patarkatsishvili might have had substantial assets in Belarus, and that Defendants and certain associates might improperly attempt to gain control over those assets.

67.     Upon information and belief, on or about March 12, 2008, Defendant Zeltser was arrested in Minsk, Belarus on a charge of attempting to use fraudulent documents to obtain control over assets in which Mr. Patarkatsishvili had an interest.

68.     Upon information and belief, on or about March 28, 2008, Defendant Zeltser was charged by prosecutors in Belarus with attempting to defraud Mr. Patarkatsishvili's estate through the use of forged documents.

Harm To Plaintiffs

69.     Because of Defendants' misconduct, Defendant Kay – and not Mr. Patarkatsishvili's heirs or estate – appears currently to have control of Imedi TV.

70.     In addition, Defendants' misrepresentations and illegitimate demands to Mr. Patarkatsishvili's business associates have complicated Plaintiffs' efforts to inventory Mr. Patarkatsishvili's assets and begin administration of Mr. Patarkatsishvili's estate.

71.    Plaintiffs continue to be injured by Defendants' ongoing misrepresentations and will be irreparably harmed if Defendants continue fraudulently to represent that they are authorized to speak and act on behalf of Plaintiffs or the estate of Mr. Patarkatsishvili.

72.    Because the relevant assets are located throughout the world, it will be difficult, if not impossible, to value the harm caused by Defendants and to obtain monetary damages to remedy that harm.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

73.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74.    Plaintiffs request that the Court issue a declaratory judgment determining that:

(a)    Neither Defendant is authorized to act or speak on behalf of Plaintiffs or as a representative of Mr. Patarkatsishvili or his estate, unless and until a court of competent jurisdiction finds to the contrary;

(b)    Neither the "Deed of Appointment of Executor" nor the "Letter of Wishes," nor any other document that Defendants have been using in an attempt to gain control over Mr. Patarkatsishvili's assets, empowers Defendant Kay to act as the executor of Mr. Patarkatsishvili's estate or in any other representative capacity unless and until a court of competent of jurisdiction finds to the contrary; and

(c)    As a matter of law, the "Power of Attorney" that Defendant Zeltser has used in an attempt to assert control over Mr. Patarkatsishvili's assets became invalid at the time of Mr. Patarkatsishvili's death (regardless of whether it was valid during his life).

## SECOND CAUSE OF ACTION
### (Fraud Against Defendant Kay)

75.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76.     Upon information and belief, Defendant Kay gained control of a controlling interest in Imedi TV, which had been beneficially owned by Mr. Patarkatsishvili, by working in concert with Defendant Zeltser.  Upon information and belief, Defendant Kay intentionally misrepresented his legal authority to act on behalf of Mr. Patarkatsishvili and his estate, in part by relying on documents that Defendant Kay obtained from Defendant Zeltser that both Defendants knew to be fraudulent or invalid. On information and belief, Defendant Kay engaged in these misrepresentations with the intent that Giorgi Jaoshvili would rely upon them.

77.     Upon information and belief, in transferring the shares in JSC JMG Consulting Ltd. that Mr. Jaoshvili held beneficially for Mr. Patarkatsishvili, Mr. Jaoshvili relied on Defendant Kay's misrepresentations and the fraudulent or invalid documents that Defendant Kay obtained from Defendant Zeltser.

78.     Plaintiffs have been and continue to be damaged as a result of Defendant Kay's fraud.

## THIRD CAUSE OF ACTION
### (Conspiracy To Defraud)

79.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80.     Upon information and belief, Defendants together agreed to effect the improper transfer of shares of JSC JMG Consulting Ltd., a parent company of Imedi TV, from the estate of Mr. Patarkatsishvili to Defendant Kay.

81.     Upon information and belief, Defendants knew that this transfer would harm Mr. Patarkatsishvili's heirs and beneficiaries, including Plaintiffs.

82.     Upon information and belief, Defendant Kay gained control of the shares of JSC JMG Consulting Ltd., which had been beneficially owned by Mr. Patarkatsishvili, by intentionally misrepresenting his legal authority to act on behalf of Mr. Patarkatsishvili and his estate, in part by relying on documents that Defendant Kay obtained from Defendant Zeltser that both Defendants knew to be fraudulent or invalid. On information and belief, Defendants engaged in this misconduct with the intent that Giorgi Jaoshvili would rely upon it, and Mr. Jaoshvili did so rely in transferring the shares.

83.     Plaintiffs have been harmed by Defendants' conspiracy to defraud.

## FOURTH CAUSE OF ACTION
### (Constructive Trust)

84.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 83 of the Complaint as if fully set forth herein.

85.     Defendant Kay's business relationship with Mr. Patarkatsishvili was a relationship of trust and confidence and as a result, Defendant Kay owed a fiduciary duty to Mr. Patarkatsishvili.

86.    In connection with that relationship, upon information and belief, Mr. Patarkatsishvili entrusted money and/or property to Defendant Kay.

87.    Defendant Kay has unjustly enriched himself by gaining control over most of the interest in Imedi TV beneficially owned by Mr. Patarkatsishvili, by working in concert with Defendant Zeltser to intentionally misrepresent Defendant Kay's legal authority to act on behalf of Mr. Patarkatsishvili and his estate, and by relying on documents that Defendant Kay obtained from Defendant Zeltser that both Defendants knew to be fraudulent or invalid.

88.    Defendants have attempted to unjustly enrich themselves by exercising dominion and control over assets which they or others held for the benefit of Mr. Patarkatsishvili.

89.    Imposition of a constructive trust is needed to ensure that assets in which Mr. Patarkatsishvili had an interest are properly included within his estate and distributed to his heirs and beneficiaries including Plaintiffs.

## FIFTH CAUSE OF ACTION
### (Accounting)

90.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 89 of the Complaint as if fully set forth herein.

91.    Defendant Kay's business relationship with Mr. Patarkatsishvili was a relationship of trust and confidence and as a result, Defendant Kay owed a fiduciary duty to Mr. Patarkatsishvili.

92.     In connection with that relationship, upon information and belief, Mr. Patarkatsishvili entrusted money and/or property to Defendant Kay.

93.     Working together, and knowingly misrepresenting their authority to act on behalf of Mr. Patarkatsishvili or his estate and relying on fraudulent or invalid documents, Defendants have obtained property which belonged to Mr. Patarkatsishvili and attempted to obtain control over other property which should properly belong to his heirs and beneficiaries.

94.     An accounting is necessary to ascertain what money and/or property within the control or dominion of Defendants was being held by them for the benefit of Mr. Patarkatsishvili or was obtained as a result of Defendants' misconduct.

95.     Due to the ownership structure and locations of Mr. Patarkatsishvili's assets, monetary damages will not be a sufficient remedy and an accounting is needed.

## JURY DEMAND

96.     Plaintiffs elect a trial by jury for each and every count in this Complaint triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(i)     Issue a declaratory judgment determining that:

(a)     Neither Defendant is authorized to act or speak on behalf of Plaintiffs or as a representative of Mr. Patarkatsishvili or his estate, unless and until a court of competent jurisdiction finds to the contrary;

23

(b)    Neither the "Deed of Appointment of Executor," nor the "Letter of Wishes," nor any other document that Defendants have been using in an attempt to gain control over Mr. Patarkatsishvili's assets, empowers Defendant Kay to act as the executor of Mr. Patarkatsishvili's estate or in any other representative capacity unless and until a court of competent of jurisdiction finds to the contrary; and

(c)    As a matter of law, the "Power of Attorney" attached hereto as Exhibit A became invalid at the time of Mr. Patarkatsishvili's death (regardless of whether it was valid during his life);

(ii)    Preliminarily and permanently enjoin Defendants from claiming that:

(a)    either Defendant is authorized to act or speak on behalf of Plaintiffs or the estate of Mr. Patarkatsishvili, unless and until a court of competent jurisdiction finds to the contrary;

(b)    the "Deed of Appointment of Executor," the "Letter of Wishes" or any other document that Defendants have been using in an attempt to gain control over Mr. Patarkatsishvili's assets, empower Defendant Kay to act as the executor of Mr. Patarkatsishvili's estate or in any other representative capacity unless and until a court of competent of jurisdiction finds to the contrary; or

(c)    the "Power of Attorney" attached hereto as Exhibit A is valid notwithstanding Mr. Patarkatsishvili's death and permits Defendant Zeltser to act or speak on behalf of Mr. Patarkatsishvili or his estate;

(iii)    Order Defendants to produce to Plaintiffs, for inspection, the original, signed versions of all documents that they claim provide them with authority to control Mr. Patarkatsishvili's assets and/or to serve as representatives of Mr. Patarkatsishvili's estate;

(iv)    Impose on Defendants a constructive trust for the benefit of Mr. Patarkatsishvili's estate and heirs over any assets in which Mr. Patarkatsishvili held a beneficial interest and over which Defendants, or either of them, exercises control or

dominion, as well as any income they may have received from such assets and any proceeds that they may have realized from any sale of such assets;

(v)    Order Defendants to account to Plaintiffs for any assets in which Mr. Patarkatsishvili held a beneficial interest and over which Defendants, or either of them, exercises control or dominion, as well as any income that they may have received from such assets and any proceeds that they may have realized from any sale of such assets;

(vi)    Award damages for any harm caused by Defendants' conduct, as well as costs, expenses and attorneys' fees incurred in prosecuting this action; and

(vii)    Grant such other and further relief as the Court may deem appropriate.

Dated: New York, New York
       April 4, 2008

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

By:  /s/  Christopher K. Tahbaz
     Christopher K. Tahbaz
     Jennifer R. Cowan
     919 Third Avenue
     New York, New York  10022
     Tel. (212) 909-6000
     *Attorneys for Plaintiffs*

**VERIFICATION**

I, Inna Gudavadze, am one of the plaintiffs herein. I have read the foregoing Complaint and know its contents. The Complaint is true to the best of my own knowledge, except as to the matters alleged on information and belief. As to those matters, I believe them to be true.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Tblisi, Georgia, on April 3, 2008.

INNA GUDAVADZE