UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x    FILED ELECTRONICALLY

INNA GUDAVADZE, LIANA ZHMOTOVA and IYA    :
PATARKATSISHVILI,

                                                  :

                             Plaintiffs,    :

                                                      :

v.                                                          08-Civ-3363 (RJS)

                                                    :

JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI, A/K/A    :
JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI, A/K/A
IOSEB KAKIASHVILI) AND EMANUEL ZELTSER,    :

                                                  :

                             Defendants.    :

-------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE

                                  Christopher K. Tahbaz
                                  Jennifer R. Cowan
                                  DEBEVOISE & PLIMPTON LLP
                                  919 Third Avenue
                                  New York, New York  10022
                                  Tel. (212) 909-6000

                                  Attorneys for Plaintiffs

Dated: New York, New York
       April 21, 2008

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

    A.    The Parties ...........................................................................................2
        1.    Plaintiffs..................................................................................2
        2.    Defendants .............................................................................3

    B.    Within Three Days After Mr. Patarkatsishvili's Death, Defendants
        Misrepresent Their Authority And Fraudulently Attempt To Exercise
        Control Over Assets In London. ..........................................................4

    C.    Defendants Continue to Misrepresent Their Authority to Plaintiffs and
        Refuse to Provide Copes of the Alleged "Will" .......................................7
        1.    The February 20, 2008 Meeting...............................................7
        2.    The February 24, 2008 Meeting...............................................9
        3.    The February 27, 2008 Meetings............................................10
        4.    The March 5, 2008 Meeting...................................................11
        5.    The March 7, 2008 Meetings..................................................11
        6.    The March 10, 2008 Correspondence.......................................11

    D.    The "Deed of Appointment" and "Statement of Wishes" Appear To Be
        Fraudulent. .....................................................................................12

    E.    Defendants Misappropriate Imedi TV. .................................................12

    F.    The Arrest of Defendant Zeltser .........................................................13

LEGAL ARGUMENT...................................................................................................14

I.    An Order To Show Cause Is Necessary Due To The Continuing Harm From
    Defendants' Actions..............................................................................................14

II.    Plaintiffs Are Entitled To Preliminary Injunctive Relief.......................................15

    A.    Irreparable Harm ..............................................................................15

    B.    Plaintiffs Are Likely To Succeed On The Merits.................................16
        1.    Neither Defendant Is An Authorized Representative Of The Estate ........16
        2.    There Is Already Significant Evidence That The Documents On
            Which Defendants Rely Are Neither Authentic Nor Valid ......................17
            (a)    Mr. Patarkatsishvili Could Not Have Executed The
                  Documents As Defendants Claim...................................17

          (b)     False Documents Have Been Submitted In Several
                 Lawsuits Involving Defendant Zeltser.........................................18
                 (i)     Nord Service, Inc. v. Palter...............................................18
                 (ii)    Zeltser v. Inkombank ........................................................19
                 (iii)   Zeltser v. SARL Manager ................................................19

       3.     Even If Genuine, The Power Of Attorney Did Not Survive The
            Death Of Mr. Patarkatsishvili ....................................................20

       4.     Defendant Kay's Actions Suggest That He Is Acting Only For His
            Own Benefit, Not As Executor Of The Estate .........................21

C.     Plaintiffs Have Raised Serious Questions Regarding The Merits And The
       Balance Of Hardship Favors Plaintiffs ..................................................22

III.    Expedited Discovery Is Appropriate....................................................................23

A.     Expedited Discovery In An Action for Declaratory Judgment Is Permitted .........23

B.     The Specific Circumstances Here Warrant Expedited Discovery .......................23

C.     The Expedited Discovery Will Not Burden Or Prejudice To Defendants.............24

IV.    Expedited Briefing Schedule For Motion For Partial Summary Judgment Is
       Appropriate .............................................................................................................25

CONCLUSION.......................................................................................................................25

Plaintiffs Inna Gudavadze, Liana Zhmotova and Iya Patarkatsishvili (collectively "Plaintiffs"), by their attorneys Debevoise & Plimpton LLP, respectfully submit this memorandum of law in support of their application for an order to show cause seeking a preliminary injunction, expedited discovery and a briefing schedule for a motion for partial summary judgment in their action against Defendants Joseph Kay (a/k/a Joseph Kakalashvili, a/k/a Joseph Kej, a/k/a Ioseb Kakalashvili, a/k/a Ioseb Kakiashvili) and Emanuel Zeltser.

## PRELIMINARY STATEMENT

Plaintiffs are the widow and daughters of Arkady (Badri) Patarkatsishvili, a businessman and investor with business interests throughout the world who died unexpectedly on February 12, 2008. Defendants have exploited Mr. Patarkatsishvili's untimely death by misrepresenting themselves as authorized to act and speak on behalf of Mr. Patarkatsishvili and his estate, in part by relying on documents which appear to be fraudulent or otherwise invalid. Through these misrepresentations, Defendants have seized control of at least one asset properly included within Mr. Patarkatsishvili's estate, attempted to seize control of other assets, and significantly complicated Plaintiffs' efforts to effectively administer Mr. Patarkatsishvili's estate.

Although Defendant Kay has represented himself as the executor of Mr. Patarkatsishvili's estate, he has not produced documentation of his claim or filed for letters of administration or a similar grant of authority in any court. Despite repeated requests, both Defendants have refused to provide Plaintiffs or their attorneys with copies of the documents that they claim authorize them to act as Mr. Patarkatsishvili's representatives.

The only document of which Defendants have furnished a copy – a "power of attorney" – is invalid on its face because, in accordance with New York law (which governs the validity of the document) it cannot survive Mr. Patarkatsishvili's death. Further, the testamentary

documents that Defendants claim to possess could not have actually been signed on the date they purport to have been signed, for two eyewitnesses can testify that Mr. Patarkatsishvili was not available in New York to sign the documents at issue on the date in question.

Against this evolving factual backdrop involving assets all over the world, the confirmed use of an invalid document, the potential use of testamentary documents that appear to be fraudulent, and a New York resident who claims to be a fiduciary but who has not applied for letters of administration and who refuses to provide a copy of the alleged will to the beneficiaries − Plaintiffs apply to this Court for expedited relief in an attempt to maintain the status quo and facilitate the orderly and lawful administration of Mr. Patarkatsishvili's estate.

## **FACTUAL BACKGROUND**

### A.    **The Parties**

#### 1.    **Plaintiffs**

Plaintiffs are the widow and daughters of Badri Patarkatsishvili, who was the beneficial owner of substantial assets throughout the world, and was a citizen of the country of Georgia domiciled in Georgia at the time of his death.  Mr. Patarkatsishvili does not appear to have left a will or other valid direction to govern the disposition of his assets.  Although Plaintiffs are still in the process of inventorying and valuing Mr. Patarkatsishvili's estate, they believe that the estate is worth well over $1 billion.

Because Mr. Patarkatsishvili was a citizen of and domiciled in Georgia, and because he died without a will, under the law of England and Wales (where Plaintiffs have applied for letters of administration), Georgian law determines the disposition of all moveable assets in Mr. Patarkatsishvili's estate (disposition of immovable assets are governed by the law of the jurisdiction where they are located).

Under Georgian law, the surviving spouse has a pre-existing community property ownership interest in half of the assets acquired during the marriage (which do not pass through the estate), and the first degree heirs (the spouse, children and parents) of an individual who dies intestate are the beneficiaries of the estate.  Declaration of Lasha Birkaia, dated April 3, 2008, ("Birkaia Decl."), ¶¶ 7–8.

Under Georgian law, therefore, Mrs. Gudavadze is entitled to 50% of the assets acquired since the date of her marriage to Mr. Patarkatsishvili in 1979 (excluding assets obtained by Mr. Patarkatsishvili as an inheritance or a gift) as the surviving co-owner of those assets.  In addition, under Georgian law, Plaintiffs collectively are entitled to another 30% of the assets acquired during the marriage and 60% of all other assets in Mr. Patarkatsishvili's estate.  *Id.* ¶ 7.  As heirs and beneficiaries of Mr. Patarkatsishvili's estate (and, in the case of Mrs. Gudavadze, as the surviving co-owner of property in which she had a common interest with Mr. Patarkatsishvili), Plaintiffs are being harmed by the misconduct of Defendants. (Hereinafter the word "heirs" is defined to encompass Mrs. Gudavadze as a surviving co-owner of community property as well as an heir.)

### 2. Defendants

Defendant Kay was Mr. Patarkatsishvili's half-cousin.  Declaration of Inna Gudavadze, dated April 4, 2008, ("Gudavadze Decl.") ¶ 4.  During Mr. Patarkatsishvili's life, Defendant Kay managed and held certain assets of which Mr. Patarkatsishvili was the beneficial owner. Declaration of Paul Blyumkin, dated April 3, 2008, ("Blyumkin Decl.") ¶ 7.  In addition, Mr. Patarkatsishvili may have jointly owned certain assets with Defendant Kay.

Defendant Zeltser has claimed that he acted as Mr. Patarkatsishvili's attorney and that he represents Mr. Patarkatsishvili's estate.  Gudavadze Decl. ¶¶ 7, 8.  He also advised Plaintiffs that he represents Defendant Kay.  Declaration of Michelle Duncan dated April 19, 2008 ("Duncan

3

Decl.") ¶ 18.  Both Defendants are citizens and residents of New York State, and, according to official New York State records, Defendant Zeltser is a lawyer licensed by New York State with his place of business in Manhattan.

      **B.**    **Within Three Days After Mr. Patarkatsishvili's Death, Defendants Misrepresent Their Authority And Fraudulently Attempt To Exercise Control Over Assets In London**

On February 14, 2008 – two days after Mr. Patarkatsishvili's death – Defendants visited Plaintiffs at their home outside of London.  Gudavadze Decl. ¶ 6.  Defendant Zeltser told Mrs. Gudavadze that he had acted as her husband's attorney and that he had possession of her husband's will.  He also told Mrs. Gudavadze that her husband had appointed Defendant Kay as the executor of his estate.  *Id.* ¶ 7.  During this visit, Defendant Kay also represented to other people in Plaintiff's home that he was the sole executor of Mr. Patarkatsishvili's estate. Blyumkin Decl. ¶ 11.  Neither Defendant showed Mrs. Gudavadze or anyone else the alleged will or any document that purported to appoint Defendant Kay as the executor of Mr. Patarkatsishvili's estate.

During this visit, Defendant Zeltser also told Mrs. Gudavadze that her husband, Mr. Patarkatsishvili, had a fourteen-year-old son named David Patarkatsishvili by a Russian citizen named Olga Safonova.  Duncan Decl. ¶ 11.  Prior to this disclosure, Mrs. Gudavadze had no knowledge of Ms. Safonova or her son.  *Id.*

On the next day, February 15, 2008, Defendants visited the London offices of Salford Capital Partners Inc. ("Salford"), a private equity firm that managed some of Mr. Patarkatsishvili's investments.  Blyumkin Decl. ¶¶ 3, 5, 13.  During their meeting, Defendant Kay told Salford representatives that, in the wake of Mr. Patarkatsishvili's death, he effectively stood in Mr. Patarkatsishvili's shoes and that Salford should treat him accordingly, and he

demanded information about Mr. Patarkatsishvili's investments, including details about the structure and directors of the investment vehicles. *Id.* ¶¶ 13, 15.

When Salford representatives demanded to see proof of Defendants' authority to act on behalf of Mr. Patarkatsishvili, Defendant Zeltser showed the Salford representatives a document titled "General Durable Power of Attorney," attached to the Declaration of Jennifer R. Cowan ("Cowan Decl.") as Exhibit A (hereinafter "Power of Attorney"). Blyumkin Decl. ¶ 16. Defendant Zeltser did not at this time provide the Salford representatives with a copy of the "Power of Attorney." Instead, Defendant Zeltser only allowed the Salford representatives to view the document on the screen of his laptop computer. *Id.* ¶ 16. As would become evident in the coming days, Defendant Zeltser's standard practice was apparently not to provide copies of relevant documents to interested persons, but only, at most, to show images of those documents on his laptop computer.

Defendant Zeltser pressured the Salford representatives to release the documentation immediately and claimed that he needed it to submit to a New York court. *Id.* ¶ 17. Despite Defendants' repeated demands for information on Mr. Patarkatsishvili's investments, the Salford representatives refused to disclose any non-public information unless and until Defendants Kay and Zeltser had provided original, valid documentation establishing their authority to act for Mr. Patarkatsishvili. *Id.* ¶¶ 13-15, 18. Salford suggested that Defendants request information directly from the directors of the relevant investment companies. *Id.* ¶ 19.

Also on February 15, 2008, Defendant Zeltser spoke with Nicholas Keeling, a director of Mainstay Trust Limited in Gibraltar, an entity through which Mr. Patarkatsishvili, among others, had made investments managed by Salford. Defendant Zeltser demanded of Mr. Keeling the same information that Defendant Kay had previously demanded of the Salford representatives.

Mr. Keeling and his solicitor also refused to provide any information to Defendants unless they could provide satisfactory evidence of their authority to act on behalf of Mr. Patarkatsishvili. In response, Defendant Zeltser later emailed Mr. Keeling and his solicitor the "Power of Attorney." *See* Email correspondence dated February 15 through 20, 2008 from Emanuel Zeltser to Michael Lindley and Nick Keeling attached to the Cowan Decl. as Exhibit B.

On February 17, 2008, Defendant Zeltser wrote to Mr. Keeling. A copy of that letter is attached to the Cowan Declaration as Exhibit C. Defendant Zeltser identified himself as counsel for Mr. Patarkatsishvili and for his estate. He requested, "any and all information, documents and records in your custody or within your control or power to obtain concerning Mr. Patarkatsishvili and any of his financial and business interests." In the same letter, Defendant Zeltser also represented that the requested information was needed so that Defendant Zeltser could assist law enforcement authorities in their investigation of Mr. Patarkatsishvili's death. *See* Letter dated February 17, 2008 from Emanuel Zeltser to Nick Keeling, attached to the Cowan Decl. as Exhibit C.

After examining the "Power of Attorney," Mr. Keeling's solicitor, Michael Lindley, advised Defendant Zeltser that Mainstay could not release information to Defendants. As Mr. Lindley stated in an email to Defendant Zeltser, "*I have been advised that, as a matter of New York Law, the Power of Attorney on which you purport to rely is not, and may never have been, valid.* In the circumstances it is clearly not appropriate for either my client or me, or indeed any other party, to provide you with any information or documents which may in any way relate to Mr. Patarkatsishvili's affairs." Cowan Decl. Exh. B at 2 (emphasis added).

**C.    Defendants Continue to Misrepresent Their Authority to Plaintiffs and Refuse to Provide Copes of the Alleged "Will"**

**1.    The February 20, 2008 Meeting**

On February 20, 2008, Defendant Kay met with Mrs. Gudavadze, Michelle Duncan, a lawyer with Cadwalader, Wickersham & Taft LLP in London who then represented Mrs. Gudavadze, and others at Mrs. Gudavadze's home outside London.  Ms. Duncan asked Defendant Kay questions about the documents related to Mr. Patarkatsishvili's estate. Gudavadze Decl. ¶ 10; Duncan Decl. ¶ 4.  Defendant Kay said that he did not know where the will was but agreed that it should be produced.  When Ms. Duncan asked him about his relationship with Mr. Zeltser, he became confrontational and would not answer her questions. Gudavadze Decl. ¶ 11; Duncan Decl. ¶ 4.

Ms. Duncan asked Defendant Kay to put her in contact with Defendant Zeltser and asked him for assistance in obtaining from Defendant Zeltser copies of Mr. Patarkatsishvili's will and other documents.  Defendant Kay said he could only ask Defendant Zeltser to meet with Ms. Duncan, but he could not ask him to provide copies of the documents.  Gudavadze Decl. ¶ 12; Duncan Decl. ¶ 5.

Mrs. Gudavadze asked Defendant Kay for assistance in identifying Mr. Patarkatsishvili's assets and explained that she was making similar requests of many business associates of her husband.  Defendant Kay agreed to assist and said he would call Ms. Duncan either late that day or the next day to set up a meeting.  Gudavadze Decl. ¶ 13; Duncan Decl. ¶ 6.

On February 20, 2008, Defendant Zeltser telephoned Ms. Duncan and left a message that he was calling at the request of Defendant Kay.  Duncan Decl. ¶ 7.  When Ms. Duncan returned his call, she told him that the "Power of Attorney" had become ineffective at the time of Mr. Patarkatsishvili's death.  Defendant Zeltser disagreed and maintained that the "Power of

Attorney" remained valid but that regardless, he was also acting pursuant to many other documents in his possession, including a will which Mr. Patarkatsishvili had signed on November 14, 2007 in New York. *Id.* ¶¶ 7-8. Defendant Zeltser also said that through that document, Mr. Patarkatsishvili had named Defendant Kay as the executor of his estate with fairly significant powers and much discretion. *Id.* ¶ 8.

During their discussion about the Power of Attorney, Ms. Duncan told Mr. Zeltser that she and Mrs. Gudavadze doubted that Mr. Patarkatsishvili had signed the Power of Attorney, so they would want to have any other document that he claimed Mr. Patarkatsishvili had signed, including the alleged will, examined by an expert. Mr. Zeltser said that he would not object to this; that he understood that Mrs. Gudavadze would challenge the authenticity of the signatures and that he expected this as it was standard practice. *Id.* ¶ 9.

Mr. Zeltser insisted to Ms. Duncan that Mr. Patarkatsishvili's signatures on the documents were genuine, and said that they had been notarized by a "most meticulous man," Alexander Fishkin. He also said that each document had been witnessed by two independent witnesses. He commented that the signatures didn't matter; even if there was only a cross as a signature, that was sufficient because the execution was witnessed and notarized. *Id.* ¶ 10.

During that phone call, Defendant Zeltser told Ms. Duncan that it was Mr. Patarkatsishvili's intent to leave a significant portion of his estate to Ms. Safonova and her son and a significant portion to Mrs. Gudavadze and their daughters. Defendant Zeltser also said that he had refused to show anyone the documents related to Mr. Patarkatsishvili's estate because the people he approached had taken an "adversarial" position towards him and because he had been directed to show each beneficiary only the part of the documents relating to that person, so that Mrs. Gudavadze and Ms. Safonova would not be aware that the other had been named a

beneficiary. And as he could not show anyone the entirety of the documents, he had decided not to show them to anyone. Defendant Zeltser told Ms. Duncan that he would show her at least one of the relevant documents when they met in person. *Id.* ¶¶ 12-13.

On February 22, 2008, Ms. Duncan telephoned Defendant Kay to schedule a meeting so that Defendant Kay could help identify assets to which Mr. Patarkatsishvili was connected, as had been agreed at the February 20 meeting. Defendant Kay told Ms. Duncan that she should communicate with him only through his personal attorney, Defendant Zeltser. *Id.* ¶ 15.

### 2.    The February 24, 2008 Meeting

On February 24, 2008, Ms. Duncan and a colleague met with Defendant Zeltser and two of his colleagues, Alexander Fishkin and Alexandr Cherny, at the Buddha Bar, 25 Little West 12th Street, New York, New York. During that meeting, Defendant Zeltser showed Ms. Duncan images of several documents on his laptop computer screen and allowed her to take handwritten notes about the documents. *Id.* ¶ 22. One of the documents was a one-page "Deed of Appointment of Executor" which purported to have been signed by Mr. Patarkatsishvili, witnessed by two people, notarized by Mr. Fishkin, a notary public licensed in the State of New York, and dated November 14, 2007. *Id.*

Defendant Zeltser also showed Ms. Duncan an image of a "Statement of Wishes" which was several pages long and asserted that Ms. Safonova, described as Mr. Patarkatsishvili's wife, would inherit 25% of his estate; Mrs. Gudavadze, described as Mr. Patarkatsishvili's former wife, would inherit 25%; each of his three children would inherit 10%; and the remaining 20% would be divided among his mother and siblings. The "Statement of Wishes" also purported to have been signed by Mr. Patarkatsishvili, witnessed by two people, notarized by Mr. Fishkin and dated November 14, 2007. *Id.* ¶ 23.

During this meeting, Defendant Zeltser commented to Ms. Duncan that if Mrs.

Gudavadze were to successfully challenge the testamentary documents that Defendant Zeltser

held, and if Ms. Safonova was, in fact, Mr. Patarkatsishvili's legal wife, then in the absence of a

valid will, Ms. Safonova would inherit as the legal spouse, and Mrs. Gudavadze would receive

nothing.[1] *Id.* ¶ 21.  Ms. Duncan interpreted this as a threat from Defendant Zeltser that Mrs.

Gudavadze should concede the validity of the documents that Defendant Zeltser held or risk

inheriting nothing.  *Id.*

Also during the meeting, Ms. Duncan asked Defendant Zeltser for copies of the

documents displayed on his computer screen.  Although he replied that he expected to be able to

do so later that day or the next day but first needed to check with other people, Defendant

Zeltser, in fact, failed to send copies of the documents as promised.  *Id.* ¶ 27.  Ms. Duncan

repeated her request for these documents in writing on February 25 and February 27, 2008.

Defendant Zeltser failed again to provide her with copies of these documents.  *Id.* ¶¶ 28-29 and

Duncan Decl. Exh. A.

**3.    The February 27, 2008 Meetings**

On February 27, 2008, Plaintiffs, other members of their family, and business associates

of Mr. Patarkatsishvili met with Defendant Kay in Tbilisi, Georgia and asked him for copies of

the documents related to Mr. Patarkatsishvili's estate.  Defendant Kay refused to provide the

---

[1]    Defendant Zeltser claim that Ms. Safonova was the legal spouse were undermined by
another document that he showed Ms. Duncan on his laptop.  It was another Letter of
Wishes dated July 25, 2000 in which Mrs. Gudavadze was described as Mr.
Patarkatsishvili's wife and granted 10% of the estate, and Ms. Safonova (who was named
but not described) was granted 6%.  The existence of this document, describing Mrs.
Gudavadze as Mr. Patarkatsishvili's wife in July 2000, contradicts Defendant Zeltser's claim
that Mr. Patarkatsishvili secretly divorced Mrs. Gudavadze in 1996.  Duncan Decl. ¶ 26.

documents, and told Mr. Patarkatsishvili's business associates to speak with his attorney, Defendant Zeltser. Gudavadze Decl. ¶¶ 15–16, 19, 21.

> ### 4.      The March 5, 2008 Meeting

On March 5, 2008, Defendant Zeltser met with Mrs. Gudavadze, Ms. Duncan and others at the Four Seasons Hotel in London. Ms. Duncan and Mrs. Gudavadze again raised with Defendant Zeltser questions about the documents related to Mr. Patarkatsishvili's estate and asked Defendant Zeltser to provide them with copies of the documents. Defendant Zeltser avoided answering the questions and made various excuses about why he would not produce the documents. Gudavadze Decl. ¶¶ 26-27.

> ### 5.      The March 7, 2008 Meetings

On March 7, 2008, Plaintiffs and other members of their family met with Defendant Kay in Tbilisi, Georgia and asked him for copies of the documents that supported his claims of being the executor of Mr. Patarkatsishvili's estate and having authority to speak and act on behalf of Mr. Patarkatsishvili and the estate. Defendant Kay refused to provide the documents, and he claimed that Defendant Zeltser had the documents. *Id.* ¶¶ 22-25.

> ### 6.      The March 10, 2008 Correspondence

On March 10, 2008, Peter Goldsmith of Debevoise & Plimpton LLP in London, who had been engaged recently to act as counsel to Mrs. Gudavadze, wrote to Defendant Zeltser, as counsel for Defendant Kay, and requested copies of the relevant documents: "[I]f Mr. Kay believes he has documentation establishing that he in fact has authority to speak on behalf of Mr. Patarkatsishvili in any capacity, notwithstanding our belief to the contrary, we would request that you provide us with copies of that documentation as soon as possible." *See* Letter, dated March 10, 2008 from Debevoise & Plimpton LLP to Emanuel Zeltser, attached to the Cowan Decl. as Exhibit D.

On March 10, 2008, Defendant Zeltser responded by email and refused to provide copies of the documents: "The documents expressing Badri's wishes, vested in us as his counsel, are being disclosed in due course to proper bodies in such jurisdictions as are appropriate and in strict accordance with our client's final instructions." *See* E-mail dated March 10, 2008, from Emanuel Zeltser to Peter Goldsmith, attached to the Cowan Decl. as Exhibit E.

**D.    The "Deed of Appointment" and "Statement of Wishes" Appear To Be Fraudulent**

Defendants have refused – despite repeated requests – to provide Plaintiffs with copies of the documents they claim constitute Mr. Patarkatsishvili's will.  Nonetheless, based on the information available, Plaintiffs believe that these documents are fraudulent or otherwise invalid. Among other reasons, the date on which they were purportedly signed – November 14, 2007 – is a date on which at least two eyewitnesses can verify that Mr. Patarkatsishvili did not meet with Defendant Zeltser or sign any documents in New York.  According to two people who were with Mr. Patarkatsishvili on November 14, he flew from London to New York late that day, arrived in New York with others in the late evening and then had dinner with a group of people until early in the morning of November 15.  During the few hours that Mr. Patarkatsishvili was in New York on November 14, 2007, he did not meet with Defendant Zeltser or sign any documents. Motkin Declaration, dated April 18, 2008 ("Motkin Decl.") ¶ 10; Vladimir Voronoff Declaration, dated April 21, 2008, ("Voronoff Decl.") ¶¶ 4-8.  *See also* Confirmation from Global Jet Flight, dated November 14, 2007, of Mr. Patarkatsishvili's flight from London to New York, attached to the Cowan Decl. as Exhibit F.

**E.    Defendants Misappropriate Imedi TV**

Although, as described above, Defendants failed to obtain information about Mr. Patarkatsishvili's investments from Salford or Mainstay, Defendants had better luck obtaining

control over Imedi TV, a Georgian television station, which Mr. Patarkatsishvili owned.  *See*

"Georgia:  Imedi TV's Present Owner Confirms Purchase of TV Station", Red Orbit News,

March 21, 2008, attached to the Cowan Decl. as Exhibit G; Gudavadze Decl. ¶ 14.  Mr.

Patarkatsishvili owned a controlling interest in Imedi TV through beneficial ownership of shares

in a parent company, JSC JMG Consulting Ltd.  Most of Mr. Patarkatsishvili's shares in JSC

JMG Consulting Ltd. were held for his benefit by Giorgi Jaoshvili, a business associate in

Georgia.

        In two separate meetings on February 27, 2008, Mrs. Gudavadze met with Defendant

Kay and told him to transfer the shares in JSC JMG Consulting Ltd. to Plaintiffs because they

were the beneficiaries of Mr. Patarkatsishvili's estate.  Defendant Kay refused.  Gudavadze Decl.

¶¶ 14-15, 18, 20.  In spite of this, Defendant Kay has proclaimed in public statements reported by

the media that he has purchased Imedi.  Cowan Decl. Exh. G.

        As a result of Defendants' misconduct, Defendant Kay – not Mr. Patarkatsishvili's heirs

or his estate – appears to control Imedi TV.  This occurred even though Defendant Kay has

produced no documentation to Plaintiffs or to any authorized representative of Mr.

Patarkatsishvili's estate demonstrating that this was Mr. Patarkatsishvili's desire.

        **F.    The Arrest of Defendant Zeltser**

        On March 3, 2008, Ms. Duncan (who was then still acting as Mrs. Gudavadze's counsel)

wrote to the Prosecutor General of Belarus to notify him that Mr. Patarkatsishvili might have had

substantial assets in Belarus, and that Defendants and certain associates might improperly

attempt to gain control over those assets.  Duncan Decl. ¶ 30 and Duncan Exh. B.

        1.    According to media reports, on March 12, 2008, Defendant Zeltser was arrested

in Minsk, Belarus on a charge of attempting to use fraudulent documents to obtain control over

assets in which Mr. Patarkatsishvili had an interest, and on March 28, 2008, Defendant Zeltser

was charged by prosecutors in Belarus with attempting to defraud Mr. Patarkatsishvili's estate

through the use of forged documents.  *See* "KGB confirms arrest of US lawyer Emanuel Zeltser

Two Weeks Ago."  Belarus News, March 23, 2008; "Belarus: American Lawyer Charged With

Using Fake Documents", Seattle Post Intelligencer, March 27, 2008, attached to the Cowan Decl.

as Exhibits H and I.

## **LEGAL ARGUMENT**

**I.      An Order To Show Cause Is Necessary Due To
        The Continuing Harm From Defendants' Actions**

Plaintiffs are proceeding by order to show cause because of the urgent need to prevent

Defendants from improperly seizing control of additional assets and further interfering with the

orderly administration of the estate.  Cowan Decl. ¶ 9.  Plaintiffs continue to be harmed by

Defendant Kay's misrepresentations.  Defendant Kay has used his control of JSC JMG

Consulting to seize financial documents regarding other assets of Mr. Patarkatsishvili and he is

seeking to assert control over additional assets of Mr. Patarkatsishvili.  Plaintiffs continue to

learn of additional persons from whom Defendant Kay has sought information or the transfer of

assets.  *Id.* ¶ 7.  Although it is Plaintiffs' understanding that Defendant Zeltser is currently

detained in Belarus, Plaintiffs do not know when Defendant Zeltser will be released and may

renew his pattern of misrepresentations and reliance on apparently fraudulent and invalid

documents.

Based on the unlawful conduct and repeated fraudulent representations of Defendants

Kay and Zeltser, the Plaintiffs are left with no alternative but to seek preliminary injunctive relief

to halt, as expeditiously as possible, Defendants' misrepresentations about their authority with

respect to Mr. Patarkatsishvili's estate.  Without injunctive relief, Plaintiffs will only learn of the

14

transfer of assets after they occur and then will be faced with the extremely difficult and complicated task of unwinding those improper transactions.

## II.     Plaintiffs Are Entitled To Preliminary Injunctive Relief

To obtain preliminary injunctive relief, Plaintiffs must demonstrate: "(1) that [Plaintiffs] will be irreparably harmed if an injunction is not granted and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [their] favor." *Lusk v. Village of Cold Spring,* 475 F.3d 480, 485 (2d Cir. 2007) (citing *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d 342, 348-49 (2d Cir. 2003)).  Plaintiffs can easily satisfy all of those factors.

### A.     Plaintiffs Will Suffer Irreparable Harm

Absent preliminary injunctive relief, Plaintiffs will suffer substantial irreparable harm for which monetary damages will not be an adequate remedy.  Because of Defendants' misconduct, Defendant Kay – and not Mr. Patarkatsishvili's heirs or estate – appears currently to have control of Imedi TV.  Plaintiffs continue to learn of additional persons from whom Defendant Kay has sought information or the transfer of assets.

Mr. Patarkatsishvili's assets are located throughout the world, sometimes with complex ownership structures involving multiple trusts and nominees.  If Defendants are permitted to continue to present themselves as authorized to act with respect to those assets, it will be extremely difficult, if not impossible, for Plaintiffs to reverse those transactions.  Due to the location and structure of those assets, it will also be difficult to properly value the assets for purposes of assessing the harm.  *See, e.g., Canon Inc. v. GCC Int'l Ltd.*, 450 F.Supp.2d 243, 256 (S.D.N.Y. Aug. 29, 2006) (granting a preliminary injunction because defendants "operations are

far-flung, and locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficult.").

In addition, Defendant Kay's continued improper approaches to individuals with knowledge of or control over assets beneficially owned by Mr. Patarkatsishvili have complicated Plaintiffs' efforts to inventory Mr. Patarkatsishvili's assets and begin administration of Mr. Patarkatsishvili's estate. With multiple parties claiming to represent Mr. Patarkatsishvili's estate, holders of assets are reluctant to deal with any one party in the absence of a judicial grant of authority. Plaintiffs have recently filed for a grant of such authority in England, where they reside, and they plan to use that grant to bring about the orderly administration of Mr. Patarkatsishvili's estate. Defendants should be enjoined from independently asserting rights in connection with the estate unless and until a court of competent jurisdiction rules that they actually have such rights.

**B.     Plaintiffs Are Likely To Succeed On The Merits**

Plaintiffs are likely to succeed in their underlying action; even prior to discovery, there is significant evidence that Defendants have misrepresented their authority and are relying on fraudulent or otherwise invalid documents.

**1.     Neither Defendant Is An Authorized
Representative Of The Estate**

Neither Defendant has produced any document which would authorize him to speak on behalf of Mr. Patarkatsishvili's estate. Also, even though over two months have passed since Mr. Patarkatsishvili's death, plaintiffs believe, based on diligent searches in the most likely jurisdictions (New York, Florida, England and the country of Georgia), that no court has appointed either Defendant as the executor or administrator of Mr. Patarkatsishvili's estate, nor has either Defendant even brought an action for such an appointment. Cowan Decl. ¶ 4.

16

Plaintiffs seek to enjoin both Defendants from claiming to hold such a position until they are properly appointed to it.  The preliminary injunction that Plaintiffs seek is appropriately narrow and will only prevent Defendants from making fraudulent or unauthorized claims of authority: the injunction will not prevent Plaintiffs from applying for such authority if they believe that it is lawfully theirs.

**2.     There Is Already Significant Evidence That The Documents On Which Defendants Rely Are Neither Authentic Nor Valid**

Even prior to discovery, Plaintiffs know that Defendants have attempted to use a facially invalid document – the Power of Attorney – to attempt to gain information about and control over certain of Mr. Patarkatsishvili's assets.  As discussed below, Plaintiffs also have substantial grounds for believing that the "Deed of Appointment" and "Letter of Wishes" are not genuine. Defendants' failure to provide copies of their documents to Plaintiffs or provide a reasonable explanation for not doing so, and their failure to begin a probate action for Mr. Patarkatsishvili's estate, all provide additional reasons to suspect that the documents on which Defendants rely are in fact fraudulent, even before any discovery has taken place.  There is every reason to believe that Plaintiffs are likely to succeed on the merits

**(a)     Mr. Patarkatsishvili Could Not Have Executed The Documents As Defendants Claim**

Defendant Zeltser has claimed that Mr. Patarkatsishvili signed the Deed Of Appointment As Executor and the Statement Of Wishes in New York on November 14, 2007, and also that Mr. Patarkatsishvili's signature was witnessed and notarized at that time.  Duncan Decl. ¶¶ 8, 10, 22, 23.  However, both eyewitnesses and the records from Mr. Patarkatsishvili's flight establish that Mr. Patarkatsishvili arrived in New York from London late in the evening of November 14 and went directly to dinner, which lasted until early in the morning of November 15.  Cowan Decl. Exh. F; Motkin Decl. ¶¶ 5-10; Voronoff Decl. ¶¶ 4-6.  According to the witnesses, it is

17

simply not possible for Mr. Patarkatsishvili to have signed the documents. This raises the strong possibility that the documents are themselves forgeries or otherwise fraudulent.

### (b)    False Documents Have Been Submitted In Several Lawsuits Involving Defendant Zeltser

Although allegations of forgery are undoubtedly very serious, Defendant Zeltser is no stranger to them. In fact, in at least three lawsuits in which Defendant Zeltser was involved, litigants have asserted (and in two cases, courts have concluded) that Defendant Zeltser or his clients submitted documents of dubious authenticity to the court. This provides further reason to suspect that the documents Defendants claim to have in this case may also not be genuine.

### (i)    *Nord Service, Inc. v. Palter*

Defendant Zeltser was counsel for defendants in *Nord Service, Inc. v. Palter,* No. 2:06 CV 548 (E.D. Tex. filed March 3, 2008), in which the plaintiff claimed that defendants, who had served as directors and managers of Nord Service Inc. ("NSI"), had, *inter alia,* breached their fiduciary duties, converted property and defrauded the plaintiffs. Defendants, represented by Defendant Zeltser, moved to dismiss the lawsuit on the grounds that the individual who authorized the suit lacked the authority to do so, as NSI was owned either by defendants or by another company. *See Nord Service, Inc. v. Palter* No. 2:06 CV 548, Mem. Op at 1 (E.D. Tex. filed March 3, 2008), attached to the Cowan Decl. as Exhibit J.

In support of those claims, defendants submitted a number of corporate documents including by-laws, minutes of boards of directors' meetings, a sale agreement, and correspondence. After hearing from NSI fact witnesses who disavowed their signatures on those documents and from a forensic document expert who concluded that the signatures and corporate seals had been copied from other documents, the court found that defendants had failed to

establish that the documents were authentic and held that NSI had standing to bring the lawsuit. *Id.*

### (ii)    *Zeltser v. Inkombank*

In 1995, Defendant Zeltser, representing himself *pro se,* sued a Russian bank, Inkombank, in the Southern District of New York for, *inter alia,* attorney fees that Defendant Zeltser claimed were due to him. Inkombank moved for summary judgment on Defendant Zeltser's claims for attorney fees, arguing that Defendant Zeltser had lied on his New York State bar application about graduating from law school in the Soviet Union and had created forged documents in support of that misrepresentation.

To substantiate its claim, Inkombank submitted numerous documents, declarations, and deposition testimony. *See* Affidavit of Arthur H. Christy, dated April 25, 1997, attached to the Cowan Decl. as Exhibit K; Affidavit of Arthur H. Christy, dated June 3, 1997, attached to the Cowan Decl. as Exhibit L. Inkombank's motion was never resolved but, in declining to rule on the motion prior to a hearing, Judge Kevin Duffy wrote that "the evidence appears to establish that Zeltser did not obtain a law degree from Kishinev State, but studied piano full-time at the Moldovan State Institute of Arts." *Zeltser v. Inkombank,* No. 95 Civ. 0796, 1998 U.S. Dist. LEXIS 8200, at *25 (S.D.N.Y. June 4, 1998), attached to the Cowan Decl. as Exhibit M.

### (iii)    *Zeltser v. SARL Manager*

In *Zeltser v. SARL Manager,* No. 11364/90 (N.Y. Sup. Ct. filed Feb. 28, 1991), defendants had filed an action in France against Zeltser and his then-wife for specific performance on a contract for the sale of property. In actions in France and New York, Zeltser and his wife claimed defendants had defrauded them. In support of their claim of jurisdiction in choice-of-law provision which they claimed had been included in the signed contract for the sale of the property. Justice Myriam Altman dismissed the suit for lack of jurisdiction, finding that

19

"[i]t is simply incredible that a document prepared entirely in French would contain one separate page in English.  While plaintiffs may have sought to have this provision included in the contract, there is no evidence that defendants consented to such a provision."  *Zeltser v. SARL Manager,* No. 11364/90, Op. at 2 (N.Y. Sup. Ct. filed February 28, 1991), attached to the Cowan Decl. as Exhibit N.

**(c)    Even If Genuine, The Power Of Attorney Did
Not Survive The Death Of Mr. Patarkatsishvili**

It is clear beyond question that Defendants attempted to gain access to assets managed by Salford and Mainstay based upon a Power of Attorney that is invalid on its face.  The  "Power of Attorney" appears to have been acknowledged before a New York-licensed notary public, and the geographical authority of a New York notary is limited to New York State.  N.Y. Exec. Law § 130.  Therefore, if the signature is authentic, it appears to have been executed in New York State.  The language of the "Power of Attorney" also appears to be a modification of the New York statutory language for a durable general power of attorney. *See* N.Y. General Obligation Law § 5-1501.  A Power of Attorney is a contract.  *See Lancaster v. Zufle***,** 165 F.R.D. 38, 41 (S.D.N.Y. 1996).  Because the Power of Attorney is a contract, under New York choice of law principles, the court should look at the "spectrum of contacts" between the contract, the parties to it, and the relevant jurisdictions to determine which law to apply to its interpretation.  Based on that analysis, absent a choice of law provision, "[M]atters bearing upon the execution, the interpretation and the validity of contracts are determined by the law of the place where the contract is made." *TSR Silicon Resources, Inc. v. Broadway Com Corp.* No. 06 Civ 9419, 2007 WL 4457770, at *3 (S.D.N.Y. Dec. 14, 2007) (internal citations omitted).  Therefore, if authentic, the validity of the "Power of Attorney" is subject to interpretation pursuant to New York State law.

Under New York law, and general principles of agency, a power of attorney, as a specific type of agency, terminates upon the death of the principal, unless it is given at the same time as an irrevocable interest which is the subject matter of the power of attorney. *See, e.g.,* 2A N.Y. Jur. 2d Agency § 77 (2008)*; Farmers' Loan & Trust Co. v. Winthrop*, 238 N.Y. 477, 485 (N.Y. 1924); *Etterle v. Excelsior Ins. Co. of New York*, 428 N.Y.S.2d 95, 98 (N.Y. App. Div. 4th Dep't 1980); *In re Tabbagh's Estate*, 3 N.Y.S.2d 542, 546 (N.Y. Sur. Ct.. 1938). There is no evidence of an irrevocable interest having been granted here in conjunction with the Power of Attorney.

The fact that the "Power of Attorney" claims on its face that "This Power of Attorney . . . shall not be affected by my subsequent death, disability or incompetence" is unavailing. *See* "General Durable Power of Attorney" allegedly signed by Mr. Patarkatsishvilli and notarized December 14, 2006, attached to the Cowan Decl. as Exhibit A (emphasis in the original).[2]  As a grant of agency, it terminates upon death notwithstanding any language to the contrary. *Etterle,* 428 N.Y.S.2d 95 at 441.  Defendant Zeltser's strenuous claims that it remained valid, notwithstanding this clear principle of black letter law, only underscore his extreme, improper desire to assert control over Mr. Patarkatsishvili's assets.

### 3.    Defendant Kay's Actions Suggest That He Is Acting Only For His Own Benefit, Not As Executor Of The Estate

Rather than act to preserve the assets of Mr. Patarkatsishvili's estate for his beneficiaries, as a diligent executor is obligated to do, Defendant Kay has sought to take control of the assets for his own benefit. *See, e.g.*, 31 Am. Jur. 2d Executors and Administrators § 499 ("[An executor] may not advance his own personal interest at the expense of the heirs."). Thus, he has claimed to be the new owner of Imedi. *See* "Georgia: Imedi TV's Present Owner Confirms

---

[2]    This language varies from the New York state statutory language for a durable general power of attorney which states "This durable Power of Attorney shall not be affected by my subsequent disability or incompetence." N.Y. General Obligation Law § 5-1501.

Purchase of TV Station", Red Orbit News, March 21, 2008, attached to the Cowan Decl. as

Exhibit G.  Despite requests from Plaintiffs, he has also refused to transfer the shares to them.

Gudavadze Decl. ¶ 20.  Mr. Kay's behavior is further inferential evidence that rather than

actually being the executor of Mr. Patarkatsishvili's estate, he has seized the opportunity created

by Mr. Patarkatsishvili's untimely death and sought to unjustly enrich himself.

### C.    Plaintiffs Have Raised Serious Questions Regarding The Merits And The Balance Of Hardship Favors Plaintiffs

Plaintiffs have clearly established that they will likely succeed on the merits.  But even if

they had not done so, for the reasons set forth above, the alternative standard for a preliminary

injunction has been met as Plaintiffs have raised serious questions regarding the merits and the

balance of hardship favors Plaintiffs.  The preliminary injunctive relief sought by Plaintiffs is

narrow; Plaintiffs seek only to prevent Defendants from representing themselves as acting on

behalf of Mr. Patarkatsishvili's estate unless and until they are so appointed by a court of

competent jurisdiction.  Until that occurs, Defendants have no basis for claiming such authority;

a preliminary injunction will only stop them from making such misrepresentations.

Defendants can point to no harm that will occur by the delay in their ability to make such

assertions.  If Defendants *do* have authority for their claims, and they move diligently in the

proper court to be appointed, then the preliminary injunction will only briefly be in force.

In contrast, if preliminary injunctive relief is not granted, as discussed above, Defendant

Kay will continue to misrepresent his authority with the consequence that he may successfully

take control of additional assets belonging to Mr. Patarkatsishvili's estate and he will further

complicate Plaintiffs' efforts to bring about the orderly and lawful administration of that estate.

**III.    Expedited Discovery Is Appropriate**

    **A.    Expedited Discovery In An Action for
Declaratory Judgment Is Permitted**

The Federal Rules of Civil Procedure permit the Court to "order a speedy hearing of a declaratory judgment action" brought pursuant to 28 U.S.C. § 2201. Federal Rule of Civil Procedure 57. Implicit in the authority of the court to order a speedy hearing is the authority to change the deadlines for discovery set by the Federal Rules of Civil Procedure if appropriate. *See, e.g., Hutchinson v. Essence Communications, Inc.*, 769 F. Supp. 541 (S.D.N.Y. July 26, 1991) (court granted expedited discovery and hearing date pursuant to Fed. R. Civ. P. 57). If Plaintiffs are granted expedited discovery, they intend then to seek a speedy hearing or briefing schedule for disposition of their claims.

    **B.    The Specific Circumstances Here Warrant Expedited Discovery**

Regardless of whether a party seeks a declaratory judgment, the Court has discretion to order expedited discovery. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. July 10, 2005) (citing Fed. R. Civ. P. 26(d) (court may order timing of discovery which differs from that in the Federal Rules of Civil Procedure)). In this district, motions for expedited discovery are considered under a flexible "good cause test" which also looks at the reasonableness of the requested discovery. *Id.*; *see also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. Nov. 6, 2007); *Standard Inv. Chartered, Inc., v. NASD*, 2007 WL 1121734, at *5 (S.D.N.Y. April 11, 2007).

Good cause for an expedited discovery schedule clearly exists in this case. The discovery requests proposed by Plaintiffs focus on the testamentary documents on which Defendants rely but which they have refused to produce to Plaintiffs despite repeated requests, and the assets over which Defendants have asserted control or which they held as beneficial owners for Mr. Patarkatsishvili. Even without discovery, Plaintiffs have made a strong showing of the substance

of their claims.  Production of the original versions of the testamentary documents in question

will allow Plaintiffs to assess whether they are genuine, which should in turn permit speedy

resolution of this action.

Expedited discovery will also allow Plaintiffs to identify those people whom Defendants

have approached about Mr. Patarkatsishvili's assets, and the assets over which Defendants have

already asserted control.  To the extent that Mr. Patarkatsishvili entrusted assets to Defendants as

beneficial owners, Plaintiffs will also be able to identify them before Defendants take steps to

transfer or hide those assets.  *See, e.g., Ayyash* 233 F.R.D. at 327; *see also Merrill Lynch Futures*

*Inc. v. Kelly*, 585 F. Supp. 1245, 1259-60 (S.D.N.Y. May 7, 1984) (holding that request should

be granted where "[t]he stated ground for the request is plaintiff's fear that defendants are taking

steps to hide their assets and cover up their fraud" and "sufficient questions have been raised

regarding the conduct of all defendants as to justify some type of expedited discovery").

### C.    The Expedited Discovery Will Not Burden Or Prejudice To Defendants

Plaintiffs have sought expedited discovery only for the documents necessary to prove

their claims and prevent continued harm from Defendants' misrepresentations.  The requested

material should not be voluminous and collecting it should not be burdensome to Defendants.

Because Defendant Zeltser is currently imprisoned in Belarus,[3] charged with using

fraudulent documents in connection with Mr. Patarkatsishvili's estate, Plaintiffs seek only

limited document discovery which may be entirely available from Defendant Kay (in which case

Plaintiffs will not seek a duplicate production from Mr. Zeltser) or which should be available

from Defendant Zeltser's colleagues or partners at his law firm, Sternik & Zeltser, especially

---

[3]    When Defendant Zeltser is released from prison, Plaintiffs reserve the right to seek additional discovery from him.

24

since both Defendants identified Defendant Zeltser as counsel for Defendant Kay.  Two of Mr.

Zeltser's business associates may also be able to provide access to the documents: Alexander

Fishkin, whom Defendant Zeltser claimed executed the relevant documents, and Alexandr

Cherny, who also accompanied Defendant Zeltser to the meeting on February 24 with Michelle

Duncan, Mrs. Gudavadze's counsel at the time.

**IV.     Expedited Briefing Schedule For Motion
          For Partial Summary Judgment Is Appropriate**

Regardless of whether the Power of Attorney notarized on December 14, 2006 (Cowan

Decl. Exh. A) is genuine, the law is clear that a power of attorney ceases to be effective upon the

death of the principal.  Therefore, discovery is not necessary on the narrow issue of whether the

Power of Attorney was valid at the time that Defendants relied upon it, and Plaintiffs are

prepared to move for partial summary judgment on that question.

The Power of Attorney is the only document which Defendants have provided to support

their claim of authority with respect to Mr. Patarkatsishvili's estate, and they relied on it to seek

information from both Salford and Mainstay.  A decision by the Court that the Power of

Attorney ceased to be effective on Mr. Patarkatsishvili's death will assist in preventing

Defendants from further attempting to defraud Plaintiffs.  It will also aid judicial efficiency by

resolving one discrete but important issue in this action.

## <u>CONCLUSION</u>

For the reasons stated above, as well as those in the declarations and exhibits submitted

herein, Plaintiffs respectfully request that the Order To Show Cause be granted.

Dated:  New York, New York
          April 21, 2008

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

/S/ Jennifer R. Cowan

By: _____
    Christopher K. Tahbaz
    Jennifer R. Cowan
    919 Third Avenue
    New York, New York  10022
    Tel. (212) 909-6000
    *Attorneys for Plaintiffs*