HAROLD M. HOFFMAN, ESQ.
1140 AVENUE OF THE AMERICAS, SUITE M-01
NEW YORK, NEW YORK 10036
(212) 486-6322
*ATTORNEY FOR DEFENDANT EMANUEL ZELTSER*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **INNA GUDAVADZE,** et al., | |
| Plaintiffs, | 08 Civ 3363 (RJS) |
| -against- | |
| **JOSEPH KAY** and **EMANUEL ZELTSER,** | |
| Defendants. | |

**NOTICE OF CROSS-MOTION BY DEFENDANT EMANUEL ZELTSER**
**FOR AN ORDER DISMISSING ACTION PURSUANT TO**
**RULE 12(b)(2) and (5), FED. R. CIV. P., FOR LACK OF PERSONAL**
**JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS**

**PLEASE TAKE NOTICE** that on May 8, 2008, at 10:00 o'clock in the forenoon of that

day, or as soon thereafter as counsel may be heard, defendant Emanuel Zeltser, Esq., presently,

and since March 12, 2008, unlawfully incarcerated in a *KGB* operated prison in Minsk, Belarus,

by his attorney, Harold M. Hoffman, Esq., will cross-move before the Honorable Richard J.

Sullivan, U.S.D.J., at the United States Courthouse, 500 Pearl Street, New York, New York,

pursuant to Rule 12(b)(2) and (5), Fed. R. Civ. P., for an order dismissing the within action as to

Emanuel Zeltser, for lack of personal jurisdiction and insufficient service of process.

In support of the instant cross-motion, defendants will rely upon the accompanying

1

Memorandum of Law and Declaration of Harold M. Hoffman.

Dated: April 30, 2008

_____**S/**_____
HAROLD M. HOFFMAN, ESQ. [HH 5139]
*Attorney for Defendant Emanuel Zeltser*

HAROLD M. HOFFMAN, ESQ.
1140 AVENUE OF THE AMERICAS, SUITE M-01
NEW YORK, NEW YORK 10036
(212) 486-6322
*ATTORNEY FOR DEFENDANT EMANUEL ZELTSER*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**INNA GUDAVADZE,** et al.,

                    Plaintiffs,                                   08 Civ 3363 (RJS)

          -against-

**JOSEPH KAY** and **EMANUEL ZELTSER,**

                    Defendants.

---

**DECLARATION OF HAROLD M. HOFFMAN**
**IN SUPPORT OF CROSS-MOTION TO DISMISS ACTION**
**AND IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE**

          **HAROLD M. HOFFMAN,** under penalty of perjury, respectfully declares:

Introduction and Summary of Cross-Motion
and Opposition to Plaintiffs' Order to Show Cause

          1. I am admitted to practice before this Court and act as attorney for defendant Emanuel

Zeltser.  I have been retained in this capacity by Emanuel Zeltser's brother, Mark Zeltser, an

internationally renowned concert pianist. I have not spoken or otherwise communicated with my

client concerning this action.  As plaintiffs and their counsel know full well, Emanuel Zeltzer, an

attorney admitted to practice before this Court, as well as the courts of New York, has, since

March 12, 2008, been unlawfully detained in Minsk, Belarus by that country's committee on

state security ("KGB").

1

2.  As we show below, and in our accompanying Memorandum, this civil action cannot proceed against Mr. Zeltser by reason of failure of *in personam* jurisdiction and because of insufficient service of process.  Under United States Supreme Court authority and the governing rules of this Court, even the extreme outer edges of constitutional due process are not satisfied where plaintiffs simply go through the motions of serving process at a person's purported place of residence, knowing full well that he is incarcerated in a foreign jurisdiction and that he will never be apprised of the pendency of the action; never be permitted to review the claims against him; never be permitted to confer with counsel; and, never be afforded the opportunity to participate in the defense of this action.

3.  Setting aside, if we can, the purely legal question of abject failure to serve process and acquire personal jurisdiction, plaintiffs and those acting in concert with them have comported themselves in a manner so morally base and in a fashion so shockingly inhumane, that even were they able to demonstrate irreparable injury and probability of success on the merits – they cannot – they would have forfeited any entitlement to affirmative relief from this honorable Court.

4.  The plaintiffs' application, as we show, must be denied, and the cross-motion granted.

<u>The Facts Relevant to this Proceeding</u>

<u>The Present Situation</u>

5.  Emanuel Zeltser is not aware of the pendency of this action.  He has not received this Court's process, nor read the plaintiff's pleading or motion papers.  Since his arrest in Minsk, Belarus on March 12, 2008, he has effectively had no contact with the outside world.  He has not spoken to a Western lawyer and he has not been brought before any judge or magistrate to answer the charges against him.  He has been shifted back and forth between a specially

designated KGB prison and a state psychiatric hospital, a well known "resting place" of political prisoners of the former Soviet Union era.

6. Since March 12, 2008, Emanuel Zeltser has been subjected to daily beatings and torture. He has been deprived of his much needed medications, although his KGB tormentors have taken the time to exhibit these life-saving medications to him, before taking them away.

7. On April 25, 2007, I personally heard Ms. Mary Dickerson of the U.S. Department of State report by telephone to Emanuel's brother Mark that Emanuel was being continually "struck in the head by the knuckles of his interrogators;" that "his health was rapidly deteriorating;" and, that "he was beaten upon asking his KGB interrogators to allow him to swear an affidavit of his condition for the United States consular official in Minsk." Permission to swear such affidavit was denied. Ms. Dickerson's April 25 telephonic report was followed four days later by a U.S. Embassy in Minsk press statement as follows [Exhibit E hereto]:

**U.S. Embassy Minsk Press Statement**
**April 29, 2008**

The United States is deeply concerned about the deteriorating health of American citizen Emanuel Zeltser, imprisoned in Belarus. Since his detention on March 12, the U.S. Embassy in Minsk has only been permitted to visit him on two occasions, March 27 and April 25.

During the visit on April 25, the consular officer from the U.S. Embassy noticed a significant physical deterioration of Mr. Zeltser's health since the previous visit on March 27. Mr. Zeltser lost a considerable amount of weight and was very weak. Despite all efforts by the U.S. Embassy, his lawyer, and his U.S. doctor to comply with prison procedures, Mr. Zeltser has not been permitted to take his required daily medications, which may be causing irreversible internal damage.

The United States is extremely concerned for the health and safety of Mr. Zeltser should he remain in the care and custody of the Government of Belarus. On April 25, the Department of State requested the Government of

3

Belarus to release Emanuel Zeltser on humanitarian grounds immediately. We urge the Government of Belarus to favorably consider this request in order to save the life of an American citizen suffering in its custody.

8. Emanuel Zeltser is presently represented by a KGB "approved" attorney named Dmitry Goryachko with whom, rather remarkably, the State Department and the Zeltser family remain in contact. On April 20, 2008, Mr. Goryachko provided an affirmation [original and translation annexed as Exhibit A hereto], in which he confirms that:

Emanuel suffers from diabetes, stomach ulcer and heart condition and started having frequent dizziness spells and shortness of breath. He also has an acute form of gouty arthritis and has been in constant excruciating pain due to the fact that he has been denied pain alleviating medications, along with other medicine critical to his health. He has been taken to an emergency room by ambulance several times.[1]

On April 11, 2008, Emanuel was transferred to a state psychiatric hospital and placed under much harsher conditions of detention. He has lost a considerable amount of weight since his transfer and has complained of strong chest pain and severe headaches. Based on my observation, Emanuel's state of health has considerably deteriorated since our first meeting on March 21, 2008.

I have a reason to believe that Emanuel's health is in real danger and his heart condition is life-threatening. There is a risk that Emanuel may not survive more than a few weeks under the circumstances described herein.

9. An organization no less prestigious than the *Association of the Bar of the City of New York*, an independent, non-governmental organization comprised of more than 22,000 lawyers, judges, law professors and government officials, has written to the President of Belarus protesting his arrest, mistreatment, and the conditions of his detention. Indeed, that Bar Association, in their letter to the President of Belarus [Exhibit B], has described the charges lodged against him as having "no basis."

---

[1] I am informed that no ER doctor was available to treat him, so he was simply returned to his cell.

10.  In the words of the New York City Bar Association's president;

> In addition to the physical mistreatment, we understand that Mr. Zeltser has been repeatedly denied access to a U.S. consul, despite diplomatic protests filed by the United States Department of State with the Belarus Ministry of Foreign Affairs. The one visit that was granted, more than two weeks after his arrest, was reportedly held in the presence of a KGB official and thus was not confidential.
>
> Moreover, the charge that was finally brought against Mr. Zeltser and Ms. Funk – nearly 10 days after their arrest and detention – appears to have no basis to it.  As reported to the Association, the charge, without any explanation or detail, alleges that Mr. Zeltser and Ms. Funk engaged in the use of forged documents, yet apparently neither individual was carrying any paper documents while traveling and both were taken into custody immediately upon arrival in Minsk.  Concerns have thus been reported that this is a fabricated charge, created to justify their unlawful detention, and that self-exiled Russian businessman Boris Berezovsky may have instigated action against Mr. Zeltser for his work on behalf of a particular client.
>
> The City Bar is greatly concerned about the arrests and detention of Mr. Zeltser and Ms. Funk, and the reports of physical mistreatment of Mr. Zeltser.  The conduct described above is inconsistent with Belarus' obligations under international agreements, including the International Covenant on Civil and Political Rights (ICCPR) and the Convention Against Torture and Other Inhuman or Degrading Treatment or Punishment (CAT).

<u>The Reprobate Conduct of Plaintiffs' Counsel</u>

11.  Despite the protests of the torture, beatings and medical deprivations to which Emanuel Zeltser is subject, by the United States Department of State, the New York City Bar Association and other international organizations, and despite wide spread international media reporting of what is going in Minsk, Belarus, plaintiffs' counsel in this action, in a writing to Belarus prosecuting authorities, have taken the position that they "support the continuation" of the KGB's conduct and "are interested in cooperating." [See, March 19, 2008 letter from plaintiff's counsel to Belarus Prosecutor General, annexed as Exhibit C].

12.   As we explain below, the circumstances of Emanuel Zeltser's arrest, detention and torture are intimately tied to the conduct of plaintiff's counsel and those acting in concert with them, including Boris Berezovsky, a wanted criminal Russian Oligarch who claims at least 50% interest in the assets of the estate of Arkady Patarkatsishvili, which lies at the heart of this civil action.  Notably, Mr. Patarkatsishvili spent the last day of his life, together with Mr. Berezovsky, at the offices of plaintiff's London counsel; the same counsel who authored the despicable letter of March 19th to the Belarus prosecutor [Exhibit C hereto].[2]

13. The events of the last day of Mr. Patarkatsishvili's life are reported at the *Wikipedia* online service as follows: Patarkatsishvili "spent his last day in the City of London office of international law firm Debevoise and Plimpton, meeting his business partner Boris Berezovsky, his spokesperson Lord Bell and his lawyer Lord Goldsmith [author of Ex. C hereto]... From the City he left for Down Street, Mayfair, to visit Berezovsky's office, and at 7.00 pm was returned to Leatherhead with his Maybach. Shortly after dining, Patarkatsishvili told his family he felt unwell and went upstairs to his bedroom where he was found unconscious after a heart attack."

14.   As noted, Berezovsky, who is represented in London by Michelle Duncan of London's Cadwalader firm, claims a 50% interest in the Patarkatsishvili estate.[3]   Quite interestingly, prior to institution of this action by the Debevoise firm, the plaintiffs herein were

---

[2]  Exhibit C was leaked to the Zeltser family by those in Belarus who support justice for their country and who oppose the dictatorial policies of its leadership who stand ready, at the request of a billionaire criminal seeking to expand his empire, to arrest and torture a U.S. national doing no more than advocating for a client.  Without such honorable people, plaintiffs' counsel's abhorrent letter might never have become known.

[3]  In an interview with UNA-Georgia online magazine which aired on March 22, 2008, three days after the writing of Ex. C, Berezovsky claimed a 50% beneficial interest in Patarkatsishvili's estate. *See*, http://www.civil.ge/eng/detail.php?id=17422.

also represented by Ms. Duncan [complaint ¶ 40]. Although Ms. Duncan was allegedly discharged on or about March 10, 2008, and the Debevoise firm hired [see Complaint, ¶ 56], her involvement in this matter, in behalf of the plaintiffs and Mr. Berezovsky, has not ceased.

15.    Shockingly, and as recounted in Exhibit C hereto [never intended for viewing by the Zeltser side], Ms. Duncan, on March 19, 2008, met in Minsk with Emanuel Zeltser's jailers so that she could be briefed on the progress of his torture and provided with the "evidence" that had been elicited attendant to his beatings. In whose behalf was Ms. Duncan meeting with the Belarus authorities? According to the complaint, she no longer acted for the plaintiffs by that date, having been replaced approximately nine days earlier. She was, though, still representing Berezovsky who apparently maintained great interest in Mr. Zeltser's incarceration and torture. In light of the fact that each and every allegation of fraud made by plaintiffs in their April 4, 2008 complaint [including its *verification*] is made "on information and belief," it appears that even weeks of KGB torture have been unsuccessful in amplifying plaintiff's charges and producing the evidentiary particulars of fraud which are absent from their upon information and belief complaint at bar. It would seem that if more than three weeks of KGB torture have produced no evidence to buttress the complaint's charges, there may be none.

How Did Emanuel Zeltser get to Belarus

16.    According to Emanuel Zeltser's brother Mark, Emanuel called him on or about March 11, 2008 and advised that he would be returning from London directly to Florida because he was fatigued and wanted to rest at Mark's Florida home.

17.    A U.S. citizen cannot enter Belarus without a visa and Emanuel Zeltser signed no application for a Belarus visa. I have written to the Belarus embassy in Washington and have

requested a copy of Emanuel Zeltser's visa application.  I have received no response.  I will receive no response because no such signed visa application exists.  There was no purpose, in any event, in Emanuel Zeltser traveling to Belarus because Mr. Patarkatsishvili owned no assets in Belarus.[4]

18.  Despite the absence of permission to enter the country and no reason to go, on March 12, 2008, Emanuel Zeltser found himself on Boris Berezovsky's private jet traveling from London to Belarus where he was immediately arrested and subject to beatings of the head by the knuckles of his interrogators.  One week later, on March 19th, Berezovsky's lawyer, Michelle Duncan, was in Belarus to meet with the interrogators [sufficient time for torture had been allowed] and to be provided with the "evidence" that they had beaten out of Emanuel's head.  On that same day, plaintiffs' lawyers at the Debevoise firm were writing to the interrogators offering their support and cooperation and also asking for the torture-induced "evidence."  The complaint and the plaintiffs' moving papers at bar provide none.[5]

19.  Ms. Duncan's involvement, on close examination, becomes even more sinister.  Thus, on March 3, 2008, she wrote to the Belarus prosecutor urging him to act "speedily and vigilantly" in the event Emanuel Zeltser entered Belarus to gain access to Patarkatsishvili's [non-existent] assets.  *See*, Ex. B to Duncan declaration in support of OTC.

---

[4]  Even plaintiffs have commenced no proceedings in Belarus relative to the Patarkatsishvili estate because there are no assets in that jurisdiction.  The verified complaint makes reference to assets in England, Gibraltar and Georgia; none in Belarus.

[5]  We are also left with the questions of how Duncan obtained a visa to enter Belarus and when did she apply for it.  Further, did she also travel to Belarus on Berezovsky's private jet?

20.   Why was Ms. Duncan writing to the prosecutor of a jurisdiction where Patarkatsishvili had no assets and where Emanuel Zeltser would never have reason to travel. Two days later, March 5, Emanuel Zeltser was in London (complaint ¶ 54).  Yet, Ms. Duncan did not write to, or seek the aid of, UK authorities even though Mr. Zeltser was present in the jurisdiction and readily detainable. Why did she opt for a country whose tyrannical president maintains intimate ties with her client Berezovsky and how was it that Emanuel Zeltser, one week later and without a visa, was on Berezevsky's private jet flying to Belarus?

Irreparable Harm

21.   Even without immediate answers to these and other material questions, the undeniable facts show that Emanuel Zeltser is incapable of inflicting irreparable harm on the vermin which infest his jail cell, much less the plaintiffs.  The *sine qua non* of preliminary injunction cannot be shown.

The Equities

22.   It appears that plaintiffs and those acting in concert with them have presented a case predicated entirely on belief, innuendo and imagination.  Not a single allegation of fraud in the complaint is supported by anything more persuasive than "information and belief."  Knowing this, they and those acting in concert with them appear to have arranged for a more effective means of gaining "evidence," and/or stifling all competing claims.  This is quite understandable as the estate which lies at the heart of this case may amount to as much as $15 billion.  In light of this appetizing fact, they now desire the imprimatur of a United States District Judge, and his attendant honor, dignity and independence, to continue their voracious seizure of assets of the Patarkatsishvili estate.  Such badge of approval should be resoundingly denied.

9

The Cross-Motion

23.  In the complaint and in the moving papers, plaintiffs and their counsel admit their awareness of Emanuel Zeltser's March 12, 2008 arrest in Belarus.  As early as one week later, they knew that he was being tortured.  They knew this not only from reports of the U.S. State Department, international news media, and from the Zeltser family and his Belarus lawyer, they knew it on personal knowledge because on March 19, 2008, Michelle Duncan, plaintiffs' lawyer until at least March 10, 2008, met with Emanuel Zeltser's interrogators.

24.  Still, more than two weeks later, they purportedly served Emanuel Zeltser with process in this action by delivery to his part time doorman in Manhattan [*see*, Ex. D].  Plaintiff's comical effort to satisfy the most elementary aspects of due process should be rejected by this Court in the strongest terms.  As we show in our accompanying memorandum, fundamental to the concept of due process is the requirement that a litigant be accorded notice reasonably calculated, under all the circumstances, to apprise that party of the pendency of the action and afford him an opportunity to present a defense.  At bar, plaintiffs had actual knowledge that their notice would not and could not be received by Emanuel Zeltser.

25.  Nor does the service effected at bar comport with Rule 4, Fed. R. Civ P., which mandates that service on an individual in a foreign country be made pursuant to international treaty or, in some circumstances by personal delivery to that the defendant.  None of these methods were employed and, accordingly, there is a failure of jurisdiction over Emanuel Zeltser.

## <u>Conclusion</u>

26.  The plaintiff's order to show cause should be rejected and the cross-motion to dismiss granted.

Dated: April 30, 2008

                                     __/s/_____

                                     Harold M. Hoffman

# Exhibit A

# American Russian Law Institute

**A not-for-profit tax exempt public policy research and advisory organization**
**366 Amsterdam Avenue, #176, New York, NY 10024**
**Tel: 212-656-1810**
**E-mail: lawinstitute@mail.ru**

*CERTIFIED TRANSLATION FROM RUSSIAN – April 21, 2008*

*This translation is done by experts-translators of the American-Russian Law Institute and it is certified that the same is an accurate, correct, complete and true translation of the original Affirmation in Russian*

## AFFIRMATION OF ATTORNEY-AT-LAW DMITRY GORYACHKO

1. I am an attorney for Emanuel Zeltser in Minsk, Belarus.
2. I want to inform all interested parties that Emanuel's health is in very poor condition and has worsened considerably during the last couple of weeks.
3. I know that Emanuel suffers from diabetes, stomach ulcer and heart condition and started having frequent dizziness spells and shortness of breath. He also has an acute form of gouty arthritis and has been in constant excruciating pain due to the fact that he has been denied pain alleviating medications, along with other medicine critical to his health.
4. He has been taken to an emergency room by ambulance several times.
5. On April 11, 2008, Emanuel was transferred to a state psychiatric hospital and placed under much harsher conditions of detention. He has lost a considerable amount of weight since his transfer and has complained of strong chest pain and severe headaches.
6. Based on my observation, Emanuel's state of health has considerably deteriorated since our first meeting on March 21, 2008.
7. I have a reason to believe that Emanuel's health is in real danger and his heart condition is life-threatening. There is a risk that Emanuel may not survive more than a few weeks under the circumstances described herein.


Dmitry Goryachko
_____                    New York, April 20, 2008
Dmitry Goryachko,
Attorney-at-law

## ЗАЯВЛЕНИЕ АДВОКАТА ДМИТРИЯ ГОРЯЧКО

1. Я являюсь адвокатом Эммануила Зельцера в Минске, Беларусь.
2. 2. Я хочу проинформировать все заинтересованные стороны о том, что состояние здоровья Эммануила в настоящее время очень плохое и ухудшилось в значительной степени за последние несколько недель.
3. Я знаю от Эммануила, что он страдает от диабета, язвы желудка и проблем с сердцем и в последнее время у него начались частые головокружения и нехватка дыхания. Он также страдает от острой формы артрита и подагры и постоянно испытывает острую боль в связи с тем, что он лишен обезболевающих и других остро необходимых ему лекарств.
4. Несколько раз к нему приезжала скорая помощь.
5. 11 апреля 2008 года Эммануил был переведен в республиканскую клиническую психиатрическую больницу, где условия его содержания стали более суровыми. Он сильно потерял в весе с момента этого перевода и жалуется на сильную грудную и головную боли.
6. На основании моих наблюдений, состояние здоровья Эммануила значительно ухудшилось со дня нашей первой встречи 21 марта 2008 года.
7. У меня есть все основания полагать, что здоровье Эммануила находится в опасности и его боли в сердце могут составлять угрозу для его жизни. Есть риск, что Эммануил может не вынести более чем несколько недель в вышеуказанных условиях.

_____
Дмитрий Горячко, адвокат

Нью-Йорк, 20 апреля 2008 года

# Exhibit B



BARRY M. KAMINS
**PRESIDENT**
Phone: (212) 382-6700
Fax: (212) 768-8116
bkamins@nycbar.org

April 23, 2008

President Alexander Lukashenko
38 Karl Marx Street
Minsk 220016
Republic of Belarus

Dear Mr. President:

I write on behalf of the Association of the Bar of the City of New York ("Association") to express our concern over the continued detention and physical mistreatment of Mr. Emanuel Zeltser, an American attorney, and the detention of his assistant, Ms. Vladlena Funk, a permanent resident of the United States, in Belarus.

The Association is an independent non-governmental organization of more than 22,000 lawyers, judges, law professors and government officials. Founded in 1870, the Association has a long history of dedication to human rights, notably through its Committee on International Human Rights, which investigates and reports on human rights conditions around the world.

It has been brought to our attention that Mr. Zeltser and Ms. Funk were arrested without warning on March 12, 2008, as soon as they landed and deplaned in Minsk. They were subsequently detained. No charges were brought against them until over a week later, on March 21.

It has also been reported, to the Association's great concern, that Mr. Zeltser has suffered severe physical and mental mistreatment while in detention. It has been reported that since being detained four weeks ago, he has been repeatedly subject to beatings in jail, including direct blows to the head, and has been interrogated by the KGB Special Interrogations Unit. Most recently, Mr. Zeltser has reportedly been transferred to a state psychiatric hospital.

We also understand that Mr. Zeltser, a patient of several medical conditions, including diabetes, arthritis, heart problems, and stomach ulcer, has been denied medications critical to his health. As reported, these medicines have been withheld (even after being shown to him), despite a medical report from Mr. Zeltser's physician provided to the Belarussian authorities stating that Mr. Zeltser may not survive without the medications indicated.

We have been informed that due to his critical health condition, Mr. Zeltser has twice been taken by ambulance to an emergency room, although in neither case was he provided medical attention, as no physicians were on hand. Mr. Zeltser suffers from a severe form of arthritis, among other serious conditions, and is reportedly in constant pain without his

medications.  According to his Belarus-appointed lawyer, he is in increasingly precarious health.

In addition to the physical mistreatment, we understand that Mr. Zeltser has been repeatedly denied access to a U.S. consul, despite diplomatic protests filed by the United States Department of State with the Belarus Ministry of Foreign Affairs.  The one visit that was granted, more than two weeks after his arrest, was reportedly held in the presence of a KGB official and thus was not confidential.

Moreover, the charge that was finally brought against Mr. Zeltser and Ms. Funk – nearly 10 days after their arrest and detention – appears to have no basis to it.  As reported to the Association, the charge, without any explanation or detail, alleges that Mr. Zeltser and Ms. Funk engaged in the use of forged documents, yet apparently neither individual was carrying any paper documents while traveling and both were taken into custody immediately upon arrival in Minsk.  Concerns have thus been reported that this is a fabricated charge, created to justify their unlawful detention, and that self-exiled Russian businessman Boris Berezovsky may have instigated action against Mr. Zeltser for his work on behalf of a particular client.

The City Bar is greatly concerned about the arrests and detention of Mr. Zeltser and Ms. Funk, and the reports of physical mistreatment of Mr. Zeltser.  The conduct described above is inconsistent with Belarus' obligations under international agreements, including the International Covenant on Civil and Political Rights (ICCPR) and the Convention Against Torture and Other Inhuman or Degrading Treatment or Punishment (CAT).

First, Article 9(1) of ICCPR states that no one shall be subjected to arbitrary arrest or detention.  It further states:  "Anyone who is arrested shall be informed, at the time of arrest, of the reasons for his arrest and shall be promptly informed of any charges against him."  Further, the ICCPR specifies that anyone arrested or detained on a criminal charge should be brought "promptly before a judge" and that such person is entitled to "trial within a reasonable time or to release."  *See* Article 9(3).  Detention in custody while awaiting trial "shall *not* be the general rule" *Id.*  (emphasis added).  In addition, a detainee "shall be entitled to take proceedings before a court, in order that the court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful."  Article 9(4).

Neither Mr. Zeltser nor Ms. Funk was informed of the reasons for arrest or the charges against them at the time of their arrest on March 12, 2008.  Indeed, no charges were brought against them until almost 10 days after their arrest and detention.  Nor do they appear to have been given an opportunity to challenge the lawfulness of their detention before an impartial judge.  These circumstances constitute arbitrary arrest and detention of the kind prohibited by international standards.

In addition, international agreements prohibit (without permitted derogation) the kind of physical mistreatment to which Mr. Zeltser has been subject.  Article 7 of the

ICCPR explicitly states:  "No one shall be subjected to torture or to cruel, inhuman, or degrading treatment or punishment."  *See also* Rule 31 of the United Nations Standard Minimum Rules for the Treatment of Prisoners.  The ICCPR also requires that all persons deprived of their liberty be "treated with humanity and with respect for the inherent dignity of the human person."  Similarly, the CAT obligates Belarus to refrain from any form of torture, defined in Article 1 as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession."  Additionally, Principle 21(1) of the Body of Principles for the Protection of All Persons under any form of Detention prohibits an interrogator from using the situation of a detained person to compel him to confess, to incriminate himself or to otherwise testify against another person.

3

The conduct described above, including the beating of Mr. Zeltser and the withholding of medication as a tool to pressure him, apparently in connection with interrogation of him, constitutes torture or cruel, inhuman, or degrading treatment, as defined in international treaties, and is strictly prohibited.

In addition, Belarus's own criminal code prohibits such treatment, establishing criminal responsibility when a person in a position of responsibility exceeds his authority and engages in violence or tormenting or humiliating treatment. *See* Article 167, Belarus Criminal Code. It is also a crime in Belarus to fabricate charges against a person known to be innocent. *See* Article 172, Belarus Criminal Code.

In light of Belarus's international obligations, we respectfully urge you to take all steps in your power to release Mr. Zeltser and Ms. Funk immediately, to allow Mr. Zeltser access to his medications, and to ensure that they are subject to no further torture or cruel or degrading treatment, including interrogation under inhumane conditions. Time is of critical importance, as we understand Mr. Zeltser's health to be in a precarious state, and we thus ask you to act at once, without any further delay.

Very truly yours,

Barry Kamins

Barry Kamins

Cc:   Ambassador Mikhail Khvostov
      Embassy of the Republic of Belarus
      1619 New Hampshire Avenue NW
      Washington, D.C. 20009
      Fax: 202-986-1805

      Consulate General of the Republic of Belarus
      708 Third Ave., Suite 2101
      New York, NY 10017
      Fax: 212-682-5491

      Mr. Grigory Vasilevich
      Prosecutor General
      24 Intenationalnaya St.
      Minsk 220050
      Belarus

      Paula J. Dobriansky
      U.S. Under Secretary of State for Democracy and Global Affairs
      U.S. Department of State
      2201 C Street NW
      Washington, D.C. 20520

4

Daniel Fried
Assistant Secretary, Bureau of European and Eurasian Affairs
U.S. Department of State
2201 C Street NW
Washington, D.C. 20520

# Exhibit C

# DEBEVOISE & PLIMPTON LLP

Tower 42
Old Broad Street
London EC2N 1HQ
Tel +44 20 7786 9000
Fax +44 20 7588 4180
www.debevoise.com

The Rt Hon Lord Goldsmith QC
European Chair of Litigation
Tel +44 20 7786 3007
phgoldsmith@debevoise.com

19 March 2008

Mr Grigory Vasilevich
Prosecutor General
24 Internationalnaya St.
Minsk
220050
Belarus

By email: gusev@sbp.gov.by

### Estate of Badri Patarkatsishvili

Dear Sir:

We act for Inna Gudavadze and her two daughters, Liana Zhmotova and Iya Patarkatsishvili. Mrs. Gudavadze is the widow of Badri Patarkatsishvili, a prominent Georgian businessman and politician who died in the United Kingdom on 12 February 2008. Our clients are heirs and beneficiaries of Mr. Patarkatsishvili's estate

Our clients are concerned that they may be the victims of attempted fraud. We are aware of the letter sent to you on 3 March 2008 by Cadwalader, Wickersham & Taft LLP, then acting for Mrs. Gudavadze, regarding the actions of a number of individuals.

We understand that Mr. Emmanuel Zeltser, a New York lawyer, is currently in custody in Minsk and that you are investigating whether he may have attempted to defraud by relying on invalid or forged documentation purporting to give him authority to act on behalf of the estate of Mr. Patarkatsishvili. We can confirm that our clients do not accept that Mr. Zeltser has such authority to act.

Given the seriousness of this matter and the importance of it to our clients, we can confirm that our clients support the continuation of your investigation. Moreover, we are interested in cooperating with your investigation on behalf of our clients. We understand that a member of your office is today meeting with Mrs. Michelle Duncan of Cadwalader in connection with this matter, which we hope will be productive for you. We too would be happy to answer such questions as you may have and provide you with further information that is or becomes available to us. At the same time, we would be interested to understand what evidence you have gathered to date regarding Mr. Zeltser and also of a Mr. Joseph Kay for whom he may have claimed to be acting. In addition, we would respectfully ask you to keep us informed of any further information you obtain in this regard

---

Debevoise & Plimpton LLP is a registered limited liability partnership established under the laws of the State of New York
A list of the partners' names and their professional qualifications is open to inspection at the above address
The partners are either solicitors or registered foreign lawyers The firm is regulated by the Solicitors Regulation Authority

New York • Washington, D.C • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

2                          March 19, 2008

If you wish to discuss any of the above, or to arrange a meeting at a mutually convenient time, please do not hesitate to contact Lord Goldsmith of this office on +44 207 786 9000 or at phgoldsmith@debevoise.com

We look forward to hearing from you.

Yours faithfully,

*Debevoise & Plimpton LLP*

Debevoise & Plimpton LLP

# Exhibit D

AFFIDAVIT OF SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INNA GUDAVADZE, LIANA ZHMOTOVA AND
IYA PATARKATSISHVILI

*Plaintffs*

- against -

JOSEPH KAY(A/K/A JOSEPH KAKALASHVILI A/K/A
JOSEPH KEJ A/K/A IOSEB KAKALASHVILI A/K/A IOSEB
KAKIASHVILI), AND EMANUEL ZELTSER

Defendant(s)

INDEX #:
08 CV 03363
DATE FILED:
04/04/2008

JUDGE:
RICHARD J. SULLIVAN
ATTORNEY FILE#:

STATE OF NEW YORK: COUNTY OF NASSAU: ss:

MICHAEL CORLEONE, BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK

That on 04/05/2008, 01:21PM at 235 WEST 76TH STREET, NEW YORK NY 10023, deponent served the within SUMMONS IN A CIVIL CASE, VERIFIED COMPLAINT, FRCP 7.1 DISCLOSURE STATEMENT, CIVIL COVERSHEET, INDIVIDUAL PRACTICES OF RICHARD J. SULLIVAN, CASE MANAGEMENT PLAN AND SCHEDULING ORDER ECF, DEFAULT JUDGEMENT PROCEDURE, 3RD AMENDED INSTRUCTIONS FOR FILING AN ELECTRONIC CASE OR APPEAL & PROCEDURES FOR ELECTRONIC CASE FILING
on EMANUEL ZELTSER, a defendant in the above action.

By delivering a true copy thereof to and leaving with OSCAR MATOS/DOORMAN, a person of suitable age and discretion at the above address, the said premises being the defendant's dwelling place/usual place of abode within the State of NEW YORK.

Deponent completed service by depositing a copy of the above described papers in a post paid, properly addressed envelope in an official depository under the exclusive care and custody of the United States Post Office in the State of NEW YORK, on 04/05/2008 addressed to defendant EMANUEL ZELTSER at 235 WEST 76TH STREET, APT. #16A., NEW YORK NY 10023 with the envelope bearing the legend PERSONAL AND CONFIDENTIAL and did not indicate on the outside thereof that the communication was from an attorney or concerned an action against the defendant.

DEPONENT DESCRIBES THE INDIVIDUAL SERVED AS FOLLOWS:
Sex M    Approximate age 61    Approximate height 6'01"    Approximate weight 240    Color of skin WHITE    Color of hair BALDING WHITE    Other ACCENT, GLASSES

OSCAR MATOS told the deponent that EMANUEL ZELTSER was not presently in the military service of the United States Government or on active duty in the military service in the State of NEW YORK or a dependent of anybody in the military.

THE DOORMAN PERFORMS NORMAL DUTIES AS A DOORMAN AND WOULD NOT ALLOW DEPONENT ACCESS TO DEFENDANT'S APARTMENT DOOR.***

DEBEVOISE & PLIMPTON
LLP

919 THIRD AVENUE

NEW YORK, NY 10022
(212)909-6000

MICHAEL CORLEONE

Sworn to before me on 04/07/2008
MAUREEN MCCAFFREY  NO.01MC5018583
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES OCTOBER 4, 2009

APPLE ATTORNEY SERVICE, PO BOX 470, MINEOLA NY 11501-0470
Phone: 516-742-0077 * Fax: 516-742-4726

# Exhibit E

Embassy Calls for Humanitarian Release of U.S. Citizen
>
>
> U.S. Embassy Minsk Press Statement
> April 29, 2008
>
> The United States is deeply concerned about the deteriorating health of
> American citizen Emanuel Zeltser, imprisoned in Belarus. Since his
> detention on March 12, the U.S. Embassy in Minsk has only been permitted to
> visit him on two occasions, March 27 and April 25.
>
> During the visit on April 25, the consular officer from the U.S. Embassy
> noticed a significant physical deterioration of Mr. Zeltser's health since
> the previous visit on March 27. Mr. Zeltser lost a considerable amount of
> weight and was very weak. Despite all efforts by the U.S. Embassy, his
> lawyer, and his U.S. doctor to comply with prison procedures, Mr. Zeltser
> has not been permitted to take his required daily medications, which may be
> causing irreversible internal damage.
>
> The United States is extremely concerned for the health and safety of Mr.
> Zeltser should he remain in the care and custody of the Government of
> Belarus. On April 25, the Department of State requested the Government of
> Belarus to release Emanuel Zeltser on humanitarian grounds immediately. We
> urge the Government of Belarus to favorably consider this request in order
> to save the life of an American citizen suffering in its custody.
>
>
>
>
>

HAROLD M. HOFFMAN, ESQ.
1140 AVENUE OF THE AMERICAS, SUITE M-01
NEW YORK, NEW YORK 10036
(212) 486-6322
*ATTORNEY FOR DEFENDANT EMANUEL ZELTSER*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **INNA GUDAVADZE,** et al., <br><br> Plaintiffs, <br><br> -against- <br><br> **JOSEPH KAY** and **EMANUEL ZELTSER,** <br><br> Defendants. | 08 Civ 3363 (RJS) |

**MEMORANDUM OF DEFENDANT EMANUEL ZELTSER**
**IN SUPPORT OF CROSS-MOTION TO DISMISS ACTION**
**AND IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE**

April 30, 2008

**Introduction**

In its landmark decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), the United States Supreme Court firmly established the principle that an elementary and fundamental requirement of due process in any proceeding "is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" 339 U.S. at 314. [1]

When counsel for plaintiffs at bar dispatched their process server to defendant Emanuel Zeltser's Manhattan home on April 5, 2008, they knew he would not be there; that the papers left with his doorman would never reach him; that he would never be permitted to review the claims against him or confer with counsel; and that, under all the circumstances, the "service" which they made would never apprise Mr. Zeltser of the pendency of the action and/or afford him an opportunity to defend himself.

Fundamental principles of law, equity, humanity and justice mandate that Emanuel Zeltser's cross-motion to dismiss be granted.

Moreover, as we show below, even were Emanuel Zeltser's KGB jailers miraculously to deliver his authentic waiver of objection to personal jurisdiction, still, plaintiff's extraordinary application for injunctive relief could not be granted. This, because of plaintiff's abject failure to demonstrate irreparable harm, probability of success, or any equities tipping in their favor.

---

[1] *Mullane* held that notice by publication was not sufficient with respect to an individual whose name and address are known or easily ascertainable. Similarly, in *Covey v. Town of Somers*, 351 U.S. 141 (1956), the Court held that notice by mailing, posting, and publication was inadequate where the individual involved was known by the town to be an incompetent without the protection of a guardian.

1

**The Relevant Facts**

I have been retained as Emanuel Zeltser's attorney by his brother, Mark Zeltser, an internationally renowned concert pianist (Decl. ¶ 1). I have not spoken or otherwise communicated with my client concerning this action, nor is he even aware of its pendency (Decl. ¶¶ 1, 5).  As plaintiffs and their counsel know full well, and as they admit in their complaint (¶¶ 67-68), Emanuel Zeltser, an attorney admitted to practice before this Court, as well as the courts of New York, has, since March 12, 2008, been unlawfully detained in Minsk, Belarus by that country's committee on state security ("KGB").

The mortally precarious situation in which Emanuel Zeltser finds himself is hardly the product of happenstance.  As we explain in our accompanying declaration, he had no visa for travel to Belarus – despite the mandatory requirement that he apply for and obtain same – and no reason to go to that country.  As we also show in our declaration, plaintiffs and those acting in concert with them have comported themselves in a manner so morally base and in a fashion so shockingly inhumane, that even were they able to demonstrate irreparable injury and probability of success on the merits – they cannot – they would have forfeited any entitlement to affirmative relief from this honorable Court.

Emanuel Zeltser has not received this Court's process, nor read the plaintiff's pleading or motion papers.  Since his arrest in Minsk, Belarus on March 12, 2008, he has effectively had no contact with the outside world.  He has not spoken to a Western lawyer and he has not been brought before any judge or magistrate to answer the charges against him.  He has been shifted back and forth between a specially designated KGB prison and a state psychiatric hospital, a well known "resting place" of political prisoners of the former Soviet Union era (See, Ex. A to

accompanying Declaration).

Since March 12, 2008, Emanuel Zeltser has been subjected to daily beatings and torture. He has been deprived of his much needed medications, although his KGB tormentors have taken the time to exhibit these life-saving medications to him, before taking them away. (Decl. ¶ 6; *and see* Ex. B).

On April 25, 2007, Ms. Mary Dickerson of the U.S. Department of State reported by telephone to Emanuel's brother Mark that Emanuel was being continually "struck in the head by the knuckles of his interrogators;" that "his health was rapidly deteriorating;" and, that "he was beaten upon asking his KGB interrogators to allow him to swear an affidavit of his condition for the United States consular official in Minsk." Permission to swear such affidavit was denied. (Decl. ¶ 7).

Yesterday, April 29, 2008, the U.S. Department of State issued a press release [Ex. E to Declaration] as follows:

> **U.S. Embassy Minsk Press Statement**
> **April 29, 2008**
>
> The United States is deeply concerned about the deteriorating health of American citizen Emanuel Zeltser, imprisoned in Belarus. Since his detention on March 12, the U.S. Embassy in Minsk has only been permitted to visit him on two occasions, March 27 and April 25.
>
> During the visit on April 25, the consular officer from the U.S. Embassy noticed a significant physical deterioration of Mr. Zeltser's health since the previous visit on March 27. Mr. Zeltser lost a considerable amount of weight and was very weak. Despite all efforts by the U.S. Embassy, his lawyer, and his U.S. doctor to comply with prison procedures, Mr. Zeltser has not been permitted to take his required daily medications, which may be causing irreversible internal damage.
>
> The United States is extremely concerned for the health and safety of Mr.

Zeltser should he remain in the care and custody of the Government of Belarus. On April 25, the Department of State requested the Government of Belarus to release Emanuel Zeltser on humanitarian grounds immediately. We urge the Government of Belarus to favorably consider this request in order to save the life of an American citizen suffering in its custody.

Mr. Zeltser is presently represented by a KGB "approved" attorney named Dmitry Goryachko with whom, rather remarkably, the State Department and the Zeltser family remain in contact.  On April 20, 2008, Mr. Goryachko provided an affirmation [Exhibit A], in which he confirms that:

Emanuel suffers from diabetes, stomach ulcer and heart condition and started having frequent dizziness spells and shortness of breath. He also has an acute form of gouty arthritis and has been in constant excruciating pain due to the fact that he has been denied pain alleviating medications, along with other medicine critical to his health. He has been taken to an emergency room by ambulance several times.[2]

On April 11, 2008, Emanuel was transferred to a state psychiatric hospital and placed under much harsher conditions of detention. He has lost a considerable amount of weight since his transfer and has complained of strong chest pain and severe headaches. Based on my observation, Emanuel's state of health has considerably deteriorated since our first meeting on March 21, 2008.

I have a reason to believe that Emanuel's health is in real danger and his heart condition is life-threatening. There is a risk that Emanuel may not survive more than a few weeks under the circumstances described herein.

An organization no less prestigious than the *Association of the Bar of the City of New York*, an independent, non-governmental organization comprised of more than 22,000 lawyers, judges, law professors and government officials, has written to the President of Belarus protesting his arrest, mistreatment, and the conditions of his detention.  Indeed, that Bar

---

[2]  I am informed that no ER doctor was available to treat him, so he was simply returned to his cell.

4

Association, in their letter to the President of Belarus [Exhibit B], has described the charges

lodged against him as having "no basis." In the words of the New York City Bar Association's

president;

> In addition to the physical mistreatment, we understand that Mr. Zeltser has been
> repeatedly denied access to a U.S. consul, despite diplomatic protests filed by the
> United States Department of State with the Belarus Ministry of Foreign Affairs.
> The one visit that was granted, more than two weeks after his arrest, was
> reportedly held in the presence of a KGB official and thus was not confidential.
>
> Moreover, the charge that was finally brought against Mr. Zeltser and Ms. Funk –
> nearly 10 days after their arrest and detention – appears to have no basis to it. As
> reported to the Association, the charge, without any explanation or detail, alleges
> that Mr. Zeltser and Ms. Funk engaged in the use of forged documents, yet
> apparently neither individual was carrying any paper documents while traveling
> and both were taken into custody immediately upon arrival in Minsk. Concerns
> have thus been reported that this is a fabricated charge, created to justify their
> unlawful detention, and that self-exiled Russian businessman Boris Berezovsky
> may have instigated action against Mr. Zeltser for his work on behalf of a
> particular client.
>
> The City Bar is greatly concerned about the arrests and detention of Mr. Zeltser
> and Ms. Funk, and the reports of physical mistreatment of Mr. Zeltser. The
> conduct described above is inconsistent with Belarus' obligations under
> international agreements, including the International Covenant on Civil and
> Political Rights (ICCPR) and the Convention Against Torture and Other Inhuman
> or Degrading Treatment or Punishment (CAT).

**The Reprobate Conduct of Plaintiffs' Counsel**

Despite the protests of the torture, beatings and medical deprivations to which Emanuel

Zeltser is subject, by the United States Department of State, the New York City Bar Association

and other international organizations, and despite wide spread international media reporting of

what is going in Minsk, Belarus, plaintiffs' counsel in this action, in a writing to Belarus

prosecuting authorities, have taken the position that they "support the continuation" of the

KGB's conduct and "are interested in cooperating." [Exhibit C to Declaration].

The circumstances of Emanuel Zeltser's arrest, detention and torture are intimately tied to the conduct of plaintiff's counsel and those acting in concert with them, including Boris Berezovsky, a wanted criminal Russian Oligarch who claims at least 50% interest in the assets of the estate of Arkady Patarkatsishvili, which lies at the heart of this civil action.  Notably, Mr. Patarkatsishvili spent the last day of his life, together with Mr. Berezovsky, at the offices of plaintiff's London counsel; the same counsel who authored the despicable letter of March 19th to the Belarus prosecutor [Exhibit C].[3]

The events of the last day of Mr. Patarkatsishvili's life are reported at the *Wikipedia* online service as follows: Patarkatsishvili "spent his last day in the City of London office of international law firm Debevoise and Plimpton, meeting his business partner Boris Berezovsky, his spokesperson Lord Bell and his lawyer Lord Goldsmith [author of Ex. C]... From the City he left for Down Street, Mayfair, to visit Berezovsky's office, and at 7.00 pm was returned to Leatherhead with his Maybach. Shortly after dining, Patarkatsishvili told his family he felt unwell and went upstairs to his bedroom where he was found unconscious after a heart attack."

Berezovsky, who is represented in London by Michelle Duncan of London's Cadwalader firm, claims a 50% interest in the Patarkatsishvili estate.[4]  Quite interestingly, prior to institution of this action by the Debevoise firm, the plaintiffs herein were also represented by Ms. Duncan

---

[3]  Exhibit C was leaked to the Zeltser family by those in Belarus who support justice for their country and who oppose the dictatorial policies of its leadership who stand ready, at the request of a billionaire criminal seeking to expand his empire, to arrest and torture a U.S. national doing no more than advocating for a client.  Without such honorable people, plaintiffs' counsel's abhorrent letter might never have become known.

[4]  In an interview with UNA-Georgia online magazine which aired on March 22, 2008, three days after the writing of Ex. C, Berezovsky claimed a 50% beneficial interest in Patarkatsishvili's estate. *See*, http://www.civil.ge/eng/detail.php?id=17422.

[complaint ¶ 40]. Although Ms. Duncan was allegedly discharged on or about March 10, 2008, and the Debevoise firm hired [see Complaint, ¶ 56], her involvement in this matter, in behalf of the plaintiffs and Mr. Berezovsky, has not ceased.

Shockingly, and as recounted in Exhibit C hereto [never intended for viewing by the Zeltser side], Ms. Duncan, on March 19, 2008, met in Minsk with Emanuel Zeltser's jailers so that she could be briefed on the progress of his torture and provided with the "evidence" that had been elicited attendant to his beatings. In whose behalf was Ms. Duncan meeting with the Belarus authorities? According to the complaint, she no longer acted for the plaintiffs by that date, having been replaced approximately nine days earlier. She was, though, still representing Berezovsky who apparently maintained great interest in Mr. Zeltser's incarceration and torture. In light of the fact that each and every allegation of fraud made by plaintiffs in their April 4, 2008 complaint [including its *verification*] is made "on information and belief," it appears that even weeks of KGB torture have been unsuccessful in amplifying plaintiff's charges and producing the evidentiary particulars of fraud which are absent from their upon information and belief complaint at bar. It would seem that if more than three weeks of KGB torture have produced no evidence to buttress the complaint's charges, there may be none.

**How Did Emanuel Zeltser get to Belarus**

According to Emanuel Zeltser's brother Mark, Emanuel called him on or about March 11, 2008 and advised that he would be returning from London directly to Florida because he was fatigued and wanted to rest at Mark's Florida home. A U.S. citizen cannot enter Belarus without a visa and Emanuel Zeltser signed no application for a Belarus visa. I have written to the Belarus embassy in Washington and have requested a copy of Emanuel Zeltser's visa application. I have

received no response.  I will receive no response because no such signed visa application exists.

There was no purpose, in any event, in Emanuel Zeltser traveling to Belarus because Mr.

Patarkatsishvili owned no assets in Belarus.[5]

Despite the absence of permission to enter the country and no reason to go, on March 12,

2008, Emanuel Zeltser found himself on Boris Berezovsky's private jet traveling from London to

Belarus where he was immediately arrested and subject to beatings of the head by the knuckles of

his interrogators.  One week later, on March 19th, Berezovsky's lawyer, Michelle Duncan, was in

Belarus to meet with the interrogators [sufficient time for torture had been allowed] and to be

provided with the "evidence" that they had beaten out of Emanuel's head.  On that same day,

plaintiffs' lawyers at the Debevoise firm were writing to the interrogators offering their support

and cooperation and also asking for the torture-induced "evidence."  The complaint and the

plaintiffs' moving papers at bar provide none.[6]

Ms. Duncan's involvement, on close examination, becomes even more sinister.  Thus, on

March 3, 2008, she wrote to the Belarus prosecutor urging him to act "speedily and vigilantly" in

the event Emanuel Zeltser entered Belarus to gain access to Patarkatsishvili's [non-existent]

assets.  *See*, Ex. B to Duncan declaration in support of OTC.  But, why was Ms. Duncan writing

to the prosecutor of a jurisdiction where Patarkatsishvili had no assets and where Emanuel

Zeltser would never have reason to travel.  Two days later, March 5, Emanuel Zeltser was in

_____

[5]  Even plaintiffs have commenced no proceedings in Belarus relative to the Patarkatsishvili estate because there are no assets in that jurisdiction.  The verified complaint makes reference to assets in England, Gibraltar and Georgia; none in Belarus.

[6]  We are also left with the questions of how Duncan obtained a visa to enter Belarus and when did she apply for it.  Further, did she also travel to Belarus on Berezovsky's private jet?

8

London (complaint ¶ 54).  Yet, Ms. Duncan did not write to, or seek the aid of, UK authorities

even though Mr. Zeltser was present in the jurisdiction and readily detainable. Why did she opt

for a country whose tyrannical president maintains intimate ties with her client Berezovsky and

how was it that Emanuel Zeltser, one week later and without a visa, was on Berezovsky's private

jet flying to Belarus?

<u>The Equities</u>

It appears that plaintiffs and those acting in concert with them have presented a case

predicated entirely on belief, innuendo and imagination.  Not a single allegation of fraud in the

complaint is supported by anything more persuasive than "information and belief."  Knowing

this, they and those acting in concert with them appear to have arranged for a more effective

means of gaining "evidence," and/or stifling all competing claims.  This is quite understandable

as the estate which lies at the heart of this case may amount to as much as $15 billion.  In light of

this appetizing fact, they now desire the imprimatur of a United States District Judge, and his

attendant honor, dignity and independence, to continue their voracious seizure of assets of the

Patarkatsishvili estate.  Such badge of approval should be resoundingly denied.


**ARGUMENT**

**POINT I**

**<u>THE "SERVICE" AT BAR DOES NOT CONFER PERSONAL JURISDICTION</u>**

The purported April 5, 2008 service at bar upon Emanuel Zeltser by delivery of process in

Manhattan to his part time doorman is nothing short of comical.  But for the fact that Emanuel

Zeltser is being slowly murdered in Minsk, Belarus – an effort in which plaintiffs' counsel have expressed the fervent desire to cooperate – it would be laugh out loud funny.

In the complaint and in the moving papers, plaintiffs and their counsel admit their awareness of Emanuel Zeltser's March 12, 2008 arrest in Belarus. As early as one week later, they knew that he was being tortured. They knew this not only from reports of the U.S. State Department, international news media, and from the Zeltser family and his Belarus lawyer, they knew it on personal knowledge because on March 19, 2008, Michelle Duncan, plaintiffs' lawyer until at least March 10, 2008, met with Emanuel Zeltser's interrogators in Minsk.

Still, more than two weeks later, they purportedly served Emanuel Zeltser with process in this action by delivery to his part time doorman in Manhattan [*see*, Ex. D]. But the United States Supreme Court has expressed the view that plaintiffs' counsel's pathetic efforts at humor are not to be countenanced.

In *Robinson v. Hanrahan*, 409 U.S. 38 (1972), quite analogous to the situation at bar, appellant was arrested on a charge of armed robbery and, immediately thereafter, the State of Illinois instituted forfeiture proceedings against appellant's automobile pursuant to the Illinois vehicle forfeiture statute. Appellant was held in custody in the Cook County jail from June 16, 1970, to October 7, 1970, awaiting trial. Nevertheless, the State mailed notice of the pending forfeiture proceedings, not to the jail facility, but to appellant's home, the address listed in official records. After a hearing, the court ordered a forfeiture and sale of appellant's vehicle. This, despite the undisputed fact that appellant, who remained in custody throughout the forfeiture proceedings, did not receive such notice until his release.

In its decision, the U.S. Supreme Court held that (409 U.S. at 40) plaintiff;

10

knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail. Under these circumstances, it cannot be said that the State made any effort to provide notice which was 'reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings.

The fundamental concept of notice reasonably calculated to apprise a litigant of proceedings against him has, of course, been adhered to in this circuit. In *U.S. v. Braunig,* 553 F.2d 777, 780 (2d Cir. 1977), the Court held that "using a 'legal' form of notice knowing full well that [defendant] would never see or hear of it," was an unacceptable and unlawful farce which could not be countenanced. The underlying and most fundamental concept being protected by the Second Circuit in that case was that where the plaintiff knows that the opposing litigant's condition or location is such that he will not be adequately apprised of the proceeding in question through the statutory method of notice used, the due process clause will not have been complied with. In *Braunig*, the defendant was incarcerated in Canada, and the plaintiff knew as much.

Nor does the plaintiffs' purported service at bar comport with the Federal Rules of Civil Procedure. Specifically, Rule 4, Fed. R. Civ P., makes particular provision for service of an individual in a foreign country. The Rule states:

**(f) Serving an Individual in a Foreign Country.**

Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served at a place not within any judicial district of the United States:
(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

11

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

© unless prohibited by the foreign country's law, by:

(I) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Plaintiffs at bar employed none of these means, nor did they so much as attempt the service required by Rule 4, even though it is undisputed that they knew that they were attempting to effect service on an individual "in a foreign country."  Moreover, the plaintiffs knew full well that the farcical service which they employed was not reasonably calculated to give defendant Emanuel Zeltser any notice of the proceedings against him. Plaintiffs were simply play-acting.

Their efforts at buffoonery should be rejected and the defendant's cross-motion granted.


## POINT II

## IRREPARABLE HARM

The facts show that plaintiffs and those acting in concert with them have already taken the steps necessary to insure that Emanuel Zeltser cannot inflict any harm on them.  The record demonstrates the undeniable: Emanuel Zeltser is incapable of inflicting any irreparable harm on anyone or anything; much less the plaintiffs.  The *sine qua non* of preliminary injunction cannot be shown.

A mere four days ago, the Second Circuit, in *County of Nassau v. Leavitt*, ____ F.3d ___, 2008 WL 1836382 (2d Cir. April 25, 2008), reiterated that :

> A party seeking a preliminary injunction in this circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir.2004).

At bar, even in the absence of an injunction, Emanuel Zeltser will not be representing or presenting, to anyone, any words or documents evidencing his authority to act in behalf of the estate of the late Mr. Patarkatsishvili. [7]

Plaintiffs need not fear that he might do so. Based on the state of his health, it is unlikely that he will ever do so. Plaintiffs, and those acting in concert with them, have already, rather effectively, taken the steps necessary to see to this.

Absent any prospect of irreparable harm, no injunction can issue.

## POINT III

## LIKELIHOOD OF SUCCESS AND BALANCE OF THE EQUITIES

_____The plaintiffs and those acting in concert with them have presented a case predicated entirely on belief, innuendo and imagination. Not a single allegation of fraud in the complaint is supported by anything more persuasive than "information and belief." *See*, *e.g.*, Complaint ¶¶ 2, 3, 4, 5, 6, 7, 12, 13, 14, 22, 24, 26, 27, 29, 32, 34, 35, 37, 43, 44, 48, 51, 52, 57, 59, 60, 61, 62, 67, 68. This, is the face of black letter law that allegations of fraud based upon "information and

---

[7] In ¶ 71 of their verified complaint, plaintiffs allege that they will be irreparably harmed if Mr. Zeltser "continue[s] fraudulently to represent that [he is] authorized to speak and act on behalf of plaintiffs or the estate of Mr. Patarkatsishvili."

13

belief" are insufficient to state any cognizable claim. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655 (2d Cir. 1997).

Even after, at this point, seven full weeks of torture, there is not a scintilla of hard evidence showing any fraud by any defendant. This can hardly be said, though, for plaintiffs and those acting in concert with them. Indeed, counsel for plaintiffs in this case and those acting in concert with them have much to answer for, and will continue to do so, irrespective of the ultimate fate of Mr. Zeltser.

In any event, at this juncture, plaintiffs have demonstrated neither likelihood of success nor serious questions going to the merits; nor have they shown the balance of equities in their favor. They have shown only a remarkable absence of humanity and apparent complicity in a morally base attempt to achieve, by resort to extra-judicial measures, uncorrectable advantage in their voracious effort to seize the abundant wealth left by Mr. Patarkatsishvili. These efforts should not be rewarded with the imprimatur of this honorable Court.

14

## <u>Conclusion</u>

For all of the foregoing reasons, and for those set forth in the accompanying Declaration,

we respectfully ask that the plaintiff's order to show cause be rejected, and the cross-motion to

dismiss granted.

Dated: April 30, 2008

Respectfully submitted,

___/s/_____

Harold M. Hoffman

ATTORNEY FOR DEFENDANT EMANUEL ZELTSER

HAROLD M. HOFFMAN, ESQ.
1140 AVENUE OF THE AMERICAS, SUITE M-01
NEW YORK, NEW YORK 10036
(212) 486-6322
*ATTORNEY FOR DEFENDANT EMANUEL ZELTSER*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**INNA GUDAVADZE,** et al.,

                  Plaintiffs,

        -against-

**JOSEPH KAY** and **EMANUEL ZELTSER,**

            Defendants.

08 Civ 3363 (RJS)

---

### <u>DECLARATION OF SERVICE OF CROSS-MOTION TO DISMISS ACTION</u>

      HAROLD M. HOFFMAN**,** under penalty of perjury, respectfully declares:

      1. I am admitted to practice before this Court and am attorney for defendant Emanuel

Zeltser.

      2.  On April 30, 2008, I served all counsel with true copies of all papers on defendant

Emanuel Zeltser's cross-motion for an order dismissing action, by e-mail delivery, as follows:

cktahbaz@debevoise.com  – counsel for plaintiff
jrcowan@debevoise.com – counsel for plaintiff
pog@nqgrg.com – counsel for defendant Kay


Dated: April 30, 2008

                __/s/_____
                Harold M. Hoffman

1