<pre>
</pre>

<pre>
</pre>

Christopher K. Tahbaz
Jennifer R. Cowan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Tel. (212) 909-6000
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
INNA GUDAVADZE, LIANA ZHMOTOVA and IYA PATARKATSISHVILI,

                          Plaintiffs,

v.                                                    08-Civ-3363 (RJS)

JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI,
A/K/A JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI,
A/K/A IOSEB KAKIASHVILI) AND EMANUEL
ZELTSER,

                          Defendants.
-------------------------------------------------------------------------


**PLAINTIFFS' REPLY TO DEFENDANT EMANUEL ZELTSER'S
CROSS-MOTION FOR AN ORDER DISMISSING ACTION
AND OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE**

Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

I.     Plaintiffs Properly Served Defendant Zeltser. ....................................................................3

     A.     Plaintiffs' Service of Process Complied with the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules. ........................................3
     B.     The Method of Service Also Complied With Due Process. ...................................3
     C.     Service Pursuant to the Hague Convention Was Not Required. .............................5

II.     Plaintiffs Have Sought Equitable Relief With Clean Hands. ..............................................6

     A.     The Belarusian Charges Against Defendant Zeltser May Have Merit. ..................6
     B.     Plaintiffs Had Minimal Interactions With The Belarusian Authorities ...................7
          1.     Cadwalader's Letter Was Entirely Appropriate. ..........................................8
          2.     Debevoise & Plimpton's Letter Was Also Intended To Protect Plaintiffs' Interests. ....................................................................................9

III.     Plaintiffs Will Agree To A Stay Subject To Limited Discovery Obligations. ...................10

CONCLUSION ..............................................................................................................................10

## PRELIMINARY STATEMENT

Given the outrageous accusations and innuendo advanced in the submission of Defendant Zeltser's counsel, it is apparently necessary to state at the outset that as a fundamental principle, Plaintiffs and their counsel are deeply opposed to the torture or mistreatment of any prisoner. Although we have no direct knowledge and are not in a position to assess the truth - one way or another - of the allegations of mistreatment in this case, we would never participate in or condone such behavior if it occurred, nor would we knowingly rely in any way on information obtained through torture or mistreatment. Nor did we "arrange for" or "orchestrate" Defendant Zeltser's arrest, as his counsel implies. Plaintiffs' former and current counsel did, as Defendant Zeltser's counsel points out, send letters about Defendant Zeltser to the Belarusian prosecutors. As set forth below, however, these letters were appropriate, professional responses to the fraud that Defendant Zeltser was perpetrating on Plaintiffs – there was nothing unethical or improper about them.

As to Defendant Zeltser's "cross-motion" to dismiss the Complaint,[1] the method of service employed by Plaintiffs in this action satisfied statutory requirements and was consistent with Due Process. Indeed, its adequacy has already been established by the fact that Defendant Zeltser's brother Mark Zeltser, apparently acting as Defendant Zeltser's "next friend," has engaged counsel on his behalf who has appeared to protect Defendant Zeltser's interests. Thus, the alleged defects in service provide no basis for dismissing this action.

Although his counsel relies heavily in his papers on allegations about Defendant Zeltser's treatment while detained by Belarus (which is obviously not a party in this action), it should not

---

[1] Although the papers are captioned as a Cross-Motion to Dismiss the Complaint, as well as Opposition to the Order To Show Cause, because Defendant Zeltser's counsel has failed to follow the Court's Individual Practices for filing a motion, Plaintiffs are treating the papers as opposition to their Order To Show Cause and filing a reply.

be forgotten that prior to his detention, Defendant Zeltser was clearly attempting to defraud Plaintiffs.  Plaintiffs commenced this action because Defendants, acting in concert, were intentionally and wrongfully asserting control over Mr. Patarkatsishvili's assets based on an invalid power of attorney and testamentary documents that appear to be fraudulent.  Tellingly, Defendant Zeltser's counsel chooses to ignore the ample evidence of such conduct, including witness declarations and other material submitted in support of Plaintiffs' application for an order to show cause.  Under ordinary circumstances, that evidence would undoubtedly entitle Plaintiffs to the preliminary injunction that they seek.[2]

When Plaintiffs filed the Complaint and then sought an order to show cause, it was unclear whether Defendant Zeltser would soon be released from jail in Belarus, and Plaintiffs were legitimately concerned that upon his release, he would resume his efforts to defraud them. Plaintiffs acknowledge that circumstances have changed, and it now appears that Defendant Zeltser may be detained for some time.  Therefore, in lieu of a preliminary injunction, Plaintiffs respectfully submit that it would be appropriate under the circumstances for the Court to stay this action with respect to Defendant Zeltser, provided that his counsel agrees (*1*) to search for the documents which the Court has ordered produced and which his counsel's declaration suggests may be in New York; (*2*) to report every thirty days to Plaintiffs on the status of Defendant Zeltser's incarceration; and (*3*) to confer with Plaintiffs within fourteen days of Defendant Zeltser's release on a schedule for resuming the litigation with respect to Defendant Zeltser.

---

[2]   In a proceeding in Gibraltar involving some of the parties to this action, a professional trustee managing some of Mr. Patarkatsishvili's interests submitted a witness statement in which he described Defendants' efforts, in the weeks after Mr. Patarkatsishvili's death, to obtain information about and control over certain assets.  The witness statement is confidential, but we have sought permission of the Gibraltar court to submit it in this action. If permission is granted, we will submit it at the earliest appropriate opportunity.

# ARGUMENT

I. **Plaintiffs Properly Served Defendant Zeltser.**

Given the unusual circumstances of this case – where Defendant Zeltser is being detained in a foreign country without, as his counsel claims, contact with the outside world – Plaintiffs provided notice of this action in the most effective way possible and in a manner that both complied with the relevant statutes and satisfied Due Process.

    A. **Plaintiffs' Service of Process Complied with the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules.**

Plaintiffs have satisfied the service requirements under applicable federal and state law. An individual may be served under the applicable law of the state where the district court is located. Fed. R. Civ. P. 4(e)(1). The governing state law is New York C.P.L.R. § 308(2), which provides that personal service may be effected by:

> delivering the summons … to a person of suitable age and discretion at the actual place of business, *dwelling place or usual place of abode* of the person to be served and by … mailing the summons to the person to be served at his or her last known residence[.]

C.P.L.R. § 308(2) (emphasis added). Copies of the Summons and Complaint were served on the doorman at Mr. Zeltser's New York residence and then mailed to the same address. *See* Affidavit of Service of M. Corleone, dated April 7, 2008, attached to the Declaration of Jennifer R. Cowan, dated May 7, 2008 ("Cowan Decl.") as Exhibit ("Exh.") A. Plaintiffs also sent a copy to Defendant's business address at the law firm of Sternik & Zeltser. In so doing, Plaintiffs fully complied with the statutory service requirements under federal and state law.

    B. **The Method of Service Also Complied With Due Process.**

In evaluating whether service complied with Due Process, this Court should consider "the plaintiff's need, the public interest, the reasonableness of the plaintiff's efforts *under all the*

3

*circumstances* to inform the defendant, and the *availability of other safeguards for the defendant's interests* [.]" *Dobkin v. Chapman*, 21 N.Y.2d 490, 503 (1968) (emphasis added). Given Mr. Zeltser's detention in a foreign country, the substituted service employed by Plaintiffs was reasonably calculated to alert those representing Mr. Zeltser's interests of the pendency of this proceeding.

Substituted service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). However, "[t]he constitutional determination is derived from the necessities of each case rather than from a preconceived notion of what will provide actual notice in every case." *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176 (2d Cir. 1979).

Service here protected Mr. Zeltser's interests. Mr. Zeltser's brother received actual notice of Plaintiffs' Complaint and Order to Show Cause, and apparently acting as Defendant Zeltser's next friend, he retained counsel, who has appeared and filed papers on Defendant Zeltser's behalf. *See* Mem. of Law in Supp. of Cross-Motion to Dismiss Action and in Opp. to Plaintiffs' Order to Show Cause ("Zeltser Opp. Mem.") at 2. Plaintiffs' knowledge that Mr. Zeltser was in prison at the time of service does not render the service invalid because "[New York] law has long been comfortable with many situations in which it was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it." *Dobkin v. Chapman*, 21 N.Y.2d 490, 502 (1968).[3] Again, that Defendant Zeltser's interests are

---

[3] The cases cited by defense counsel are distinguishable from the case at hand. In both *Robinson v. Hanrahan*, 409 U.S. 38 (1972) (forfeiture proceeding), and *United States v. Braunig*, 553 F.2d 777 (2d Cir. 1977) (eviction proceeding), the question was whether defendants had notice of an impending court order which would substantially affect their

4

now being represented by counsel underscores the fact that the selected method of service *did* provide notice sufficient to protect Defendant Zeltser's interests notwithstanding his detention overseas.

### C. Service Pursuant to the Hague Convention Was Not Required.

Finally, because Plaintiffs properly served Defendant Zeltser in the United States and complied with both the statutory and constitutional requirements governing service of process, they were not required to re-serve Defendant Zeltser through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (holding that the Hague Convention did not apply because plaintiff had already accomplished effective service in the United States). Indeed, requiring Plaintiffs to serve Defendant Zeltser via the Hague Convention at this point would be futile based on the allegations of Defendant Zeltser's own counsel. Federal Rule 4(f) states:

> [S]ervice upon an individual…may be effected in a place not within any judicial district of the United States…by any internationally agreed means ***reasonably calculated to give notice***, such as those means authorized by the Hague Convention [.]

Fed. R. Civ. P. 4(f) (emphasis added). Mr. Zeltser, however, is not a resident of Belarus (a signatory to the Hague Convention) living in freedom. Instead, he is detained, allegedly with no contact with the outside world. Declaration of Harold M. Hoffman ("Hoffman Decl.") ¶ 5. Service via the Hague Convention would involve sending the Complaint to Defendant Zeltser care of the Belarusian authorities. Given the allegations about Defendant Zeltser's treatment while in custody, his counsel surely cannot be heard to suggest that service via those authorities

---

rights. By contrast, the question here is whether Mr. Zeltser was properly apprised of the commencement of litigation against him.

5

would be "reasonably calculated to give notice" to Defendant Zeltser of the pending proceedings.

In sum, service on Defendant Zeltser as effected by Plaintiffs provided the notice that the law requires – it provided notice of the proceedings to those who could act, and who are in fact now acting to represent Defendant Zeltser's interests. There can simply be no credible argument that this notice was anything other than adequate under applicable statutes and the Constitution.

## II.     Plaintiffs Have Sought Equitable Relief With Clean Hands.

Although he does not state it explicitly, Defendant Zeltser invokes the defense of unclean hands, arguing that because of Plaintiffs' alleged actions with respect to Defendant Zeltser's detention in Belarus, Plaintiffs should be denied equitable relief and the action dismissed. As the party asserting that defense, Defendant Zeltser has the burden of establishing it. *Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999). Among the elements that Defendant Zeltser must prove is that Plaintiffs engaged in inequitable, immoral, or unconscionable conduct that was related to the subject matter of the suit. *The Apollo Theater Found., Inc. v. Western Int'l Syndication*, No. 02 CIV. 10037, 2005 WL 1041141, at *16 (S.D.N.Y. May 5, 2005). Defendant Zeltser has not established this, nor can he, for Plaintiffs have acted properly and in good faith.

### A.     The Belarusian Charges Against Defendant Zeltser May Have Merit.

The issue of whether the charges against Defendant Zeltser in Belarus have merit is separate from the issue of whether he is being properly treated while in custody, and Plaintiffs believe that the charges may have merit. Traveling to Belarus to attempt to gain improper control over assets that he believed were owned by or for the benefit of Mr. Patarkatsishvili would have been entirely consistent with Defendant Zeltser's actions in the weeks prior to his detention. *See* Mem. of Law in Supp. of Plaintiffs' App. for an Order to Show Cause ("OSC Mem.") at 4-8. Similarly, perpetrating a fraud in Belarus by displaying documents on his

computer– rather than using hard copies – also would have been entirely consistent with his prior conduct. *Compare* Zeltser Opp. Mem. at 5 (suggesting that Zeltser could not have perpetrated fraud because he had no original documents with him) *with* Declaration of Michelle Duncan, dated April 19, 2008 ("Duncan Decl."), ¶ 19 (Zeltser showed Duncan images of the documents on his computer screen); Declaration of Paul Blyumkin, dated April 3, 2008, ¶ 16 (same).

Defendant Zeltser's counsel offers no explanation as to why Defendant Zeltser traveled to Belarus or why the charges against him are meritless except to claim, without any support, that Mr. Patarkatsishvili did not have assets in Belarus. The fact that Plaintiffs have not commenced legal proceedings in Belarus however is irrelevant; Plaintiffs also have not commenced probate proceedings in Georgia and other jurisdictions where Mr. Patarkatsishvili clearly held assets.[4] The absence of a visa is similarly inconsequential; the lack of response from the Belarus embassy proves nothing and, in any event, a visa can be obtained at the Minsk airport. *See, e.g.*, *allbelarus.com/visas* (travel agency website describing how to obtain a visa at Minsk airport.).

**B.    Plaintiffs Had Minimal Interactions With The Belarusian Authorities.**

Stripped of the inflammatory rhetoric, irrelevant tangents, and unsupported accusations, all counsel for Defendant Zeltser has established is that Plaintiffs' counsel notified Belarusian authorities that Defendant Zeltser might perpetrate a fraud in their jurisdiction and, after his arrest, counsel appropriately inquired about the course of the investigation, an inquiry to which there has been no response.

---

[4]    Defendant Zeltser cites an April 23, 2008 letter from the Association of the Bar of the City of New York as evidence that the claims are baseless. *See* Zeltser Opp. Mem. at 5. That letter, however, makes clear that its description of the facts and circumstances is not based on direct knowledge. *See* Hoffman Decl., Exh. B at 2. As such, although the City Bar Association is an august organization, the "facts" contained in the letter should be accorded no weight by this Court.

The ethical rules governing the conduct of English solicitors, the Solicitor's Conduct Rules, do not prohibit solicitors representing litigants in civil suits from notifying law enforcement authorities of illegal actions by opposing parties, nor do they prohibit solicitors from inquiring about the progress of criminal investigations of opposing parties. *See generally* Sol. Conduct Rules. The ethical rules governing lawyers in New York permit lawyers engaged in civil litigation to report an opposing party's actions to law enforcement authorities unless it is done "*solely* to obtain an advantage in a civil matter." 22 NYCRR § 1200.36 (Disciplinary Rule 7-105(A)) (emphasis added). The rules acknowledge that reporting illegal activity to law enforcement is often in the public interest, and they permit such a report if the intent is to punish the perpetrator or stop the illegal conduct, not just to obtain a benefit in civil litigation. *See* N.Y. State Bar Ass'n Comm. on Prof'l Ethics Op. 772, 2003 WL 23099784 (Nov. 14, 2003); *see also* ABA Informal Op. 1484 (Dec. 1, 1981).

Here, Defendant Zeltser's use of fraudulent or invalid documents to attempt to seize assets properly included in Mr. Patarkatsishvili's estate was illegal; Plaintiffs' primary purpose in sending both letters was to have Defendant Zeltser prosecuted for committing fraud, if warranted, and thereby to stop his illegal conduct. Indeed, this civil action was not commenced until weeks later.

          **1.**    **Cadwalader's Letter Was Entirely Appropriate.**

As detailed in their letter, Cadwalader had a well-founded belief that Defendant Zeltser was defrauding Plaintiffs and might attempt to commit fraud in Belarus. *See* Duncan Decl., Exh. B. The Cadwalader letter neither requests nor reflects tolerance of mistreatment or torture, but only alerts the Belarusian prosecutor to the possibility of illegal conduct within his jurisdiction. Because of her concern about the activities of Defendants Zeltser and Kay, we understand that Ms. Duncan of Cadwalader also filed a complaint with the English police on

8

February 19, 2008,[5] well before she sent her letter to the Belarusian prosecutor.[6]

### 2. Debevoise & Plimpton's Letter Was Intended To Protect Plaintiffs' Interests.

Similarly, despite the efforts of Defendant Zeltser's counsel to distort the true chronology of events, Debevoise & Plimpton sent its letter to the Belarusian prosecutor just one week after Mr. Zeltser had been detained, and well before any potentially credible information about mistreatment had emerged. The letter was an appropriate effort to protect Plaintiffs' interests, and Belarus was just one of several countries, entities, and individuals Debevoise contacted on behalf of its clients. Notice letters were also sent to the Prime Minister and Prosecutor General of Georgia (attached to the Cowan Decl. as Exh. B) and to the President of Israel (attached to the Cowan Decl. as Exh. C), as well as to certain business associates of Mr. Patarkatsishvili.

The suggestion of Mr. Zeltser's counsel that Debevoise knew Mr. Zeltser "was being tortured" when we sent our March 19 letter, Hoffman Decl. ¶ 10, is an outrageous falsehood supported by not a shred of evidence. Furthermore, Debevoise never received any response to our March 19 letter, and we certainly never received any information about "torture" or any other form of mistreatment from the Cadwalader firm, as Defendant Zeltser's counsel insinuates. Indeed, after reading in the declaration of Defendant Zeltser's counsel about the oral report by the State Department to him and Mark Zeltser, Debevoise sent a letter to the Belarusian Prosecutor General making clear that we oppose any mistreatment of Defendant Zeltser. As that

---

[5] The crime reference number of the British police complaint is 5801 883/08, and the contact person is DS Dave Finlanson at the Marylebone Police station.

[6] Debevoise & Plimpton LLP replaced Cadwalader as counsel to Plaintiffs on March 7, 2008. Neither Ms. Duncan personally nor Mr. Berezovsky are parties to this litigation, and Defendant Zeltser has failed to provide any evidence that Mr. Berezovsky, at any time, or Ms. Duncan, after she ceased to act as Plaintiffs' counsel, were acting at Plaintiffs' direction. We have therefore limited our points in this memorandum to the acts of Plaintiffs and their counsel.

letter makes clear, we first heard from Mark Zeltser regarding his brother's medical condition (the original basis of concern for Mr. Zeltser's condition) in April, well after we sent the March 19 letter. This further demonstrates that the chronology advanced by Defendant Zeltser's counsel and allegations of our supposed "knowledge" are utterly false. Letter from Debevoise & Plimpton LLP to G. Vasilevich, dated May 6, 2008, attached to the Cowan Decl. as Exh. D.

### III. Plaintiffs Will Agree To A Stay Subject To Limited Discovery Obligations.

Plaintiffs filed suit against Defendant Zeltser because his fraudulent activities need to be redressed, and we sought a preliminary injunction because of concerns that, upon release from jail, he might resume his attempts to seize control of Mr. Patarkatsishvili's assets. Plaintiffs still have that concern but acknowledge that while imprisoned, Defendant Zeltser likely cannot harm Plaintiffs. Plaintiffs are therefore amenable to a stay of the action with respect to Defendant Zeltser, provided that his counsel agrees (*1*) to search for the documents which the Court has ordered produced and which his counsel's declaration suggests may be in New York;[7] (*2*) to report every thirty days to Plaintiffs on the status of Defendant Zeltser's incarceration; and (*3*) to confer with Plaintiffs within fourteen days of Defendant Zeltser's release on a schedule for resuming the litigation with respect to Defendant Zeltser.

### CONCLUSION

Plaintiffs respectfully request that the Court not dismiss Emanuel Zeltser as a defendant to this action and stay the action subject to the conditions described above.

---

[7] The original documents listed in the Order To Show Cause were to be produced on May 1. Order To Show Cause, attached to the Cowan Decl. as Exh. E at 2-3. Defendant Kay has stated that he does not have them. *See* Letter dated May 1, 2008 from P. Gielen to Debevoise & Plimpton LLP (attached to the Cowan Decl. as Exh. F). Defendant Zeltser's papers assert that neither Defendant Zeltser nor his companion had any paper documents when they were detained. Zeltser Opp. Mem. at 5. Taken together, those statements suggest that if they exist, the original documents may be in Defendant Zeltser's office or home in New York.

Dated: New York, New York
       May 7, 2008

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

By:

/s/ Christopher K. Tahbaz

_____
    Christopher K. Tahbaz
    Jennifer R. Cowan
    919 Third Avenue
    New York, New York  10022
    Tel. (212) 909-6000
    *Attorneys for Plaintiffs*

11