**HAROLD M. HOFFMAN**
ATTORNEY AND COUNSELOR AT LAW

1140 AVENUE OF THE AMERICAS        Tel  + 1 212 486 6322
SUITE M-01                         Fax + 1 212 980 8748
NEW YORK, NEW YORK 10036-5803      hoffman.esq@verizon.net

Member:  New York & New Jersey Bars

May 9, 2008

Hon. Richard J. Sullivan, U.S.D.J.
United States Courthouse
500 Pearl Street, Room 615
New York, NY 10007

    Re:    *INNA GUDAVADZE, et al. v. JOSEPH KAY and EMANUEL ZELTSER*
              **08 Civ 3363 (RJS)**

Honorable Judge Sullivan:

### Introduction

Yesterday, the Court made an order (filed today) granting leave to defendant Emanuel Zeltser to renew his motion to dismiss for lack of jurisdiction and insufficient service of process. Renewal was authorized by delivery of a letter within two weeks' time. In the Order, the Court requested, *inter alia*, a particularization of any discovery that would be helpful in resolving the renewed motion. We write now to address these issues.

### The Law

In *Dobkin v. Chapman*, 21 N.Y.2d 490 (1968), a case cited by plaintiff, the New York Court of Appeals made clear that the question of compliance with the Supreme Court's doctrine of *notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action*, was highly fact sensitive; "what might be inadequate notice in one kind of situation will amount to due process in another" [at 503].  In evaluating the reasonableness of the service and the efforts undertaken by the plaintiffs truly to inform the defendants, the Court held that among the primary factors to be considered is the conduct of any party which contributes to the inability to effect a more direct form of personal service.  In the words of the Court of Appeals (21 N.Y.2d at 504):

Hon. Richard J. Sullivan, U.S.D.J.  May 9, 2008
Page 2

> we may not ignore the fact that it was.. the conduct of the defendants themselves, their removal without informing anyone of their whereabouts, which prevented them from receiving more direct service of process. Due process does not require that defendants derive any advantage from [making service more difficult].

In *Liebeskind v. Liebeskind*, 86 A.D.2d 207 (1st Dep't 1982), the New York Appellate Division also considered the efficacy of service where a party has affirmatively taken steps to complicate delivery of process and how the question of "public interest" – also a *Dobkin* factor to be considered in evaluating service – plays into the evaluation. The Appellate Division ruled that a party's role in complicating service "was harmful to the public interest" and needed carefully to be considered in evaluating service (86 A.D.2d at 211). In the Court's view, determining whether service comported with due process, without also evaluating whether the conduct of any party had complicated same, would be "against the public policy of this State" (*Id.*). *See also*, *Young v. Bunny Bazaar, Inc.*, 107 N.J.Super. 320 (Law Div. 1969) (conduct of a party which procures the inability to effect direct personal service to be considered in evaluating its compliance with due process standards).

Here, we allege, with support in the record developed to date, that the affirmative conduct of those acting in concert with plaintiffs procured a scenario whereby service could not be effectively made upon Mr. Zeltser, in comport with due process requirements.

## The Undisputed Facts

The facts known to date which support our claim are as follows: [1]

1. On March 3, 2008, plaintiff's counsel, Michelle Duncan, wrote to the Belarus prosecutor urging him to act "speedily and vigilantly" if Mr. Zeltser entered Belarus. (Ex. B to Duncan declaration on motion for preliminary injunction). It is undisputed that Ms. Duncan was acting for plaintiffs on March 3, 2008.

    A. The record to date evidences no assets of Mr. Patarkatsishvili in Belarus; no reason for Mr. Zeltser to travel to that country; and, no visa authorizing his entry.

    B. The record shows Belarus to be a country which violates recognized international standards for treatment of detained suspects.

    C. The record evidences no other letters authored by Ms. Duncan to the prosecutor of any

---

[1] We respectfully ask the Court to also consider the highly pertinent fact that our abject inability to communicate with Mr. Zeltser on the points raised herein complicates our wherewithal to sustain our claim with precision absent the discovery which we seek below.

Hon. Richard J. Sullivan, U.S.D.J.                                                                                                   May 9, 2008
                                                                                                                                                                 Page 3

country in which Mr. Patarkatsishvili is alleged to have had assets.[2]

2. It was stipulated by plaintiffs' counsel at yesterday's oral argument that a mere nine days after Ms. Duncan wrote to the Belarus prosecutor, on March 12, 2008, Mr. Zeltser traveled to Belarus on the private jet of Boris Berezovsky, another of Ms. Duncan's clients.

3. One week later, with the knowledge of plaintiffs' counsel, Ms. Duncan met in Belarus with Mr. Zeltser's interrogators. Ms. Duncan's ability, within mere days, to secure permission to enter Belarus <u>and</u> arrange for a meeting with Belarus prosecutors – a remarkable feat for a Westerner in today's diplomatic climate – is most material to this case.

## <u>The Discovery We Require</u>

Michelle Duncan has been injected into this case, as a central figure, by the plaintiffs. In the plaintiffs' verified complaint, she is alleged to have had multiple contacts with Mr. Zeltser and to possess facts, on first hand knowledge, which are most material to this case. She is further alleged (complaint, ¶ 49) personally to have met Mr. Zeltser on February 24, 2008, less than a mile from the United States Courthouse in Manhattan, at which time she was allegedly shown, on Mr. Zeltser's laptop screen, documents which lie at the heart of this action. Undoubtedly, she will be offered by plaintiffs as a trial witness.

Ms. Duncan possesses facts, on personal knowledge, material to defendant's claim that she, while acting as plaintiffs' retained counsel, sought the intervention of those who presently detain Mr. Zeltser in Minsk, Belarus; that Mr. Zeltser was transported to Belarus on her client's private jet; and, that she was somehow able to secure an almost immediate appointment with Belarus government officials at a time when Belarus has almost no diplomatic relations with the West. Deposing Ms. Duncan will facilitate the developments of facts which, we contend, will show that she, while acting for plaintiffs, procured the unlawful detention of Mr. Zeltser and the inability to effect service on him which comports with due process requirements.

At bar, plaintiffs have already secured an order for expedited discovery. According defendant Zeltser comparable rights will inflict no prejudice. As noted, Ms. Duncan will plainly be a witness in this case. An order directing that she be deposed at the earliest possible date, will allow for development of a factual record as to both the issues on the instant renewed motion and the case in chief. Same would be in full consonance with the discovery goals of the Federal

---

[2]  It is alleged on hearsay by plaintiffs' counsel in a memorandum – notably not in a declaration made under penalty of perjury – that Ms. Duncan also filed a complaint with a local police station in London. Documentary support for this allegation, couched cautiously in plaintiffs' papers ["we understand that Ms. Duncan also filed ..." (plaintiffs' 5/7/08 reply mem., at 8)], has not been provided.

Hon. Richard J. Sullivan, U.S.D.J.                                                     May 9, 2008
                                                                                       Page 4


Rules of Civil Procedure and would serve to create a full record on the instant motion.

Ms. Duncan has already demonstrated the wherewithal to come into this jurisdiction to meet with Mr. Zeltser while representing the plaintiffs. The Cadwalader firm, of which she is a member, is an entity created under, and operating pursuant to, the laws of the State of New York. We respectfully ask the Court to make an Order directing plaintiffs to produce her for deposition in New York City within ten days' time.

We also request that the Court make an Order directing plaintiffs to produce for deposition in New York their present attorney, Peter Goldsmith, a member of the Debevoise firm. As alleged in the complaint, Mr. Goldmith also had contact with Mr. Zeltser and he too has injected himself as a witness in this case. Further, Mr. Goldsmith voluntarily had contact with the Belarus prosecutors and, based upon his March 19, 2008 letter (Ex. D to cross-motion to dismiss), he was personally aware of Ms. Duncan's March 3rd communication urging speedy and vigilant action if Mr. Zeltser entered Belarus as well as Duncan's March 19th personal meeting with Belarus prosecutors. Ms. Duncan's March 19th discussions with the Belarus authorities are obviously pertinent to the instant renewed motion challenging jurisdiction. In light of the admitted exchange of information between Duncan and Mr. Goldsmith relative to Mr. Zeltser's detention, he too should be deposed on these matters.

Defendant's request for discovery and a further hearing on his application to have process purportedly served on him declared invalid is further supported by the Second Circuit's decision in *U.S. v. Toscanino*, 500 F.2d 267 (2d Cir. 1974). In that case, the Second Circuit held that the federal district court's process would be abused and degraded if it were executed against a defendant who was allegedly brought into the United States from Uruguay after being kidnapped. In the view of the Second Circuit, such abuse could not be tolerated without debasing the processes of justice and that defendant was entitled to a hearing on his allegations. Here, such a hearing, after limited discovery, is sought on Mr. Zeltser's renewed application.

In *Toscanino*, the defendant alleged that the court had acquired jurisdiction over him unlawfully after he was tortured and kidnapped in Uruguay so that he could be prosecuted in the United States. Although, here, we do not have a criminal prosecution or allegedly unlawful actions of U.S. government agents, the words of the Second Circuit, and its respect for the sanctity of the district court's process, are nonetheless illuminating.[3] In the words of the Court, the district court's process "is abused or degraded where it is executed against a defendant who has been brought into the territory of the United States by the methods alleged here." 500 F.2d at 276. Here, we are presented with the corollary. But, this Court's process is no less abused and

---

[3] We do however believe, as held in *Toscanino*, that, if sustained, the conduct of those acting for plaintiffs in procuring the detention of Mr. Zeltser in Belarus would violate international treaties to which the United States is a party.

Hon. Richard J. Sullivan, U.S.D.J.  May 9, 2008
Page 5

degraded by its use against a person who was deprived of his liberty and abducted <u>out</u> of the jurisdiction.

In the civil context, there is also authority for the well-recognized power of federal courts to decline to exercise jurisdiction over a defendant whose presence has been secured by force or fraud. See, *Fitzgerald Construction Co. v. Fitzgerald*, 137 U.S. 98 (1890). Here, again, we have the reverse, but we would contend that the federal courts likewise possess the power to decline to exercise *in personam* jurisdiction over a person whose <u>absence</u> from the jurisdiction has been procured by force or fraud. The affirmative exercise of this court's process in such circumstances is no less demeaning or degrading.

At bar, Mr. Zeltser is entitled to (very limited) discovery and a hearing on his claim that he was unlawfully detained at the instance of those acting for plaintiffs and removed from the jurisdiction of this Court in such a manner as to deprive him of the ability to answer the civil claims against him and to present a defense. If sustained after discovery and hearing, such claim would be sufficient, we contend, for the Court to decline to exercise jurisdiction over him either because of due process considerations or the inherent powers of this Court to avoid degradation of its process.

Respectfully yours,

  /s/
Harold M. Hoffman

cc: All Counsel