DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
Fax  212 909 6836
www.debevoise.com

**FILED ELECTRONICALLY**

May 14, 2008

**BY ECF AND BY HAND**

Hon. Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, New York 10007

*Gudavadze v. Kay*, 08-civ-3363

Dear Judge Sullivan:

    We write in response to the May 9, 2008 letter submitted to the Court by counsel for Defendant Emanuel Zeltser, renewing Mr. Zeltser's motion to dismiss this action on service and jurisdictional grounds and seeking discovery in connection with that motion. For the reasons set forth below, the Court should deny both the discovery request and the renewed motion.

    Pursuant to this Court's Order dated May 8, 2008 (and filed on May 9), which followed a May 8 hearing in this action, counsel for Mr. Zeltser was granted two weeks to submit legal authority as part of a renewed motion, to propose a narrow discovery plan, and to explain why the discovery sought would be necessary or helpful. Rather than avail himself of the time provided by the Court, however, Mr. Zeltser's counsel filed his letter addressing these matters one day after the May 8 hearing, and within only a few hours of when the Court issued its written Order.

    Perhaps unsurprisingly in light of how soon after the hearing he filed his letter, Mr. Zeltser's counsel has failed to provide legal authority in support of his renewed motion to dismiss this action. He has also failed to present a specific, cogent explanation of how the depositions he seeks would be necessary or helpful to resolving that motion, choosing instead only to argue in an entirely conclusory (and unfounded) manner that certain allegations are "most material" to his case.

The information previously submitted to the Court by Plaintiffs, supplemented by the declaration of Michelle Duncan enclosed with this letter (which specifically addresses issues raised in the letter submitted by Mr. Zeltser's counsel), establishes that the interactions of Plaintiffs' counsel with the Belarusian prosecutors were entirely appropriate. As a result, those interactions cannot form a basis for a renewed motion, and Mr. Zeltser's counsel offers no reason to believe that the depositions he seeks would alter the existing record in any way that would affect the resolution of the narrow questions of service and jurisdiction before the Court. Accordingly, Mr. Zeltser's request for discovery and his renewed motion to dismiss should be denied.

**I.   Mr. Zeltser's Counsel Has Provided No Legal Basis For Reconsideration Of The Court's Decision That Service Was Proper.**

In granting Mr. Zeltser permission to renew his motion to dismiss the complaint on jurisdictional grounds, the Court requested that counsel for Mr. Zeltser present "some authority for the proposition that the complicity of plaintiffs' counsel in the unavailability of the defendant is a basis for denying service and concluding that personal jurisdiction is not present." Transcript of Hearing on May 8, 2008 ("Hearing Tr."), at 39:4-8. None of the cases cited by Mr. Zeltser does that; three of the decisions address issues that arise when defendants arrange not to be served or are otherwise unavailable,[1] and one case, *Fitzgerald Construction Co. v. Fitzgerald*, 137 U.S. 98 (1890), involves personal jurisdiction obtained through fraud.

Moreover, the reference to *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), is inexplicable. *Toscanino* was a criminal case involving allegations that the United States government kidnapped a defendant rather than properly extraditing him. Counsel for Mr. Zeltser could have relied on more analogous civil cases for the propositions for which *Toscanino* was cited, but instead relied upon a criminal case with particularly extreme facts. The reliance of Mr. Zeltser's counsel on *Toscanino*, as well as the related footnote that alleges, without a single citation or any explanation, that Plaintiffs' counsel have violated international treaties, illustrate that counsel for Mr. Zeltser is more interested in making extreme and inflammatory accusations than in focusing on the narrow legal and factual issues presently before the Court.[2]

---

[1]   Those cases are *Dobkin v. Chapman*, 21 N.Y.2d 490 (1968) (cited by Plaintiffs in their opposition to the first motion to dismiss); *Liebeskind v. Liebeskind*, 86 A.D.2d 207 (1st Dept 1982); and *Young v. Bunny Bazaar*, 107 N.J. Super. 320 (Law Div. 1969) (applying New Jersey law).

[2]   Moreover, *Toscanino*, which involved allegedly criminal activities by the United States government, does not appear to provide a precedent for claims that the particular counsel for Plaintiffs identified in counsel's letter to the Court, who are

2

## II. Mr. Zeltser's Counsel Has Provided No Factual Basis For Discovery Or For Reconsideration Of The Court's Decision That Service Was Proper.

Even if counsel for Mr. Zeltser had provided cases addressing the legal proposition that substituted service would not comport with Due Process if Plaintiffs had improperly prevented Defendant from being present in the jurisdiction to accept personal service, the related factual inquiry is narrow: did Plaintiffs (either directly or through their counsel) improperly procure or contribute to Mr. Zeltser's detention in Belarus, thus rendering him unable to receive personal notice of this litigation?[3]

Counsel for Mr. Zeltser has presented no evidence of any improper conduct by Plaintiffs or their counsel, nor has he provided any factual basis for his nebulous theory about the role of Plaintiffs' counsel in Mr. Zeltser's arrest. Although he seeks to blame this on his inability to communicate with Mr. Zeltser, *see* Letter from Harold Hoffman to the Court, dated May 9, 2008 ("Hoffman Letter") at 2 n. 1, in fact Mr. Zeltser's counsel could have availed himself of the time provided by the Court to develop facts that would not have required Mr. Zeltser's input – and which, if established, presumably he could have used to advance his theories concerning Plaintiffs' counsel. We urge the Court to take the fact that he chose not to pursue these avenues of support into account when considering his plea for discovery.

For example, at the May 8 hearing in this matter, Mr. Hoffman stated that "Mr. Motkin has told journalists in Russia that the two passengers, Mr. Zeltser and his assistant, were inebriated when they boarded the plane and were arrested when they deplaned." Hearing Tr. 16:9-12. Yet counsel for Mr. Zeltser failed to provide the Court with an article including that information, declarations from the reporters, or any other evidence that Mr. Motkin made those statements. He could have attempted to substantiate this assertion, but he chose not to do so.[4]

Similarly, counsel for Mr. Zeltser could have sought additional information about whether Mr. Zeltser had a visa to enter Belarus from the Belarus Embassy or Mr. Zeltser's Belarusian lawyer. He continues to rely on the allegation that Mr. Zeltser had

---

    private citizens (and neither residents nor citizens of the United States), violated international treaties.

[3]   Mr. Zeltser's conditions of confinement in Belarus are not relevant to the resolution of this narrow question. The only relevant question is whether Plaintiffs or their counsel improperly caused Mr. Zeltser to be detained in Belarus, not what is happening to him while he is there.

[4]   To the extent that counsel for Mr. Zeltser may now seek to create a record, it should be rejected as untimely, as this is the second motion to dismiss that has been filed.

no visa as a basis for renewing his motion – *see* Hoffman Letter at 2 – yet the record contains no evidence that counsel for Mr. Zeltser took advantage of the time provided by the Court to further investigate this allegation.

Counsel for Mr. Zeltser also claims inaccurately that "the record to date evidences no assets of Mr. Patarkatsishvili in Belarus." Hoffman Letter at 2. Yet Ms. Duncan's letter of March 3 (attached as Exhibit B to her declaration of April 19, 2008) states that "[w]e bring these matters to your attention as we believe that Mr. Patarkatsishvili had or may have had substantial assets within your jurisdiction." April 19 Duncan Decl. Exh. B at 1. Also, the assumption that because Mr. Patarkatsishvili had no assets in Belarus, Mr. Zeltser had no reason to travel there, is odd. Did Mr. Zeltser travel only to countries in which Mr. Patarkatsishvili had assets? Furthermore, how does counsel know that Mr. Zeltser had no reason to travel to Belarus? The record is silent on these questions because counsel for Mr. Zeltser chose not to use the time granted by the Court to develop a record in support of his request for depositions.

### A.    The Evidence In The Record Does Not Suggest Any Impropriety By Plaintiffs.

The material previously submitted to the Court, and the declaration of Michelle Duncan enclosed with this letter, establish that Plaintiffs' counsel sent three letters to the Belarusian Prosecutor General. All three of those letters were before the Court when it denied the prior motion to dismiss, and they are all perfectly appropriate communications from lawyers whose clients may be the victims of crimes. None of the letters suggest that Plaintiffs (or their counsel) sought the improper detention of Mr. Zeltser in Belarus.[5] *See* Plaintiffs' Reply to Zeltser's Cross-Motion and Opp. at 7-10.

#### 1.    Events Up To And Including March 7

When Ms. Duncan represented Inna Gudavadze, her only contact with the Belarusian prosecutors was the letter dated March 3. Duncan Declaration, dated May 14, 2008 ("Duncan Decl.") ¶¶ 5-6. Counsel for Mr. Zeltser has offered no evidence suggesting that this letter was inappropriate. Indeed, he can offer none. As we have previously explained to the Court in response to Mr. Zeltser's original cross-motion, that letter was an appropriate notice to law enforcement officials by a lawyer who believed her client was at risk of being the victim of a crime. Ms. Duncan's letter to the Belarusian authorities was not her first report to law enforcement officials; she also made a report to British law enforcement authorities concerning the actions of Mr. Kay and Mr.

---

[5]    In addition, on March 23, 2008, Debevoise emailed the Belarusian Prosecutor General and requested a meeting. The email, attached to this letter as Exh. A, was entirely non-substantive.

4

Zeltser in England, well before she contacted the Belarusian authorities. Facts concerning this report are now in the record before the Court. Duncan Decl. ¶ 4.

Ms. Duncan's representation of Mrs. Gudavadze ended on March 7 and after that date, Ms. Duncan did not take direction or instructions from Mrs. Gudavadze or her new counsel at Debevoise & Plimpton LLP. Duncan Decl. ¶ 7.

There can simply be no basis for believing, as counsel for Mr. Zeltser suggests, that deposing Ms. Duncan "will facilitate the development of facts which . . . will show that she, while acting for plaintiffs, procured the unlawful detention of Mr. Zeltser." Hoffman Letter at 3. Her representation of Mrs. Gudavadze ended on March 7 − before Mr. Zeltser traveled to Belarus or was arrested − and her only interaction with the Belarusian Prosecutor General prior to that date was the letter on March 3.

### 2. Events After March 7

Because she was neither representing nor acting at the direction of Plaintiffs after March 7, Ms. Duncan's actions after that date are not relevant to an analysis of whether Plaintiffs improperly interfered with Mr. Zeltser's ability to receive personal notice of this lawsuit. And counsel for Mr. Zeltser has provided no evidence that Ms. Gudevadze's successor counsel, Debevoise & Plimpton LLP, engaged in any improper conduct in connection with Mr. Zeltser, nor does Mr. Zeltser's counsel provide this Court with any reason to believe that a deposition of Plaintiffs' counsel would alter the state of the record.[6]

As the declaration of Ms. Duncan submitted with this letter makes clear, the lawyers at Debevoise did not know of Ms. Duncan's letter to the Belarusian authorities or that Mr. Zeltser had been arrested until March 13 or 14 – *after* Mr. Zeltser had been arrested. Duncan Decl. ¶ 8. The only conduct that can be attributed to Debevoise – communicating with the Belarusian prosecutor after learning of Mr. Zeltser's arrest – was also entirely proper, for reasons previously explained to the Court. *See* Plaintiffs' Reply to Zeltser's Cross-Motion and Opp. at 8-9.

Nothing in any of the communications between the Belarusian authorities and Ms. Duncan (before March 7) and Debevoise (after March 7) suggests any impropriety or anything that would call into question the method of service used by Plaintiffs in this action.

---

[6]  It should be noted that, as an outgrowth of our representation of Badri Patarkatsishvili at the time of his death on February 12, 2008, we provided discrete, limited representation of Inna Gudavadze on matters including those related to the transport and autopsy of Mr. Patarkatsishvili's body for a period of time after February 12. But our representation of Ms. Gudavadze in connection with estate matters did not begin until March 7, 2008.

### 3. Plaintiffs' Actions Are Inconsistent With Defendant's Factual Theory.

Defendant's theory about Plaintiffs' improper use of substituted service is contradicted by the efforts that Plaintiffs made to ensure that those who could represent Mr. Zeltser's interests were apprised of the Complaint and the Order to Show Cause. *See, e.g.*, Plaintiffs' Reply to Zeltser's Cross-Motion and Opp. at 3; Hearing Tr. at 5, 29, 32. If the theory were correct – if Plaintiffs were using Mr. Zeltser's absence from the jurisdiction for litigation advantage – then Plaintiffs never would have withdrawn the motion for a preliminary injunction or consented to a stay of the action. Instead, we would be seeking to accelerate the litigation with the goal of obtaining a default judgment.

### B. The Requested Depositions Are Sought To Gather Information On Issues Not Before The Court.

The choice of proposed deponents and the topics that Mr. Zeltser's counsel has identified for their depositions suggest that he views these depositions as an opportunity to inquire generally about the circumstances of Mr. Zeltser's arrest, rather than develop a record on the jurisdictional question before the Court. We fully understand that Mark Zeltser and counsel for Mr. Zeltser are deeply concerned about Mr. Zeltser's welfare and would like to collect information about his arrest. But jurisdictional discovery is not the proper mechanism for them to do that.

Counsel for Mr. Zeltser seeks to question Ms. Duncan on a range of events that occurred after she ceased representing Mrs. Gudavadze on March 7. He wrote to the Court that Ms. Duncan's ability to obtain a meeting with the Belarus prosecutors is "most material to this case" and those discussions are "obviously pertinent to the instant renewed motion challenging jurisdiction." Hoffman Letter at 3, 4. But those meetings are only pertinent if Ms. Duncan was acting at the direction or request of Plaintiffs at that time, an issue in which counsel for Mr. Zeltser evinces absolutely no interest.

Ms. Duncan has now clarified that she was not acting at the request or instruction of Plaintiffs or Debevoise when she met with the Belarusian prosecutors; there is no need for Mr. Zeltser's counsel to question her about those meetings at a deposition. *See* Duncan Decl. ¶ 10. During the time that Ms. Duncan did represent Mrs. Gudavadze, her only contact with the Belarusian prosecutors was the March 3 letter, which is already before the Court. Duncan Decl. ¶¶ 5-7. Counsel for Mr. Zeltser has not established any basis for taking Ms. Duncan's deposition.

Counsel for Mr. Zeltser offers even less explanation for why it is necessary to take Peter Goldsmith's declaration, referencing only an "exchange of information between Duncan and Mr. Goldsmith." Hoffman Letter at 4. As noted above, Debevoise was not aware of Ms. Duncan's March 3 letter to the Belarusian Prosecutor until after

Mr. Zeltser had been arrested. *See* Duncan Decl. ¶¶ 8-9. Our first communication to the Belarusian Prosecutor was on March 19. Plaintiffs' Reply to Zeltser's Cross-Motion and Opp. at 7, 9. And the "exchange of information" that is supposedly the basis for the request for Lord Goldsmith's deposition occurred after Mr. Zeltser had been detained. Duncan Decl. ¶¶ 8-9. Counsel for Mr. Zeltser has offered no theory about how Debevoise was allegedly involved in Mr. Zeltser's detention nor has he established any basis for the deposition of Peter Goldsmith.

### III. Mr. Zeltser's Counsel Has Provided No Legal Basis For The Depositions He Seeks.

In this Circuit, depositions of opposing counsel are disfavored. *United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 185 (2d Cir. 1991). "The fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition . . . but it is a circumstance to be considered." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 72 (2d Cir. 2003). In determining whether the deposition of a lawyer is warranted,

> the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*Id.*[7] Counsel for Mr. Zeltser completely ignored the preference against taking lawyers' depositions, but all those factors favor denying permission to take the requested depositions. It is particularly noteworthy that he did not seek the deposition of any of the non-lawyers who he believes were involved in the allegedly improper arrest of Mr. Zeltser, such as Anatoly Motkin and Boris Berezovsky, nor did he present any analysis about why the depositions of lawyers, rather than non-lawyer fact witnesses, would be necessary.[8] By seeking the depositions of lawyers, one of whom is currently representing

---

[7] The standard is *dicta* as Friedman consented to the deposition before the decision was issued, *Friedman,* 350 F.3d at 67, but it is widely followed in this Circuit. *See, e.g.*, *Sea Tow Int'l, Inc. v. Pontin,* 246 F.R.D. 421 (E.D.N.Y. Nov. 9, 2007); *Campinas Found. v. Simoni,* No. 02 Civ. 3965(BSJ)(KNF), 2005 WL 1006511 (S.D.N.Y. Apr. 27, 2005).

[8] Michelle Duncan is a third party over whom Plaintiffs do not exercise control. Thus, while the Court may permit Mr. Hoffman to take the depositions of third parties, the Court should not "direct plaintiffs to produce her for deposition in New York City,"

Plaintiffs, counsel for Mr. Zeltser has injected serious privilege issues into the discovery process. Consistent with their professional and ethical obligations, the lawyer deponents will decline to answer questions about their private conversations with their clients and any other questions which implicate the attorney work product or attorney client privilege. *See, e.g.*, Duncan Decl. ¶ 11. Counsel could have requested depositions that would implicate few privilege issues, but he did not do so – nor did he explain his failure to do so. His request for depositions should be denied.

### IV. Limitations On Discovery

As stated above, Plaintiffs do not believe that any further discovery is warranted and respectfully request that the Court deny the request for discovery and renewed motion. However, if the Court concludes any deposition is warranted, Plaintiffs respectfully request that discovery not take place until after it is determined whether service via the Hague Convention is successful. Further, if any deposition does go forward, Plaintiffs respectfully request that limitations be placed on the discovery to prevent fishing expeditions for information beyond the scope of the limited factual question related to jurisdiction, and also to prevent the use of the information in other contexts.

#### A. Any Discovery Should Await Service Via The Hague Convention.

The Court has ordered Plaintiffs to attempt to serve the Complaint on Mr. Zeltser via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. *See* Order of May 9, 2008 (Docket No. 21). Counsel to Plaintiffs are complying with the Court's Order and translating the papers so that we can begin the process for service under the Hague Convention.[9]

Counsel to Mr. Zeltser contends that Plaintiffs should initially have served via the Hague Convention rather than use substituted service under the CPLR. Zeltser Mem. Opp. at 11-12. Presumably, if service via the Hague Convention is successfully effected,

---

as requested. Hoffman Letter at 4. Also, the deposition of Ms. Duncan may present the same logistical issues as taking the deposition of other third parties who are not lawyers.

[9] We note that the Hague Convention procedures require the address of the person who is to be served. We wrote to Mr. Hoffman and requested that, if possible, he provide us with the name and address of the jail where Mr. Zeltser is being held. Mr. Hoffman has refused even to attempt to provide us with this information, so our ability to serve via the Hague Convention is in deeper doubt. *See* Correspondence between Jennifer R. Cowan and Harold Hoffman, dated May 13, 2008, attached hereto as Exhibit B.

then counsel for Mr. Zeltser will have no objection to the method of service and his motion to dismiss on jurisdictional grounds will become moot. Therefore, to avoid unnecessary effort and expense, we respectfully request that if the Court believes any deposition is warranted, such discovery be delayed until we learn whether service via the Hague Convention was successful, which would make such discovery unnecessary.

      **B.    Limitations Should Be Placed On Any Deposition Permitted By The Court.**

If the Court grants counsel for Mr. Zeltser the right to take any deposition, Plaintiffs respectfully request that limitations be placed on the deposition so that it relates only to the specific factual issues before the Court. Specifically, Plaintiffs request that the Court:

1. Limit the examination of Michelle Duncan to questions (a) that relate to communications with the Belarusian authorities and/or the detention of Mr. Zeltser, and (b) that concern events and activities that occurred on or before March 7, unless counsel for Mr. Zeltser can establish that after that date, Ms. Duncan was acting at the request or instruction of Plaintiffs or their counsel.

2. Limit the examination of Peter Goldsmith to questions (a) that relate to communications with the Belarusian authorities and/or the detention of Mr. Zeltser, and (b) that concern events and activities that occurred on or after March 7, unless counsel for Mr. Zeltser can establish that prior to that date Lord Goldsmith was acting at the request or instruction of Plaintiffs or their counsel.

3. Prohibit questions regarding confidential conversations between the deponents and their clients.

4. Issue a protective order designating the deposition transcripts as confidential and prohibiting disclosure to anyone other than the parties, counsel or the Court (in which case the documents should be filed under seal), and also prohibiting use of the information obtained through deposition in any context other than this action.

Furthermore, given the high level of emotion related to the events at issue, Plaintiffs respectfully request that all depositions be scheduled at a time when the Court is available for conference via telephone, should that become necessary.

### V.   Additional Deposition

A determination of whether service was proper is not conducted pursuant to a formalistic rule; it should take into account all of the specific circumstances. *See Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176 (2d Cir. 1979); *Dobkin v. Chapman*, 21 N.Y.2d 490, 502 (1968). As described above, Plaintiffs maintain that the renewed motion to dismiss should be denied now without additional discovery. However, if the Court grants discovery to Mr. Zeltser, Plaintiffs also request permission to take the deposition of Mark Zeltser regarding how he became aware of this litigation and his interactions with Mr. Zeltser's Belarusian lawyer and US consular officials. Such a deposition will enable us to present evidence to the Court about the degree to which Mark Zeltser is able to communicate indirectly with his brother, so that the Court can consider whether, based on all the circumstances, Plaintiffs' service of the Complaint was effective.

### VI.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that Mr. Zeltser's renewed motion to dismiss for lack of jurisdiction be denied and that his counsel's request to take the depositions of Michelle Duncan and Peter Goldsmith also be denied.

Respectfully submitted,

  /s/  Christopher K. Tahbaz

Debevoise & Plimpton LLP

Christopher K. Tahbaz
Jennifer R. Cowan

Enc.   Exhibit A  (Email from Karolos Seeger dated March 23, 2008)

Exhibit B  (Correspondence between Jennifer R. Cowan and Harold Hoffman dated May 13, 2008)

Declaration of Michelle Duncan, dated May 14, 2008

Exhibit A

## Seeger, Karolos

| | |
|---|---|
| **From:** | Seeger, Karolos |
| **Sent:** | 23 March 2008 23:32 |
| **To:** | 'gusev@sbp.gov.by' |
| **Cc:** | Goldsmith, Peter H. |
| **Subject:** | FOR THE ATTENTION OF MR GRIGORY VASILEVICH, PROSECUTOR GENERAL, AND MR SERGEI VOROBYOV |
| **Attachments:** | SDOC1665.pdf |



SDOC1665.pdf (83 KB)

<u>Sent on behalf of Lord Goldsmith</u>

Dear Sirs

Further to our firm's letter of 19 March (copy attached for ease of reference), we would respectfully propose a meeting with you at the beginning of the week commencing 31 March. We should be grateful if you could get in touch with Karolos Seeger of this office (contact details below) to make appropriate arrangements.

We look forward to hearing from you.

Yours faithfully,

---

Karolos Seeger
Debevoise & Plimpton LLP
T: +44 20 7786 9042
F: +44 20 7588 4180
E: kseeger@debevoise.com

---

PRIVILEGED AND CONFIDENTIAL

This e-mail is from Debevoise & Plimpton LLP. It is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If you are not the intended recipient, please do not disseminate, distribute or copy this communication, by e-mail or otherwise. Instead, please notify us immediately by return e-mail (including the original message in your reply) and by telephone (you may call us in London at +44 20 7786 9000) and then delete and discard all copies of the e-mail. Thank you.

Our postal address is Tower 42, Old Broad Street, London EC2N 1HQ, at which address a list of the partners' names and their professional qualifications is open to inspection. The partners are solicitors or registered foreign lawyers. We are regulated by the Solicitors Regulation Authority. For further information please see our website at http://www.debevoise.com.

1

# DEBEVOISE & PLIMPTON LLP

Tower 42
Old Broad Street
London EC2N 1HQ
Tel +44 20 7786 9000
Fax +44 20 7588 4180
www.debevoise.com

The Rt Hon Lord Goldsmith QC
European Chair of Litigation
Tel +44 20 7786 3007
phgoldsmith@debevoise.com

19 March 2008

Mr Grigory Vasilevich
Prosecutor General
24 Internationalnaya St.
Minsk
220050
Belarus

By email: gusev@sbp.gov.by

**Estate of Badri Patarkatsishvili**

Dear Sir:

We act for Inna Gudavadze and her two daughters, Liana Zhmotova and Iya Patarkatsishvili. Mrs. Gudavadze is the widow of Badri Patarkatsishvili, a prominent Georgian businessman and politician who died in the United Kingdom on 12 February 2008. Our clients are heirs and beneficiaries of Mr. Patarkatsishvili's estate.

Our clients are concerned that they may be the victims of attempted fraud. We are aware of the letter sent to you on 3 March 2008 by Cadwalader, Wickersham & Taft LLP, then acting for Mrs. Gudavadze, regarding the actions of a number of individuals.

We understand that Mr. Emmanuel Zeltser, a New York lawyer, is currently in custody in Minsk and that you are investigating whether he may have attempted to defraud by relying on invalid or forged documentation purporting to give him authority to act on behalf of the estate of Mr. Patarkatsishvili. We can confirm that our clients do not accept that Mr. Zeltser has such authority to act.

Given the seriousness of this matter and the importance of it to our clients, we can confirm that our clients support the continuation of your investigation. Moreover, we are interested in cooperating with your investigation on behalf of our clients. We understand that a member of your office is today meeting with Mrs Michelle Duncan of Cadwalader in connection with this matter, which we hope will be productive for you. We too would be happy to answer such questions as you may have and provide you with further information that is or becomes available to us. At the same time, we would be interested to understand what evidence you have gathered to date regarding Mr Zeltser and also of a Mr Joseph Kay for whom he may have claimed to be acting. In addition, we would respectfully ask you to keep us informed of any further information you obtain in this regard.

Debevoise & Plimpton LLP is a registered limited liability partnership established under the laws of the State of New York
A list of the partners' names and their professional qualifications is open to inspection at the above address
The partners are either solicitors or registered foreign lawyers   The firm is regulated by the Solicitors Regulation Authority

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

2                                                                          March 19, 2008

If you wish to discuss any of the above, or to arrange a meeting at a mutually convenient time, please do not hesitate to contact Lord Goldsmith of this office on +44 207 786 9000 or at phgoldsmith@debevoise.com

We look forward to hearing from you.

Yours faithfully,

*Debevoise & Plimpton LLP*

**Debevoise & Plimpton LLP**

50249436v5

Exhibit B

# DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
www.debevoise.com

**Jennifer R. Cowan**
Counsel
Tel 212 909 7445
Fax 212 521 7445
jrcowan@debevoise.com

May 13, 2008

**BY ELECTRONIC MAIL**

Harold M. Hoffman, Esq.
1140 Avenue of the Americas
Suite M-01
New York, NY 10036

*Gudavazde et al. v. Kay et al.*, **No. 08 Civ. 3363(RJS)**
**Service Pursuant to the Hague Convention**

Dear Mr. Hoffman,

In its Order of May 9, 2008, the Court directed Plaintiffs to serve the Complaint and Summons in the above-captioned action on your client, Defendant Emanuel Zeltser, using the methods authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

Pursuant to the Convention, we are required to submit the documents to be served to the Belarusian Ministry of Justice, and to provide the Ministry with the address of the person to be served. Because Mr. Zeltser is currently detained, we need to provide the name and address of the jail where he is detained. Please provide us with that information, if you know it or can obtain it, so that we may complete the Hague Convention forms requesting service, or let us know if that information is unavailable.

In light of the Court's Order, we would appreciate a response at your earliest convenience.

Sincerely,

Jennifer R. Cowan

New York • Washington, D.C. • London • Paris • Frankfurt • Moscow • Hong Kong • Shanghai

## Cowan, Jennifer R.

**From:** Harold Hoffman [hoffman.esq@verizon.net]
**Sent:** Tuesday, May 13, 2008 11:02 PM
**To:** Cowan, Jennifer R.
**Subject:** Gudavadze v. Kay

Ms. Cowan: I have your letter of today. Regretfully, I am not privy to the street address of the prison, or the psychiatric hospital, where my client is held. I also very seriously doubt that my client's KGB lawyer in Minsk is authorized to provide the address where my client is detained at present. In light of same I offer two recommendations:

1. Ask Ms. Duncan for the address. She is in close touch with the Minsk authorities and the Debevoise firm. As you know, she has also met with my client's jailors. Alternatively, simply ask her to forward her Minsk itinerary of 3/19/08. This should give you the information you feel you require.

2. I do not really think [and have a hard time accepting that you do] that an actual street address is required for a detained U.S. national whose release has been demanded by the U.S., the EU, Amnesty International, the NYC Bar Association, among others. I think the Belarus authorities to whom your request is directed will well understand who Mr. Zeltser is. If you're uncertain of this, attach the various U.S. State Department protests to your Hague Convention papers. This should clue them in on the individual to serve. If this is too cumbersome, I think it is enough for you to give my client's address as "in care of" that fine gentlemen in Minsk to whom all of plaintiffs' lawyers have a fondness for writing. That, I think, should do it.