**HAROLD M. HOFFMAN**
ATTORNEY AND COUNSELOR AT LAW

1140 AVENUE OF THE AMERICAS        Tel  + 1 212 486 6322
SUITE M-01                          Fax + 1 212 980 8748
NEW YORK, NEW YORK 10036-5803       hoffman.esq@verizon.net

Member:  New York & New Jersey Bars

May 15, 2008

Hon. Richard J. Sullivan, U.S.D.J.
United States Courthouse
500 Pearl Street, Room 615
New York, NY 10007

    Re:    *INNA GUDAVADZE, et al. v. JOSEPH KAY and EMANUEL ZELTSER*
           08 Civ 3363 (RJS)

Honorable Judge Sullivan:

We act for defendant Emanuel Zeltser in this matter.  We respectfully seek leave to submit the instant reply which highlights the stunning admissions and disclosures for the first time made in plaintiffs' papers, filed late last night, in opposition to Mr. Zeltser's application to renew his motion to dismiss and for discovery.

We will be brief and beg the Court's indulgence.  Plaintiffs' papers – impeaching their own earlier assertion of a singular Debevoise contact with authorities in Belarus – now disclose a second, most remarkable contact.  On March 23, 2008, Mr. Karolos Seeger of the Debevoise firm, in a written communication "sent on behalf of Lord Goldsmith" [Ex. A to plaintiff's Opp. Papers; emphasis in original], writes to both G. Vasilevich, the Belarus prosecutor general, and Sergei Vorobyov, the chief interrogator of the Belarus special KGB interrogations unit.  Mr. Vorobyov is the individual in charge of Mr. Zeltser's interrogation, a state secret never disclosed to us by Mr. Zeltser's Belarus lawyer – he would be subject to arrest had he done so – and a fact known to virtually no one outside the bowels of the Belarus KGB.  Yet plaintiffs knew, and they knew this Belarus state secret as early as March 23. How did Mr. Goldsmith obtain the name Vorobyov?  In their May 7 Reply Brief (p. 9), they claim that they "never received any response to our March 19 Letter" to the Belarus prosecutor. Yet, four days later, on March 23, Debevoise knew the identity of Mr. Zeltser's chief KGB interrogator.

Plaintiffs' disclosures of last night are even more sinister.  Thus, in her declaration of May 14th, Ms. Duncan now discloses that she knew of Mr. Zeltser's arrest on March 14th. Yet, no one knew of my client's arrest – even his family – until on or about March 18th, when the information was first released and publicized by the *Associated Press*, among others. Ms. Duncan then proceeded

Hon. Richard J. Sullivan, U.S.D.J.  May 15, 2008
<span style="float:right">Page 2</span>

to attend at least three (3) days of meeting with my client's interrogators, on March 15 [before anyone in the West knew that an arrest had even taken place], as well as on March 20 and 21. Ms. Duncan claims not to have been acting in plaintiffs' behalf on these dates. Yet she never deigns to tell us in her Declaration in whose behalf she acted. In her Declaration (¶ 11), she asserts that she will not disclose confidential communications with her clients (plural). Yet, earlier, she claims only to have been acting for one client, plaintiff Gudavadze (¶ 3). And, for the first time, the Debevoise firm discloses that it acted for plaintiffs commencing on or about February 12, well before the March 7 date, which it asserted in all prior filings with the Court was the first time they acted for plaintiffs.

Plaintiffs' latest filing raises many more questions that it answers. We now know that both Duncan and the Debevoise firm jointly acted for plaintiffs as early as February 12. Before the world knew of Mr. Zeltser's arrest, Duncan was already meeting with his interrogators. She never tells us how she obtained permission to enter that country, or in whose behalf she traveled there, or how she managed to get there so quickly (48 hours after Mr. Zeltser did). Duncan's haste to rush off to Belarus, hot on Mr. Zeltser's trail, strongly suggests that she knew, in advance, that he would be immediately arrested upon entry, <u>precisely</u> as suggested by Duncan in her March 3 letter to Belarus authorities. Equally sinister, although the role of S. Vorobyov in this matter is still held a state secret today, Lord Goldsmith knew on March 23.

Attorneys Duncan and Goldsmith should be made fully to disclose these matters at depositions critical to the issues raised in Mr. Zeltser's renewed motion to dismiss. As we point out in our May 9 letter renewing our application, the federal courts possess the power to decline to exercise personal jurisdiction under circumstances where its process would be demeaned or degraded. Ms Duncan, to this day, declines to disclose the basis for her selection of Belarus as the sole country to alert as to Mr. Zeltser's potential entry (and to then act "vigilantly"). And, she refuses, to this day, to aver under oath that Mr. Patarkatsishvili had any assets there, which might give reason for Mr. Zeltser's travel to that tyrannical country (nor does the Debevoise firm make such claim). Duncan still does not tell us why she was passing information about her secret meetings in Belarus to the Debevoise firm at a time when she claims no longer to have been acting for plaintiffs. If Duncan is to be believed, she was acting for another, non-disclosed client(s) when she had multiple meetings in Belarus. Yet, despite the sanctimonious claim in her Declaration (¶ 11) that her ethical obligations forbid disclosure of confidential client information to outsiders, she had no problem at all passing the very such information to the Debevoise firm.

Duncan makes no claim in her Declaration of hardship attendant to being deposed in New York. Neither does Mr. Goldsmith in any filing (understandably, he has authored none). They should both be ordered to appear here for deposition as their testimonies would patently be pertinent to Mr. Zeltser's renewed motion relative to both due process issues and the question of whether this Court's process is being demeaned and degraded by plaintiffs' conduct. Plaintiffs' suggestion,

Hon. Richard J. Sullivan, U.S.D.J.   May 15, 2008
Page 3

made with no legal support or authority, that the scope of the examinations be limited, should be rejected by the Court, as should the insidious suggestion that the depositions be filed under seal. We understand well why plaintiffs would want to conceal their conduct. This Court should not cooperate in this endeavor.

Respectfully yours,

/s/
Harold M. Hoffman

cc: All Counsel