DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

**FILED ELECTRONICALLY**

May 20, 2008

**BY ECF AND BY HAND**

Hon. Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, New York 10007

*Gudavadze v. Kay*, 08-civ-3363

Dear Judge Sullivan:

      We write in response to Harold Hoffman's May 18, 2008 letter to the Court in this matter. Although we do not wish to prolong the parties' exchange of letters on the pending motions, given the extreme nature of the assertions in Mr. Hoffman's latest letter – which consist largely of speculation and allegations made without a shred of evidence – we respectfully submit that a response is warranted.

      At the outset, we stress that we learned for the first time on May 17 of the allegations concerning Mr. Zeltser being forced to place phone calls by the Belarusian authorities, as set forth in a May 16, 2008 facsimile from the U.S. State Department (the "State Department Facsimile").[1] Contrary to what Mr. Hoffman asserts, we were not aware of these allegations until May 17. Further, although the contents of that facsimile are quite disturbing, they have nothing to do with the issue before this Court – namely, whether Plaintiffs (either directly or through their counsel) improperly procured or

---

[1] We learned of the State Department Facsimile attached to Mr. Hoffman's May 18 letter ("Hoffman May 18 Letter") not from Mr. Hoffman, but from a third party, Karon von Gerhke-Thompson, with whom Mark Zeltser and Mr. Hoffman appear to be consulting and who regularly emails Lord Goldsmith, journalists and law enforcement officials regarding this case. On May 17, Ms. von Gerhke-Thompson sent Lord Goldsmith a copy of the State Department Facsimile.

Hon. Richard J. Sullivan                2                            May 20, 2008

contributed to Mr. Zeltser's detention in Belarus, thus rendering him unable to receive personal service of process in this litigation.

Mr. Hoffman's entire letter is predicated on the assertion that Plaintiffs' counsel, and Lord Goldsmith in particular, "knew" as of March 23, 2008 that Mr. Zeltser did not have control of the documents Plaintiffs seek in this litigation, allegedly because as of this date Lord Goldmith had already been "in contact with Vorobyov [*sic*], chief interrogator of Mr. Zeltser." Hoffman May 18 Letter at 2; *see also id.* at 3. This assertion is utterly false – indeed, not only is there no evidence to support it, but all of the available evidence (as opposed to speculation, which is all Mr. Hoffman offers) contradicts the assertion. Moreover, the contention that Plaintiffs would go to the effort and expense of seeking from Mr. Zeltser the production of documents that Plaintiffs supposedly knew were not in Mr. Zeltser's control is not "cynical," as Mr. Hoffman suggests – it does not make sense. Although Mr. Hoffman argues this theory with vigor, the volume of his assertions does not make it any more logical.

Rather than attempt to address Mr. Hoffman's letter line by line, we respectfully draw the Court's attention to the following points, which demonstrate that Mr. Hoffman's letter not only is full of unsupported accusations and speculation, but also that it provides no support for the motions pending before the Court.

*First*, the correspondence between this law firm and the Belarusian authorities demonstrates that there has never been any contact beyond that correspondence. The March 23 email that Mr. Hoffman seeks to cast as sinister makes it absolutely clear that we had not heard from the Belarusian prosecutor after sending our initial letter of March 19, and that through the email, we were doing nothing more than following up on our March 19 letter and proposing a specific date for a meeting. It is simply impossible to derive any more meaning from the email.

Indeed, further evidence of the fact that no representative of this law firm has met with or spoken to the Belarusian authorities concerning Mr. Zeltser or any other aspect of this matter can be found in our most recent correspondence with those authorities, which occurred after our last submission to this Court. Last week, Michelle Duncan informed us that Belarusian investigators wished to meet with us and Inna Gudavadze concerning their investigation of Mr. Zeltser; in response, we asked Ms. Duncan to have the Belarusian investigators contact us directly. Mr. Vorobyev emailed us on May 17; his email to us and our response are attached to this letter as Exhibit A.[2] As is abundantly

---

[2] We do not believe this correspondence changes the analysis of the jurisdictional question before the Court. But because the question of our interactions with the Belarusian authorities has been raised with the Court, we thought it appropriate to bring these recent developments to the Court's attention. Although we had intended to notify the Court yesterday of this correspondence, because we were also

Hon. Richard J. Sullivan 3 May 20, 2008

clear from Mr. Vorobyev's email and our response, we have never met with him or spoken with him concerning this matter.[3]

*Second*, there is also nothing sinister regarding how Plaintiffs' counsel obtained Mr. Vorobyev's name for use in our March 23 email: We obtained it from Ms. Duncan, whom we understood had been in contact with the authorities in Belarus. The fact that we obtained Mr. Vorobyev's name from Ms. Duncan proves exactly that, and nothing more. In particular, although Ms. Duncan provided us with Mr. Vorobyev's name for contact purposes, we can state with absolute certainty that she did not provide us with any information about the alleged telephone calls and apparent mistreatment described in the State Department Facsimile, or indeed with any other information that would support Mr. Hoffman's ludicrous assertion "that Goldsmith also knew [as of March 23] of the failed attempt to lure Mr. Kay [into] a Minsk jail cell and to seize documents by torture and violence." Hoffman May 18 Letter at 2.

*Third*, there is absolutely no basis for Mr. Hoffman's serious allegation that the March 23 email was "previously concealed by the Debevoise firm." Hoffman May 18 Letter at 3. In reality, we submitted this email to the Court in a timely manner, when the extent of Plaintiffs' counsel's contacts with the Belarusian authorities became an issue before this Court. There was no reason for us to submit the email to the Court before this point in this litigation; Mr. Hoffman's attempt to make something sinister out of something that is in fact perfectly reasonable should be rejected out of hand.

*Fourth*, as noted above, Mr. Hoffman's assertion that Plaintiffs would pursue our requests for documents from Mr. Zeltser despite supposedly knowing that Mr. Zeltser did not have any control over those documents defies logic. It also is contradicted by the record currently before the Court. Before he traveled to Belarus, Mr. Zeltser had advised several people – including Plaintiffs' counsel – that he had control of the documents. *See, e.g.*, Complaint, ¶¶ 25, 43, 50, 55, 57; Declaration of Jennifer R. Cowan, dated April 21, 2008 ("Cowan OSC Decl."), Exhs. B-E; Declaration of Michelle Duncan, dated April 21, 2008. Not having heard from the Belarusian authorities in response to our communications, and not being privy to what is reported in the State Department Facsimile, Plaintiffs would have had no reason to think anything other than that Mr. Zeltser or Mr. Kay still had control over the documents. And after Mr. Kay's counsel represented to us that he was not in possession of the documents, by letter dated May 1, 2008, we had even more reason to believe that, if the documents existed, Mr. Zeltser –

---

compelled to respond to Mr. Hoffman's letter, rather than write twice to the Court, we decided to incorporate that notice into this letter.

[3]  As noted in Mr. Vorobyev's email, he sent it from his private email address. Because this letter will be available via ECF, we have redacted his email address and the phone numbers he provided for himself and his translator.

Hon. Richard J. Sullivan                              4                              May 20, 2008

and not Mr. Kay – had control of them.  Indeed, nothing in the State Department Facsimile supports the allegation that the documents that Mr. Zeltser was allegedly ordered to have released to Boris Berezovsky were the documents that Plaintiffs seek in this case.[4]

  *Fifth,* having only recently received the State Department Facsimile, and having little ability to independently verify its contents, we are not in a position to comment on the truth of Mr. Zeltser's assertions about telephone calls he allegedly made, or who allegedly instructed him to make those calls.  We would, however, respectfully suggest that those assertions are not relevant to the motion presently before the Court as nothing in the State Department Facsimile references Plaintiffs or their counsel and nothing in it speaks to the question of whether Plaintiffs or their counsel arranged for Mr. Zeltser to be absent from the jurisdiction and therefore unable to receive personal service of this litigation.

  Also, it should be remembered that before Mr. Zeltser traveled to Belarus, the available evidence suggests that, using an invalid power of attorney, he was seeking to assert control over assets properly belonging to Badri Patarkatsishvili and his heirs.  And to the extent Mr. Zeltser showed the "testamentary documents" he claimed to have in his possession to anyone, available evidence suggests that those documents are fraudulent.  Finally, as already described in Plaintiffs' previous filings with the Court, Mr. Zeltser has a history of involvement in cases in which courts have found that documents he or his clients have submitted were not authentic.  *See* Memorandum of Law in Support of Plaintiffs' Application for an Order to Show Cause at 18-20; Cowan OSC Decl., Exhs. J-M.

  None of this, of course, is to suggest that we in any way condone any mistreatment of Mr. Zeltser that may have occurred.  We do not.  But it is to suggest that there are grounds to at least pause over the credibility of his statements.

  *Finally*, although the State Department Facsimile is not relevant to the legal issue presently before the Court, we would respectfully suggest that certain of its contents raise questions about the accuracy of Mr. Hoffman's prior representations to the Court concerning his and Mark Zeltser's inability to communicate with Emanuel Zeltser or share documents with him.  In particular, the email included from the State Department

---

[4] Mr. Hoffman produces no evidence in support of this allegation, although he states, without support or explanation, that he "learned" that the referenced "client" was Defendant Kay.  Hoffman May 18 Letter at 2.  Mr. Hoffman also refers in his letter to a tape recording and other evidence that Joseph Kay may have.  *Id.*  If Mr. Kay has such evidence, he should produce it to the Court, or, at the very least, Mr. Hoffman should explain why he is so eager for depositions but fails to pursue other evidence in support of his theory.

Hon. Richard J. Sullivan                                  5                                  May 20, 2008

suggests that Emanuel Zeltser had communicated information about mistreatment and the previously mentioned telephone calls to his Belarusian lawyer, who in turn had communicated the information to the State Department.  State Department Facsimile at 7 ("He [Emanuel Zeltser] described a similar tale of that already told to us by Mr. Goryachko through Ms. Adler . . . .").  This would seem contrary to Mr. Hoffman's protestations concerning his "abject inability to communicate with Mr. Zeltser."  Hoffman April 9 Letter at 2 n. 1.

* * * * *

Mr. Hoffman's letter is replete with speculation and allegations that are supported by no evidence.  It also provides absolutely no support for Mr. Hoffman's erroneous assertion that Plaintiffs and their counsel improperly procured the detention of Mr. Zeltser in Belarus and thereby improperly interfered with his ability to receive personal service of process.  The State Department Facsimile itself certainly provides no such support, and no amount of conjecture and innuendo layered on top of the document by Mr. Hoffman can change that.

Mr. Hoffman's letter also includes numerous irresponsible accusations about the conduct of Plaintiffs and their counsel, including accusations of criminal conduct and strong suggestions that Plaintiffs and their counsel have not proceeded in good faith – the latter suggestions made despite the prior admonition of this Court about avoiding careless assertions of bad faith.  *See* Transcript of Hearing on May 8, 2008, at 26.  Given the nature of these accusations and in light of the irrelevance of his letter to the jurisdictional issue before the Court, we respectfully urge the Court to disregard Mr. Hoffman's letter and the attached material with respect to the pending motion.

We appreciate the Court's consideration.

Respectfully submitted,

  /s/ Jennifer R. Cowan

Debevoise & Plimpton LLP

Christopher K. Tahbaz
Jennifer R. Cowan


Enc.    Exhibit A   (Emails between Karolos Seeger, Lord Goldsmith and
                    Sergei Vorobyev)

Exhibit A

## Seeger, Karolos

**From:** Seeger, Karolos
**Sent:** 18 May 2008 21:18
**To:** 'Sergei Vorobyev'
**Cc:** Goldsmith, Peter H.
**Subject:** RE: Meeting with the representative from Belarus

Dear Mr Vorobyev

Thank you for your email. As we explained in our letter of 6 May, any cooperation by our client with your investigation is conditional upon Mr. Zeltser being treated in accordance with applicable international standards. We consider that neither we nor our client can meet with you until this issue is resolved.

We do, of course, note that in your email you deny that there is any basis whatsoever for the allegations of mistreatment made by Mr. Zeltser's brother. However, concerns have been raised not only by Mark Zeltser, but also by the US authorities. We attached the 29 April press release from the US Embassy in Minsk to our 6 May letter. We would respectfully ask you to tell us what steps have been taken by you to satisfy these concerns.

Further, in light of the allegations that have been raised, we are sure that you will understand that we and any court seised of issues relating to Mr. Zeltser are likely to require some independent third-party confirmation of Mr. Zeltser's treatment and condition in your custody. We would welcome suggestions from you as to how this could be achieved to the satisfaction of all parties concerned.

Finally, further controversy surrounds the circumstances of Mr. Zeltser's arrest. It has been alleged that Mr. Zeltser was arrested immediately after landing at Minsk airport, before having taken any steps or action on Belarusian territory. We have also heard a different account. We should be grateful if you could shed further light on this and also if you could provide us with details of the charges you have issued against Mr. Zeltser.

We will, of course, consider your request to meet in light of your response to the matters set out above. We look forward to hearing from you

Yours sincerely

Lord Goldsmith QC / Karolos Seeger

---

**From:** Sergei Vorobyev   REDACTED
**Sent:** 18 May 2008 10:4_
**To:** Goldsmith, Peter H.; Seeger, Karolos
**Subject:** Meeting with the representative from Belarus

Dear Lord Goldsmith and Mr. Seeger,

My name is Sergei Vorobyev and I am an official representative of the Belarus authorities, currently staying in London. The purpose of my visit to London is to collect information on the case of Emanuel Zeltser, who is currently held in custody in Belarus. I have already met several witnesses during the last week in London.

19/05/2008

Being unsuccessful in all my efforts to reach you by phone during the last week, I am sending you this letter using my private e-mail address.

I am writing you following your letters to the Prosecutor General of the Republic of Belarus, dated March 19 and May 06, 2008.

In those letters you have been kind to suggest your and your clients' assistance in the matters concerned with the investigation of Emanuel Zeltser.

We would like to invite you and your client, Ms. Inna Gudavadze, to meet with me at the Embassy of the Republic of Belarus in London at any time convenient for you on Monday, May 19, or on Tuesday, May 20. I was planning to return back to Belarus today, but have extended my stay in order to be able to meet you and your client.

I can assure you that there is no basis whatsoever to the allegations of mistreatment brought forward by the brother of Emanuel Zeltser. Despite the fact that no proof, other than the claims made by Mark Zeltser, was ever provided by anybody to support these allegations, they were spread by different official and unofficial sources. Should you wish that, I will be glad to discuss this issue in details during our meeting on Monday or Tuesday.

Please contact me on this e-mail address as soon as possible in order to schedule a meeting with you and your client. Unfortunately, my English is not perfect, so should you like to contact me by phone directly please use Russian speaking interpreter. My number in the UK is REDACTED Also you may contact my interpreter on REDACTED.

Kind regards,

Sergei Vorobyev

19/05/2008