UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK

———————————

№ 08 Civ. 3363 (RJS)

———————————

INNA GUDAVADZE, *ET AL.*,

Plaintiffs,

VERSUS

JOSEPH KAY AND EMANUEL ZELTSER,

Defendants.

———————————

MEMORANDUM AND ORDER
May ___, 2008

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs bring this action against Joseph Kay and Emanuel Zeltser, seeking, *inter alia*, declaratory and injunctive relief to prevent defendants "from interfering with Plaintiffs' efforts to ensure the lawful distribution of [Arkady Patarkatsishvili's] assets and the orderly administration of Mr. Patarkatsishvili's estate . . . ." (Compl. ¶ 2.) Previously, this Court denied defense counsel's motion to dismiss — brought on behalf of defendant Zeltser — on the grounds of insufficiency of service and lack of personal jurisdiction without prejudice to renewal. (*See* May 8, 2008 Order at 1.) On May 9, 2008, Zeltser's defense counsel renewed his motion to dismiss and submitted a request to conduct certain expedited discovery.

For the following reasons, the Court denies both the motion to dismiss and the request to conduct expedited discovery.

I. BACKGROUND

Plaintiffs are the widow and daughters of Arkady Patarkatsishvili, a Georgian national believed to possess substantial assets who died unexpectedly in London on February 12, 2008. Plaintiffs allege that Kay and Zeltser have misrepresented themselves as authorized to act and to speak on behalf of Mr. Patarkatsishvili and his estate, in part by relying on documents which allegedly appear to be fraudulent or otherwise invalid. According to plaintiffs, by relying on such documents, defendants have taken control of at least one substantial asset allegedly owned by Mr. Patarkatsishvili's estate, and have

attempted to seize control of other assets, thereby complicating plaintiffs' efforts to administer Mr. Patarkatsishvili's estate.

On April 21, 2008, plaintiffs submitted a request to preliminarily enjoin defendants from engaging in such conduct. On that date, the Hon. Loretta A Preska, District Judge, signed an Order to Show Cause (the "OSC") directing defendants (1) to show cause why a preliminary injunction should not issue enjoining defendants from acting or speaking on behalf of Mr. Patarkatsishvili's estate, until a court of competent jurisdiction bestowed such authority upon them, or from using certain documents to support their claims of authority to act on behalf of the estate, and (2) to produce to plaintiffs' counsel for inspection certain documents that they have allegedly relied on in holding themselves out as representatives of Mr. Patarkatsishvili's estate.[1]

In his response to the OSC, Harold M. Hoffman ("defense counsel") — who had been hired by Zeltser's brother to represent Zeltser in this action — indicated that Zeltser had been detained by authorities in Belarus on March 12, 2008, and, therefore, had not received notice of this action or plaintiffs' application for preliminary relief.[2] Defense counsel also brought to the Court's attention that the United States Department of State has raised extremely troubling concerns regarding the conditions of Zeltser's confinement. Specifically, the Department of State has indicated that consular officers from the United States Embassy in Minsk have been denied proper access to Zeltser, a United States citizen; that Zeltser is "not receiving adequate medical care"; and that Zeltser has reported that he has been subject to "beatings" and is experiencing a "significant physical deterioration" during his detention in Belarus. (*See* Hoffman's May 18, 2008 Ltr. (attaching the Department of State's April 28, 2008 Diplomatic Note to the Embassy of Belarus).)

Defense counsel opposed plaintiffs' application for preliminary relief, and cross-moved to dismiss this action on the grounds of insufficient service of process and lack of personal jurisdiction over Zeltser.[3]

---

[1] This case was originally assigned to the undersigned. Judge Preska was acting as the Part I Judge when she signed the OSC.

[2] It appears that Mark Zeltser has been acting as Emanuel Zeltser's "next friend" in hiring defense counsel and defending this action. "'Next friend' standing is a procedural mechanism by which a lawsuit is prosecuted or defended by someone other than the real party in interest." *Adem v. Bush*, 425 F. Supp. 2d 7, 11 n. 6 (D.D.C. 2006); *see* Fed. R. Civ. P. 17(c)(2). "Most frequently, 'next friends' appear in court on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." *Whitmore v. Arkansas*, 495 U.S. 149, 163-64 (1990) (internal citations omitted). The putative "'next friend' must provide an adequate explanation [of] . . . why the real party in interest cannot appear on his own behalf to prosecute the action"; and he "must be truly dedicated to the best interests of the person [or persons] on whose behalf he seeks to litigate." *Id.* at 163-64 (internal citations omitted). "[I]t has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 164. Plainly, in this case, the "next friend" requirements are satisfied on the basis of Emanuel Zeltser's inaccessibility, due to his detention in Belarus, and Mark Zeltser's clear dedication to the "best interests" of his brother. *See id.* at 163-64.

[3] On May 5, 2008, this Court signed a stipulation executed by plaintiffs and defendant Kay, whereby those two parties agreed, *inter alia*, that Kay would not "act or speak on behalf of the estate" of Mr. Patarkatsishvili pending the outcome of this action or a decision by a court of competent jurisdiction regarding the estate, thus rendering moot plaintiffs' application for a preliminary injunction against Kay. (*See* May 5

Specifically, defense counsel argued that "[t]he circumstances of Emanuel Zeltser's arrest, detention and torture are intimately tied to the conduct of [plaintiffs'] counsel and those acting in concert with them." (Def. Zeltser's OSC Mem. at 6.) Therefore, according to defense counsel, because plaintiffs and their counsel had allegedly helped to secure Zeltser's detention in Belarus, plaintiffs' service of the summons and complaint in this action did not comport with the requirements of due process. (*See id.* at 10.)

At the hearing regarding the OSC, after conceding that, "while imprisoned, Defendant Zeltser likely cannot harm Plaintiffs" (Pls.' OSC Reply at 10), plaintiffs withdrew their request for a preliminary injunction against Zeltser. (Tr. of Argument on May 8, 2008 ("May 8 Tr.") at 40.) Instead, plaintiffs sought a stay of the action against Zeltser, subject to certain continuing obligations upon defense counsel. (Pls.' OSC Reply at 10.) Thereafter, following extensive argument regarding defense counsel's motion to dismiss, the Court held that "the service effectuated here was reasonably calculated under the circumstances to apprise the defendant of the pendency of the proceeding. And so I find that there is personal jurisdiction." (May 8 Tr. at 53-54.) In an order issued that day, the Court formalized its ruling as follows:

> Defendant Zeltser's cross-motion to dismiss the complaint on the basis of insufficient service of process and lack of personal jurisdiction is hereby DENIED without prejudice to renewal. The Court finds, for the reasons set forth on the record, that plaintiffs have established, on the basis of the record before the Court at this time, that the methods of service adopted by plaintiffs in regard to defendant Zeltser — namely, delivering the summons and complaint to Zeltser's residence by leaving a copy with the doorman and mailing a second copy to the residence — complied with Rule 4(e) of the Federal Rules of Civil Procedure as well as § 308(2) of New York's Civil Practice Law and Rules. Moreover, the Court finds that such service constituted "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and was "not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *see Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) ("There is 'no rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions.'") (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)).

(May 8, 2008 Order at 1.)

The Court also indicated that defense counsel "may renew his motion to dismiss on the grounds of insufficient service and lack of jurisdiction by submitting a letter within two weeks of the date of this Order. The letter must set forth legal authority in support of Zeltser's renewed motion, requests, if any, to conduct discovery regarding the service issue, and specify reasons why such discovery

---

Stipulation and Order.)

3

would be necessary and/or helpful in resolving defendant's renewed motion to dismiss." (*Id.* at 2.) Specifically, the Court directed defense counsel to present authority in support of the proposition that the "complicity of plaintiffs' counsel in [procuring] the unavailability of the defendant is a basis for denying service and concluding that personal jurisdiction is not present." (May 8 Tr. at 39.)

The following day, on May 9, 2008, defense counsel submitted a letter renewing his motion and seeking to depose two attorneys — namely, Michelle Duncan, a partner at the London office of Cadwalader Wickersham & Taft LLP and former counsel to one of the plaintiffs, Inna Gudavadze, in this action; and Peter Goldsmith, the European Chair of Litigation for Debevoise & Plimpton LLP, plaintiffs' current counsel. By order dated May 9, 2008, the Court granted plaintiffs' request to submit a response to defense counsel's letter. (*See* May 9, 2008 Order.) The Court did not grant leave for defense counsel to submit a reply letter. (*See id.*) Nevertheless, following plaintiffs' submission of their response letter on May 14, 2008, defense counsel has submitted three additional letter briefs, which, including attachments, total forty pages in length. Plaintiffs have also submitted an additional, two-page letter, wherein they request a conference to set a briefing schedule to respond to defense counsel's various letters. (*See* Pls.' May 21, 2008 Ltr., at 1-2.)

II. DISCUSSION

A. Motion to Dismiss

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "[T]he plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Tomney v. Int'l Ctr. for the Disabled*, No. 02 Civ. 2461 (DC), 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) (internal quotation marks and citation omitted). For the following reasons, the Court denies defense counsel's renewed motion to dismiss, and adheres to its previous determination that service in this case constituted "'notice reasonably calculated, under the circumstances, to apprise [Zeltser] of the pendency of the action and afford [him] the opportunity to present [his] objections.'" *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) (quoting *Peralta v. Heights Med. Ctr, Inc.*, 485 U.S. 80, 84 (1988)) (additional internal quotation marks and citation omitted).

As noted *supra*, in denying defense counsel's previous motion, the Court directed defense counsel, in the event that he submitted a renewed motion to dismiss, to present authority in support of the proposition that the "complicity of plaintiffs' counsel in the unavailability of the defendant is a basis for denying service and concluding that personal jurisdiction is not present." (May 8 Tr. at 39; *see also* May 8, 2008 Order at 1 (directing defense counsel "to set forth legal authority in support of [the] renewed motion").)

However, defense counsel has failed to present any such authority. Specifically, in three of the cases cited in defense counsel's May 9 letter, the court found sufficient service even where the defendant did not receive or was not likely to receive "actual notice" of the action. *See Dobkin v. Champan*, 236 N.E.2d 451, 458 (N.Y. 1968) ("Our law has long been comfortable with many situations in which it

4

was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it."); *Lebeskind v. Liebeskind*, 449 N.Y.S.2d 226, 229 (N.Y. App. Div. 1982); *Young v. Bunny Bazaar*, 107 N.J. Super. 320, 326 (N.J. Sup. Ct. Law Div. 1965).

In the fourth case cited in the May 9 letter, the Supreme Court found that the defendant corporation had waived its objection to service where, although its representative had been induced to come into the jurisdiction through fraud, the corporation appeared in the action and failed to raise an objection to service prior to trial.[4] *See Fitzgerald Construction Co. v. Fitzgerald*, 137 U.S. 98, 105 (1890). In *Fitzgerald*, the Court observed in *dicta* that "[i]f a person is induced by false representations to come within the jurisdiction of a court for the purpose of obtaining service of process upon him, and process is there served, it is such an abuse that the court will, on motion, set the process aside; but no such motion was made here . . . ." *Id.* at 105. Subsequent courts have construed this portion of the *Fitzgerald* decision as supporting a rule — sometimes referred to as the "fraudulent enticement" rule — that requires courts to "invalidat[e] service on individuals who were brought into a jurisdiction by fraud; for example, under the guise of a settlement meeting." *American-European Art Associates, Inc. v. Moquay*, No. 93 Civ. 6793 (AGS), 1995 WL 317321, at *3 (S.D.N.Y. May 4, 1995) (collecting cases); *see, e.g.*, *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 613 (1990); *Henkel Corp. v. Degremont, S.A.*, 136 F.R.D. 88, 91 (E.D. Pa. 1991) (observing that "if a person is induced by artifice or fraud to come within the jurisdiction of the court for the purpose of procuring service of process, such fraudulent abuse of the writ will be set aside upon proper showing") (internal citations and quotation marks omitted); *Terlizzi v. Brodie*, 329 N.Y.S.2d 589, 590 (2d Dep't 1972).

Obviously, there is no fraudulent enticement here. In fact, the circumstances alleged in the instant case present the converse of the situation to which the fraudulent enticement rule has previously been applied. Specifically, in this case, defense counsel alleges that, rather than tricking the defendant to come within the jurisdiction in order to effect service, plaintiffs were complicit in forcibly obtaining Zeltser's presence *outside* of the jurisdiction in order to gain a litigation advantage. Thus, it is clear that *Fitzgerald*, and the line of cases applying the fraudulent enticement rule, do not support the position urged on this Court by plaintiffs, and plaintiff fails to present a persuasive argument in support of applying the fraudulent enticement rule to the situation found in the instant case.

As to the fifth case cited in the May 9 letter, *United States v. Toscanino*, 500 F.2d 267, 275-76 (2d Cir. 1974), the Court finds that the circumstances considered therein are not analogous to those alleged in the instant case, and that the holding does not control the outcome of defense counsel's motion. In *Toscanino*, the United States government was alleged to have forcibly and violently kidnapped a criminal defendant, rather than pursue extradition through the existing legal framework, in order to subject him to criminal prosecution in the United States, where he was ultimately tried and convicted.

---

[4] Other than the cases discussed herein, defense counsel has failed to cite any additional legal authority in support of his renewed motion.

In resolving the defendant's challenge to his conviction, the Second Circuit departed from the previously long-standing rule that "the government's power to prosecute a defendant is not impaired by the illegality of the method by which it acquires control over him." *Id.* at 271. In support of this departure, the court observed that the Supreme Court had more recently, "[i]n an effort to deter police misconduct," "extended" due process protections "to bar the government from realizing directly the fruits of its own deliberate and unnecessary lawlessness in bringing the accused to trial." *Id.* at 272 (internal citations omitted). Thus, the court held that due process "now protects the accused against pretrial illegality," such as "when an accused is kidnapped and forcibly brought within the jurisdiction . . . ." *Id.* at 275. However, as to the appropriate sanction for such government misconduct, the court found that the mere "suppression of evidence will not suffice." *Id.* Instead, the court held that due process "requir[es] a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights."[5] *Id.*

Clearly, the holding in *Toscanino* does not require this Court to dismiss the complaint on jurisdictional grounds. In the first place, this is a civil action, and does not involve the government's invasion of an individual's constitutional rights. Moreover, even assuming *arguendo* that the holding in *Toscanino* applied in the context of a civil action, the decision stands for the unexceptional, clearly inapplicable proposition that personal jurisdiction cannot be obtained over "a defendant whose presence has been secured by force or fraud." *Toscanino*, 500 F.2d at 275. As such, there is no basis for this Court to conclude that the purported evidence of misconduct by plaintiffs' current and former counsel bears upon the sufficiency of service in this case or this Court's jurisdiction over Zeltser.

Rather, defense counsel's allegations appear to be more appropriately raised as part of an "unclean hands" defense, or, perhaps, as claims in a separate action against the purported wrongdoers, either in this Court or elsewhere.[6] In any event, regardless of what may be the proper avenue for defense counsel to raise and to litigate these allegations of misconduct, it is clear that they do not justify dismissal of this action on the grounds of insufficient service and personal jurisdiction.

---

[5] Ultimately, the Second Circuit remanded the case to the district court for an "evidentiary hearing . . . only if . . .[the defendant] offers some credible supporting evidence [in support of his allegations], including specifically evidence that the action was taken by or at the direction of United States officials." *See Toscanino*, 500 F.2d at 276. This Court also notes that, since the time of its decision, the holding in *Toscanino* has been effectively limited to the extreme circumstances found therein. *See, e.g.*, *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 66 (2d Cir. 1975) ("[W]e are forced to recognize that, absent a set of incidents like that in *Toscanino*, not every violation by prosecution or police is so egregious that [case law regarding due process] requires nullification of the indictment."); *see also United States v. Best*, 304 F.3d 308, 312 (3d Cir. 2002) ("Subsequent decisions of the Supreme Court indicate that there is reason to doubt the soundness of the *Toscanino* exception, even as limited to its flagrant facts.").

[6] The unclean hands defense arises from the well-settled rule that "the doors of a court of equity" are "close[d]" to one "tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *see Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005) (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)).

6

Moreover, apart from the legal issues raised by defense counsel's motion, the Court notes its strong disapproval of defense counsel's repeated mischaracterizations of the record as well as his unsupported allegations of misconduct purportedly based on inferences drawn therefrom. Although defense counsel asserts that plaintiffs and their counsel were complicit in securing the detention of Zeltser as well as the resulting mistreatment that Zeltser is apparently suffering at the hands of his jailers, such assertions are simply not supported by the record in this case.

Specifically, defense counsel points to evidence demonstrating that Mr. Goldsmith corresponded with Ms. Duncan and the Belarusian authorities regarding Zeltser, and that Ms. Duncan corresponded and met with Belarusian authorities regarding their dealings with Zeltser. (Duncan Decl. ¶ 10.) In regard to Mr. Goldsmith, the correspondence in the record indicates that, on March 18, 2008, following Zeltser's detention in Belarus, Mr. Goldsmith sent two letters to Belarusian officials, wherein Mr. Goldsmith indicated that he represented certain "heirs and beneficiaries" of Mr. Patarkatsishvili's estate, that Kay and Zeltser were believed to have been fraudulently "representing themselves as authorized to act on behalf" of the estate, and that he was putting the officials "on notice that we would challenge on behalf of our clients any dealings with Mr. Kay concerning assets" of the estate. (Cowan Decl. Exs. B-C.)

The record also includes a March 19, 2008 letter from Mr. Goldsmith to the "Prosecutor General" of Belarus regarding Zeltser, wherein Mr. Goldsmith indicated that he represented "Inna Gudavadze and her two daughters," that his "clients are concerned that they may be the victims of attempted fraud," that he was aware that Zeltser was "currently in custody in Minsk and that you are investigating whether he may have attempted to defraud by relying on invalid or forged documentation" relating to the estate of Mr. Patarkatsishvili," and "confirm[ing] that our clients do not accept that Mr. Zeltser has such authority to act." (Hoffman Apr. 30, 2008 Decl. Ex. C.) In the letter, Mr. Goldsmith also indicated that, "[g]iven the seriousness of this matter and the importance of it to our clients, we can confirm that our clients support the continuation of your investigation," that his clients were "interested in cooperating with your investigation," and that they would be "happy . . . [to] provide you with further information that is or becomes available . . . ." (*Id.*)

In regard to Ms. Duncan, the record establishes that she wrote a letter to the Belarusian Prosecutor General, dated March 3, 2008, wherein she stated that she was representing Inna Gudavadze, that she suspected Kay and Zeltser had "embarked on a concerted attempt to gain improper and unlawful access to Mr. Patarkatsishvili's worldwide assets," and that she believed the estate held "substantial assets" in Belarus at the time of his death. (Duncan April 19, 2008 Decl. Ex. B.) In the letter, Ms. Duncan also outlined the evidence purportedly establishing Kay's and Zeltser's fraudulent conduct, and noted that she brought "this matter to your attention in the hope that you will act speedily and vigilantly in the event that [Kay or Zeltser] attempt to gain illegal and/or improper access" to assets of the estate at issue in Belarus. (*Id.*)

The record also indicates that Ms. Duncan met with authorities in Belarus sometime in late March 2008, following Zeltser's detention. (*See id.*; Duncan May 14, 2008 Decl. ¶ 10.) In a sworn declaration submitted

7

to this Court, Ms. Duncan indicates that her meeting with Belarusian authorities was not undertaken at the "direction or request of [Inna] Gudavadze or her attorneys at Debevoise," and that she was no longer representing Inna Gudavadze at that time. (*Id.*)

Relying almost exclusively on the above-cited materials, defense counsel has repeatedly asserted that plaintiffs and their counsel — both current and former — were complicit in the alleged kidnapping and torture of Zeltser. (*See, e.g.*, Hoffman's May 9, 2008 Ltr. at 3; Hoffman's May 15, 2008 Ltr. at 1; Hoffman's May 18, 2008 Ltr. at 2 ("[There was no purpose to Mr. Zeltser's travel to Belarus other than for plaintiffs and those acting with them, including their lawyers, to secure his physical detention, and that of [co-defendant Joseph Kay], so that they could be eliminated as contestants to control of assets in the estate of [the decedent, Arkady Patarkatsishvili]. A further goal was for plaintiffs and those acting in concert with them . . . to obtain, by violence, control of, and thus, the unavailability of documentary evidence pertinent to this action."); *id.* at 3 ("By the time [plaintiffs' Order to Show Cause] was filed, plaintiffs and their attorneys already knew that the documents they were applying to have Zeltser produce were not in his control. Only after failed efforts to secure these materials by kidnapping, torture and deceit did they apply to this Court for judicial relief."); *id.* ("[T]he kidnapping to, and detention in, Belarus are not intended for purposes of legitimate criminal prosecution, but rather, extra-judicially, to advance the interests of plaintiffs, their attorneys, and Berezovsky [a third party that had allegedly retained Ms. Duncan as his attorney], in civil litigation, and to facilitate the criminal seizure of [Mr. Patarkatsishvili's] wealth."); *id.* at 3-4 ("We contend . . . that plaintiffs and those acting in concert with them, including their counsel, are attempting to use the process of this Court to further their criminal conspiracy to seize [the decedent's] monumental wealth."); Hoffman's May 21, 2008 Ltr. at 2.) Furthermore, in his May 15, 2008 letter to the Court, defense counsel appears to suggest that, if this Court were to deny his request to conduct expedited discovery, the Court would likewise be "cooperat[ing]" in plaintiffs' alleged illegal scheme. (*See* Hoffman's May 15, 2008 Ltr. at 3 ("We understand well why plaintiffs would want to conceal their conduct. This Court should not cooperate in this endeavor.")).

The Court has previously instructed defense counsel not to mischaracterize materials in the record, and now notes its disapproval of his failure to abide by that instruction.[7] Instead, defense counsel has continued to levy what appear to be unsupported allegations of misconduct on the part of plaintiffs and their current and former counsel. In this regard, the Court finds instructive the Second Circuit's observation in *Van Iderstine Co. v. RGJ Contracting Co., Inc.*, 480 F.2d 454, 459 (2d Cir. 1973):

> Civil litigation provides an opportunity for private parties to dispose of disputes in an orderly and

---

[7] *See* May 8 Tr. at 19 (The Court: "Mr. Hoffman, let me direct you not to use purple prose when the actual prose will do. I can understand this is an emotional case. I can understand from Mr. Zeltser's brother this is a matter of great concern to him . . . . I can understand all of that. This is a court of law, and I want to stay focused on the facts that are in the record, and if you have reason to believe [there are] other facts that are not in the record, I am happy to hear those, but I don't want to hear characterizations that require me to go back and say is that really what [the record] says on a regular basis.").

8

disciplined fashion. But the open forum which our courts provide for conflict resolution is not, nor can it ever be, a license to slander and abuse one's adversary. Such conduct diminishes the integrity of an institution whose usefulness depends upon the respect in which it is held by the public, and by the lawyers who practice in it. . . . Lawyers, as officers of the court, must always be alert to the rule that zealous advocacy in behalf of a client can never excuse contumacious or disrespectful conduct.

Accusing a fellow attorney of kidnapping and torture is an extremely serious allegation that should not be made lightly. Accordingly, defense counsel should refrain from making such allegations in the absence of actual proof of such criminality.[8]

In any event, defense counsel has failed to present persuasive authority or evidence demonstrating that the conduct of plaintiffs or their counsel justifies dismissal of this action on insufficient service or jurisdictional grounds. Therefore, having carefully reviewed the parties' submissions, the evidence submitted by defense counsel, and applicable law, the Court concludes that defense counsel's motion to dismiss lacks merit.

Indeed, the Court notes that plaintiffs' prosecution of the instant action belies any inference of an intent on the part of plaintiffs or their counsel to take advantage of Zeltser's detention in Belarus. Rather, the record clearly demonstrates that plaintiffs' counsel made substantial efforts to notify representatives of Zeltser of the pendency of this action as well as plaintiffs' request for preliminary relief. Moreover, within two weeks of filing the Order to Show Cause in this action, plaintiffs conceded that, "while imprisoned, Defendant Zeltser likely cannot harm Plaintiffs" (Pls.' OSC Reply at 10), and, therefore, withdrew their request for a preliminary injunction against Zeltser. (May 8 Tr. at 40.) Instead, plaintiffs now seek to stay the action against Zeltser pending his release from prison in Belarus, which would, of course, prevent plaintiffs from pursuing their claims against Zeltser during the course of his detention.[9] In light of these facts, it is difficult to see how Zeltser's detention has resulted in any sort of litigation advantage for plaintiffs in this action.

---

[8] The Court reminds defense counsel that New York's Code of Professional Responsibility ("NYCPR"), which binds attorneys practicing in this Court, provides, *inter alia*, that "[i]n appearing as a lawyer before a tribunal, a lawyer shall not . . . [e]ngage in undignified or discourteous conduct which is degrading to a tribunal . . . ." NYCPR Discip. Rule 7-106(C)(6). Similarly, Ethical Consideration 7-37 — which is aspirational in nature — provides that, "[a] lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system." N.Y. Ethical Consid. 7-37.

[9] The Court also notes that, by letter dated May 6, 2008, Mr. Goldsmith informed the Prosecutor General in Belarus that "we would like to make it clear on behalf of our client and ourselves that . . . if there is any truth in the allegations of mistreatment, it should immediately be brought to an end. . . . [W]e must make it clear that our clients' support for your investigation and our offer of cooperation are conditional upon Mr. Zeltser being treated in accordance with such appropriate standards." (Cowan May 7, 2008 Decl. Ex. D.) Defense counsel asserts that this letter indicates that Mr. Goldsmith "has been humiliated into withdrawing his offer of cooperation with the Belarus authorities in light of what is going on there." (May 8 Tr. at 17.) The Court disagrees and notes, once again, that the evidence simply belies defense counsel's characterization of the facts of this case.

### B. Jurisdictional Discovery

Defense counsel also seeks to depose Mr. Goldsmith and Ms. Duncan on an expedited basis in order to elicit additional information purportedly related to defense counsel's motion to dismiss for insufficiency of service and lack of personal jurisdiction. However, because the Court found *supra* that defense counsel has failed to establish that the conduct of plaintiffs or their counsel bears on the sufficiency of service or this Court's jurisdiction over Zeltser's person, the Court further finds that defense counsel's request to conduct expedited discovery must fail.

This Court has broad discretion in considering a party's request for jurisdictional discovery, *see Lehigh Val. Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975), and should consider compelling such discovery where "'jurisdictional facts are placed in dispute . . . .'" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)(quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)); *see, e.g.*, *Compania Del Bajo Caroni v. Bolivarian Republic of Venezuela*, No. 07 Civ.3179 (NRB), 2008 WL 1991105, at *8 (S.D.N.Y. Apr. 30, 2008)*; Volkart Bros., Inc. v. M/V Palm Trader*, 130 F.R.D. 285, 290 (S.D.N.Y. 1990); *see generally Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) ("A trial court enjoys wide discretion in its handling of pre-trial discovery . . . .").

Here, defense counsel seeks to depose Ms. Duncan and Mr. Goldsmith on an expedited basis in order to elicit information purportedly related to the instant motion. Specifically, in regard to Ms. Duncan, defense counsel asserts, *inter alia*, that her deposition "will show that she, while acting for plaintiffs, procured the unlawful detention of Mr. Zeltser . . . ." (Hoffman's May 9 Ltr. at 3.) In regard to Mr. Goldsmith, defense counsel asserts that he "had contact" with Zeltser and Ms. Duncan, and, therefore, Mr. Goldsmith has allegedly "injected himself as a witness in this case." (*Id.* at 4.)

However, notwithstanding the above-cited assertions regarding the need to depose these individuals, defense counsel has failed, once again, to adequately explain how the proposed deponents' testimony would be relevant to resolving any "jurisdictional facts" that are "in dispute." *APWU*, 343 F.3d at 627. Specifically, while defense counsel has identified certain correspondence by Ms. Duncan and Mr. Goldsmith with Belarusian authorities, as well meetings between Ms. Duncan and Belarusian authorities, the Court finds that he has not sufficiently demonstrated, either through evidentiary submissions or legal authority, that the testimony of these attorneys would be material to or bear upon a disputed jurisdictional fact in this case. Therefore, the Court denies defense counsel's request to depose Ms. Duncan and Mr. Goldsmith on an expedited basis. Of course, this holding should not be construed as limiting defense counsel's ability to obtain discovery of relevant information at a later stage of this action, at least where such information is reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

### C. Stay of the Action Against Zeltser

It is well settled that a court has the discretion to stay an action in the "interests of justice . . . ." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks and additional citation omitted). Here, plaintiffs request a stay of the action against Zeltser, subject to conditions requiring defense counsel to continue to search for the

documents listed in the OSC, to report on the status of Zeltser's detention, and to confer with plaintiffs upon Zeltser's release. For the following reasons, the Court orders a stay of the action against Zeltser pending his release from prison in Belarus.

At the hearing regarding the OSC, defense counsel asserted that he had not had a sufficient opportunity to address plaintiffs' request for a stay of the action against Zeltser. (May 8 Tr. at 33.) Nevertheless, defense counsel indicated that he "certainly ha[d] no objection and will undertake to give periodic reports to the Court" regarding the status of Zeltser's detention and would "confer[]" with plaintiffs upon Zeltser's release. (*Id.*) Moreover, since the date of the hearing, defense counsel has submitted six letters to the Court. In those letters, defense counsel has neither addressed plaintiffs' request, nor presented any arguments in opposition to the entry of a stay against Zeltser.

Thus, the Court finds that, under the circumstances of this case, the interests of justice require a stay of the action against Zeltser pending his release from prison in Belarus, subject to the following conditions: (1) defense counsel is under a continuing obligation to make reasonably diligent efforts to search for and to produce the documents that this Court ordered produced to plaintiffs' counsel in the OSC dated April 21, 2008; (2) defense counsel shall submit a letter every thirty days to plaintiffs' counsel and the Court regarding the status of Zeltser's detention in Belarus; and (3) immediately upon Zeltser's release from detention in Belarus, or as soon thereafter as is reasonably possible, defense counsel shall confer with plaintiffs regarding lifting the stay in this action.

The Court finds that the stay will not prejudice any of the parties to this action, or disserve the public interest in any way. Rather, the entry of a stay ensures that plaintiffs' claims against Zeltser will not be litigated in his absence.[10]

D. The Scope of the Instant Decision

Finally, the Court notes that the instant decision relates solely to defense counsel's motion to dismiss on jurisdictional grounds, his request to conduct jurisdictional discovery, and plaintiffs' request for a stay of the action against Zeltser. Nothing in this decision should be construed as bearing on the underlying merits of plaintiffs' claims. In this regard, the Court notes that defense counsel's May 21, 2008 letter refers to, and includes as an attachment, an order recently issued by a court in the Republic of Georgia, wherein, according to defense counsel, the court has appointed defendant Kay as "executor of the estate" at issue here. (*See* Hoffman's May 21, 2008 Ltr. at 1.) The order from the Georgian court does not alter this Court's conclusion as to the narrowly defined jurisdictional issues presented in the instant motion, and the Court takes no position as to the order's bearing, if any, on the underlying merits of plaintiffs' claims in this action.

Moreover, the instant decision should not be construed as conveying this Court's sanction of the extremely troubling circumstances and conditions of Zeltser's confinement in Belarus. Rather, this decision merely sets forth the Court's legal conclusions regarding the two issues — namely, the sufficiency of service and personal

---

[10] Defendant Kay has not taken a position on plaintiffs' request for a stay.

jurisdiction — raised by defense counsel's motion and plaintiffs' request for a stay.

### III. CONCLUSION

For the foregoing reasons, the Court denies Zeltser's defense counsel's motion to dismiss this action and his request to conduct expedited discovery. In addition, the Court hereby orders a stay of the action against defendant Zeltser pending his release from prison in Belarus.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: May 30 2008
New York, New York

\* \* \*

Plaintiffs are represented by Christopher K. Tahbaz, Esq, and Jennifer Cowan, Esq., Debevoise & Plimpton, LLP, 919 Third Avenue, 31st Floor, New York, New York 10022. Defendant Kay is represented by Scott M. Himes, Esq., Stillman, Friedman & Shechtman, P.C., 425 Park Avenue, New York, New York 10022. Defendant Zeltser is represented by Harold M. Hoffman, Esq., 1140 Avenue of the Americas, Suite M-01, New York, New York 10036.