UNITED STATES DISTRICT COURT            FILED
SOUTHERN DISTRICT OF NEW YORK     ELECTRONICALLY

-------------------------------------------------------------------- x

INNA GUDAVADZE, LIANA ZHMOTOVA and IYA  :
PATARKATSISHVILI,

                         :

             Plaintiffs,

                         :

v.                           08-civ-3363 (RJS)

                         :

JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI, A/K/A  :
JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI, A/K/A
IOSEB KAKIASHVILI) AND EMANUEL ZELTSER,  :

             Defendants.

-------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE

Christopher K. Tahbaz
Jennifer R. Cowan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Tel. (212) 909-6000

*Attorneys for Plaintiffs*

Dated: New York, New York
      June 16, 2008

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

    A.    The Georgia Action...............................................................................................2

    B.    Notice of the Anti-Suit Injunction .........................................................................5

LEGAL ARGUMENT ........................................................................................................6

I.    PROVISIONAL RELIEF IS NECESSARY TO PREVENT MR. KAY FROM OBTAINING AN ANTI-SUIT INJUNCTION. ..............................................................6

    A.    Plaintiffs Will Suffer Irreparable Harm if Mr. Kay Is Able to Obtain an Anti-Suit Injunction .............................................................................................7

    B.    Plaintiffs Are Likely to Succeed in Obtaining an Injunction Barring Mr. Kay From Seeking an Anti-Suit Injunction ...........................................................8

        1.    The First Requirement of the Test for an Anti-Suit Injunction Is Satisfied Because the Parties in Interest Are the Same in Both Matters. .....................................................................................................9

        2.    The Second Requirement is Inapplicable Because Plaintiffs Seek Only to Prevent Mr. Kay from Enjoining Further Prosecution of This Action...............................................................................................9

        3.    Even if the Second Threshold Requirement Is Applied, It Would Be Satisfied Because the Injunction That Plaintiffs Seek Will Dispose of Mr. Kay's Attempt to Block Prosecution of the Present Action...............................................................................................11

        4.    The Five *China Trade* Equitable Factors Weigh in Favor of Granting A Preliminary Injunction Enjoining Kay From Seeking An Anti-Suit Injunction in Georgia ...........................................................12

            a.    Protecting the Jurisdiction of this Court Is an Important Public Policy Worthy of an Anti-Suit Injunction ..........................13

            b.    The Other Equitable Factors Also Weigh In Favor Of Granting the TRO and Preliminary Injunction ..............................16

                i.    Vexatious ...........................................................................16

                ii.    Equitable Considerations ...................................................17

                iii.    Delay ..................................................................................18

C.    In the Alternative, Plaintiffs Have Raised Serious Questions Regarding
The Merits and the Balance of Hardship Favors Plaintiffs...................................18

CONCLUSION.........................................................................................................................20

Plaintiffs Inna Gudavadze, Liana Zhmotova and Iya Patarkatsishvili (collectively "Plaintiffs"), by their attorneys Debevoise & Plimpton LLP, respectfully submit this memorandum of law in support of their application for an order to show cause seeking a temporary restraining order and a preliminary injunction enjoining Defendant Joseph Kay from seeking an anti-suit injunction to prevent Plaintiffs from prosecuting this action.

## PRELIMINARY STATEMENT

In a pending action in the Supreme Court of Gibraltar, in which Plaintiffs in this case and Mr. Kay are defendants, Mr. Kay's counsel have informed the court that Mr. Kay intends to seek an anti-suit injunction in the action he has brought in the City Court in Tbilisi, Georgia (the "Georgia Action"), to prevent Plaintiffs from prosecuting this action before this Court. Plaintiffs make this application to prevent Mr. Kay from obtaining such an injunction.

As set forth in more detail below, Mr. Kay should not be permitted to effectively shut off this Court's ability to hear this action by obtaining an anti-suit injunction in Georgia. Plaintiffs' action in this Court centers on claims of fraud brought against two New York residents, one of whom is an attorney licensed to practice in New York. Critical events that are at the center of this case occurred in New York. In particular, two key documents Defendants have used to perpetrate their fraud were allegedly signed in New York, witnessed in New York, and notarized by a New York-licensed notary. Further, the Georgia Action is fashioned as a probate matter, and therefore it cannot encompass all of the claims currently pending here, nor those which Plaintiffs intend to add to this action in their amended complaint. In addition, one of the Defendants in this action, Emanuel Zeltser, is not a party to the action in Georgia, nor is there any basis to conclude that the Georgia Court would have personal jurisdiction over him, so an anti-suit injunction might effectively prevent plaintiffs from seeking relief for the harm caused

by Mr. Zeltser.  In addition, as explained more fully below, the Georgia Action was initiated and has proceeded in an irregular manner that raises concerns about the integrity of that proceeding.

For all of these reasons, Plaintiffs will be irreparably harmed if Mr. Kay obtains an anti-suit injunction in Georgia.  This Court should prevent him from doing so.

## FACTUAL BACKGROUND

### A.    The Georgia Action

On May 7, 2008, Mr. Kay filed *ex parte* a complaint against Plaintiff Inna Gudavadze with the Civil Case Board of Tbilisi City Court (the "Georgia Court"), in which he sought a judgment appointing him as the sole authorized executor of Mr. Patarkatsishvili's estate, and an injunction against Mrs. Gudavadze barring her from undertaking any action in connection with the estate.[1]  Although required to do so by Georgian civil procedure, Mr. Kay did not submit original signed testamentary documents in that action or explain his failure to that.  Instead he relied on photocopies that were incomplete on their face, lacking addenda referenced in the documents themselves.[2]  A certified translation of the Claim filed with the Georgia Court is attached to the Declaration of Jennifer R. Cowan, dated June 16, 2008 ("Cowan Decl."), as Exhibit A.

---

[1]    Plaintiffs do not believe that their actions in connection with the proceeding before this Court violate that injunction, in part because this is an action for fraud, not a purported probate proceeding, and therefore this proceeding does not address the distribution of assets from the estate.

[2]    The testamentary documents submitted in support of Mr. Kay's action in Georgia include the documents about which Plaintiffs have raised questions regarding authenticity in this action.

On May 14, 2008, in response to a separate *ex parte* request from Mr. Kay for preliminary relief against all three Plaintiffs in this action,[3] the Georgia Court issued an order (attached to the Cowan Decl. as Exhibit C).   In this order ("May 14 Order"), the Georgia Court granted Mr. Kay's request for provisional relief, and ruled as follows, in relevant part:

> [The Court decides]
>
> 2.   To forbid defendants:  Ina Gudavadze, Ia Patarkatsishvili and Liana Zhmotova to take any legal or/and factual actions against ownership, possession or giving the heritage [the estate] to another individual fully or partially;
>
> 3.   To grant the plaintiff Joseph Kay the right to provide any actions that he will deem necessary to collect and take care of Arkadi (Badri) Patarkatsishvili's heritage [i.e., estate], as well as sell it partially or fully if it is deemed necessary for the material interests of successors and to place the profit gained from the sale in the bank account of the Ministry of Justice, Supreme Council of General Courts Department. JSC "Bank Republic," account number 33050001, MFO—220101757; bank code 204856263.
>
> 4.   From the date of granting the decision, the petitioner will have 10 (ten) days to bring the suit to court against defendants Ia Patarkatsishvili and Liana Zhmotova;
>
> …
>
> 6.   The fulfillment of this decision should happen immediately and the official decision should be issued; [and]
>
> 7.   The decision can be appealed within 5 days. This date cannot be extended and it is valid from the time the decision is granted.

On May 27, 2008,[4] Plaintiffs filed an appeal against the May 14 Order on several procedural and substantive grounds, arguing that it was both unnecessary and unjustified under

---

[3]     A certified translation of the Application for Security filed with the Georgia Court by Joseph Kay on May 14, 2008 is attached to the Cowan Decl. as Exhibit B.

[4]     Due to delay in serving the Order and public holidays in Georgia, the appeal was filed within the time frame required by the May 14 Order.

Georgian law, because (*1*) Mr. Kay's request failed to satisfy the statutory grounds for provisional relief by not providing sufficient evidence to support his claims; (*2*) the request also failed to make a sufficient showing of urgency to justify a grant of relief with regard to actions not yet commenced; and (*3*) the judgment exceeded the court's authority to grant provisional relief, because it granted special powers to Mr. Kay to take steps that could significantly and adversely affect the assets of the estate, which would thus frustrate and nullify any eventual judgment in favor of Petitioners. *See* Certified translation of Plaintiffs' appeal in the Georgia Action, attached to the Cowan Decl. as Exhibit D. On June 10, 2008 that appeal was rejected by the Georgia court without detailed explanation. In particular, in its decision, the Georgia Court failed to address the Plaintiffs' arguments concerning the powers allocated to Mr. Kay by the May 14 Order. Contrary to the requirements of Georgian procedural law, the Georgia Court stated that Mr. Kay was not required to prove the circumstances he relied upon in his request for preliminary relief. An uncertified translation of that decision is attached to the Cowan Decl. as Exhibit E.

On May 28, 2008, Mr. Kay filed an amended Claim with the Georgia Court in which he added Iya Patarkatsishvili and Liana Zhmotova as defendants in the Georgia Action, , and advanced some new legal arguments. A certified translation of the amended Claim is attached to the Cowan Decl. as Exhibit F.

Plaintiff Inna Gudavadze, in her response filed with the Georgia Court on June 5, 2008, and Plaintiffs Iya Patarkatsishvili and Liana Zhmotova, in their respective responses filed with the Georgia Court on June 12, 2008, moved to dismiss Mr. Kay's complaint, as amended on May 28 2008, on a number of grounds, including violation of proper probate procedure by Mr. Kay and lack of jurisdiction by the Georgia Court to adjudicate the action.

4

### B.      Notice of the Anticipated Anti-Suit Injunction

The Georgia action is just one of several actions involving Plaintiffs and Mr. Kay. Plaintiffs and Mr. Kay are also defendants in *Miselva Establishment and Nexus Treuhand AG v. Gudavadze et al,* 2008 M No. 70, an action pending before the Chancery Division of the Supreme Court of Gibraltar.  That action was brought by the trustee of certain trusts to clarify who settled those trusts, which in turn will likely determine whether Plaintiffs, Mr. Kay or other individuals are the beneficiaries of those trusts.  Pursuant to Gibraltar procedural law, which incorporates English procedural law, the documents and testimony submitted in a civil action may be used only for the purposes of that action unless they are put into evidence at a public hearing, the party which submitted them agrees to their use for another purpose, or the court grants permission for their use for another purpose.  Under English civil procedure (and therefore Gibraltar civil procedure, which adopts the English rules), actions involving trusts are considered private.  Civil Procedure Rules 64 Practice Direction B para. 3.  Therefore, absent one of the exceptions above, all the documents submitted in the referenced Gibraltar action, other than the Claim Form, are considered private.

Plaintiffs here, as defendants in the Gibraltar action, sought and received approval from the Supreme Court of Gibraltar to use, in this action, the witness statements and attached exhibits of Andrew J. Baker, the director of the trustees which brought the action in Gibraltar (attached to the Cowan Decl. as Exhibit G and H).  We expect to rely on that material in subsequent submissions to this Court.  In opposing Plaintiffs' request, counsel for Mr. Kay in Gibraltar informed the Gibraltar court that Mr. Kay intended to present applications to the Georgia Court to issue anti-suit injunctions to prevent Plaintiffs from pursuing their action before this Court.

Counsel for Mr. Kay did not indicate when he would present those applications to the Georgia Court, and Plaintiffs are not aware of any application already filed in a Georgia court for

such relief.  But as Mr. Kay's initial application in Georgia was filed *ex parte*, and Plaintiffs were not aware of the application until after the Georgian court issued an order, Plaintiffs cannot say with certainty whether Mr. Kay has sought the anti-suit injunctions that Plaintiffs seek to enjoin through this application.

## LEGAL ARGUMENT

### I.    PROVISIONAL RELIEF IS NECESSARY TO PREVENT MR. KAY FROM OBTAINING AN ANTI-SUIT INJUNCTION.

A plaintiff is entitled to a temporary restraining order ("TRO") and a preliminary injunction upon a showing of:  (1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor.  *Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) (citing *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d 342, 348-49 (2d Cir. 2003)); *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992) (standards for TRO are same as those governing preliminary injunctive relief).  The standard does not change if the relief sought is an anti-suit injunction or an injunction enjoining a foreign anti-suit injunction.  Courts in this district, and elsewhere, have not hesitated to grant provisional relief (including a temporary restraining order) to enjoin a litigant's pursuit of anti-suit injunctions in a foreign court.  *See, e.g.*, *Storm LLC v. Telenor Mobile Communications AS*, No. 06 Civ. 13157 , 2006 U.S. Dist. LEXIS 90978, at *11-12 (S.D.N.Y. Dec. 15, 2006) (applying preliminary injunction standard and granting motion for anti-foreign suit injunction); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).  As set forth below, Plaintiffs clearly satisfy these requirements, making issuance of a TRO and a preliminary injunction both necessary and appropriate.

6

### A.    Plaintiffs Will Suffer Irreparable Harm if
###        Mr. Kay Is Able to Obtain an Anti-Suit Injunction

Absent a temporary restraining order and preliminary injunction enjoining Mr. Kay from obtaining an anti-suit injunction, Plaintiffs will suffer substantial irreparable harm for which monetary damages will not be an adequate remedy.  In this action, Plaintiffs have made significant allegations about Defendants' efforts to improperly gain control of Mr. Patarkatsishvili's assets located throughout the world.[5]  If Mr. Kay obtains an anti-suit injunction prohibiting Plaintiffs from pursuing this action, Plaintiffs will be unable to fully pursue their legal rights and will be irreparably harmed.  *Laker Airways*, 731 F.2d at 930-31 (affirming district court's preemptive injunction ordering defendants not to seek anti-suit injunctions in English courts because "the district court was threatened with a potential *fait accompli* by the appellants which would have virtually eliminated the court's effective jurisdiction").

Absent immediate injunctive relief, Plaintiffs will face a Hobson's choice of either abandoning their legal action in New York (which may be the only forum with jurisdiction over both Defendants) or potentially being held in contempt in Georgia – a country to which Plaintiffs maintain important family ties and where Mr. Kay is attempting to probate Mr. Patarkatsishvili's estate.  Even challenging such an anti-suit injunction in this Court might expose Plaintiffs to contempt charges.  Courts in this district and elsewhere have recognized that the threat of sanctions inherent in a foreign anti-suit injunction clearly represents irreparable harm.  *Storm LLC*, 2006 U.S. Dist. LEXIS 90978 at *37 (clear finding of irreparable harm where the foreign proceedings to be enjoined would place a party "under threat of criminal sanctions if it proceeds

---

[5]     The amended complaint that Plaintiffs intend to file will expand their claims to include Defendants' additional improper efforts to obtain control of Mr. Patarkatsishvili's assets, including assets that pass to Plaintiffs outside the estate.

with the arbitration"); *Laker Airways*, 731 F.2d at 927 (injunction warranted to prevent "an irreparable miscarriage of justice").

A temporary restraining order is similarly warranted because prior to a preliminary injunction hearing, Mr. Kay would have ample time to seek the anti-suit injunction at issue here. If Mr. Kay obtains the anti-suit injunction, it could be extremely difficult for Plaintiffs to reverse the injunction, as even pursuing relief in this Court might constitute a violation of the anti-suit injunction.

> **B.    Plaintiffs Are Likely to Succeed in Obtaining an Injunction Barring Mr. Kay from Seeking an Anti-Suit Injunction**

The requested TRO and preliminary injunction are also warranted because all of the applicable requirements for an anti-suit injunction are satisfied here.  Accordingly, Plaintiffs are likely to succeed on the merits.  In this Circuit, the threshold requirements to obtain a foreign anti-suit injunction are that (1) "the parties are the same in both matters," and (2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined."  *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (explaining the test set forth in *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)).  The first threshold requirement is clearly satisfied here. The second threshold requirement does not logically apply to cases in which the applicant is seeking to enjoin less than the entire action.  The Second Circuit has not spoken directly to this issue, but this Court should follow the lead of courts in other circuits and not apply the second requirement because Plaintiffs do not seek to enjoin the Georgia Action in its entirety.  However, even if the second threshold requirement were held to apply, it too would be satisfied, because the injunction sought by Plaintiffs will dispose of that portion of the Georgia Action which

Plaintiffs seek to enjoin, namely Mr. Kay's attempt to secure an anti-suit injunction from the Georgia Court.

> **1.      The First Requirement of the Test for an Anti-Suit Injunction Is Satisfied Because the Parties in Interest Are the Same in Both Matters.**

The threshold requirement of identity of the parties is not enforced literally; rather, the test is whether there is sufficient similarity between the parties that the litigants in the foreign action are "substantially the same" as those before the enjoining court.  *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs, Inc.*, No. 02 Civ. 9369(DFE), 2003 WL 23641529, at *11 (S.D.N.Y. June 4, 2003), *aff'd*, 369 F.3d 645, 652 (2d Cir. 2004).  In this case, the requirement is easily satisfied, as all the parties to the Georgia Action are also parties in the present action before this Court, and Mr. Zeltser (who is not a party to the Georgia Action) will not be affected by the narrow anti-suit injunction sought here.  *See Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666 (JSR), 2003 WL 56998 at *2 (S.D.N.Y. Jan. 7, 2003) (concluding that the requirement was satisfied, even though not all parties to the two actions were identical, because "the real parties in interest are the same in both matters") (attached to the Cowan Decl. as Exhibit I).

> **2.      The Second Requirement Is Inapplicable Because Plaintiffs Seek Only to Prevent Mr. Kay from Enjoining Further Prosecution of This Action.**

The Second Circuit has not yet directly addressed whether the second threshold requirement articulated in *China Trade* applies to injunctions that seek to block only a narrow aspect of the foreign proceeding—in this case an anti-suit injunction—rather than the entire action.  An examination of the reasons underlying that threshold requirement, and the approaches adopted by courts in other circuits, demonstrates that the second *China Trade* requirement—that

the action before this Court be dispositive of the foreign litigation—should be applied only in cases in which the applicant seeks to enjoin the entire foreign action.

Requiring the United States action to be dispositive of the entire foreign action, when an applicant has sought only to bar certain aspects of a foreign action, would extend the scope of the requirement beyond its logical bounds. The requirement is designed to ensure that the injunction sought in the United States does not deny the other party a forum for its claims. *See, e.g.*, *Canon Latin America, Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 602 (11th Cir. 2007) (applying the *China Trade* test and finding that the second requirement not satisfied because the "Costa Rican action hinge[d] on statutory rights that are unique to Costa Rica and that cannot be resolved by a judgment of the district court on Canonlat's claims in Florida" and collecting cases with similar rulings from the First, Seventh, and Eighth Circuits).

When courts in other circuits have considered factual circumstances similar to those here, they have not hesitated to issue injunctions to enjoin parties from seeking anti-suit injunctions in other foreign actions. *See, e.g.*, *Laker Airways*, 731 F.2d at 929 (concluding that the rule generally permitting concurrent actions also "authorizes the domestic court to resist the attempts of a foreign court to interfere with an *in personam* action before the domestic court"); *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18–19 (1st Cir. 2004) (holding that an injunction was appropriate to block a possible Belgian judgment that would prevent plaintiffs from enforcing the district court's discovery order); *id.* at 20 (concluding that "a court has a right—indeed, a duty—to preserve its ability to do justice between the parties in cases that are legitimately before it"); *Mut. Serv. Cas. Ins. Co. v. Frit Indus., Inc.*, 805 F. Supp. 919, 924 (M.D. Ala. 1992) *aff'd*, 3 F.3d 442 (11th Cir. 1993) (enjoining a party from seeking injunctive relief in an Isle of Man court even though the "foreign litigation is … not entirely

parallel to the proceeding before this court; it is instead an attempt to carve out exclusive

jurisdiction over the action in the Isle of Man and to terminate the action before this court.").

Plaintiffs do not seek to enjoin the Georgia Action in its entirety, but seek only a narrow

preliminary injunction to ensure that this Court retains the ability to reach a judgment on the

claims brought (and those that will be brought in the amended complaint) in the present action.

The question, therefore, is not whether the injunction would deny Mr. Kay a forum in Georgia,

but whether Mr. Kay should be allowed to deny Plaintiffs a forum here.  *See Laker Airways*, 731

F.2d at 930–31 (upholding the injunction because "the district court was threatened with a

potential *fait accompli* by the appellants which would have virtually eliminated the court's

effective jurisdiction over Laker's facially valid claim" and concluding that "there was nothing

improper in the district court's decision to enjoin appellants from seeking to participate in …

proceedings solely designed to rob the court of its jurisdiction").  In these circumstances, the

second *China Trade* requirement should not apply, and the Court should instead look to the other

*China Trade* factors, all of which support Plaintiffs' application for a TRO and preliminary

injunction.

> **3.**   **Even if the Second Threshold Requirement Is Applied,
> It Would Be Satisfied Because the Injunction That
> Plaintiffs Seek Will Dispose of Mr. Kay's Attempt to
> Block Prosecution of the Present Action**

If this Court determines that the second *China Trade* threshold requirement should apply

to instances in which the requested preliminary injunction seeks to enjoin only one aspect of the

foreign proceeding, that requirement is satisfied with respect to the limited relief that Plaintiffs

seek.  The sole issue before the Georgia Court, with respect to the aspect of the Georgia Action

that Plaintiffs seek to enjoin (Mr. Kay's application for an anti-suit injunction), would be

whether Plaintiffs may continue to prosecute their claims before this Court.  That question will

be fully resolved by this Court's ruling on Plaintiffs' current application for a preliminary injunction.

In determining whether the second *China Trade* requirement is met, courts in this district and elsewhere have looked to the subject matter of the injunction being sought and how it will affect the proceedings in the foreign jurisdiction. For example, the district court in *Motorola Credit Corp.* issued a mandatory injunction requiring the defendants to end their Turkish actions, and seek *vacatur* of the related injunctions, where the only question before the foreign court was arbitrability, which the district court had already decided in the plaintiff's favor. *See* 2003 WL 56998 at *2. Similarly, in *Software AG, Inc. v. Consist Software Solutions, Inc.*, the court concluded that the second *China Trade* requirement was satisfied because, among other things, "the injunctions that [the defendant had] obtained *ex parte* interfere with this Court's ability to issue valid and binding orders directed to the same subject matter." No. 08 Civ. 389 (CM)(FM), 2008 WL 563449, at *24 (S.D.N.Y. Feb 21, 2008). In *Laker Airways*, the leading case on defensive anti-suit injunctions, the District of Columbia Circuit upheld an anti-suit injunction against English injunctions that had sought "only to quash the practical power of the United States courts to adjudicate claims … against defendants admittedly subject to the courts' adjudicatory jurisdiction," and emphasized that the foreign injunctions were "not entitled to comity" because "the action before the United Kingdom courts [was] specifically intended to interfere with and terminate" the plaintiff's United States suit. 731 F.2d at 938.

### 4.    The Five *China Trade* Equitable Factors Weigh in Favor of Granting A Preliminary Injunction Enjoining Kay From Seeking An Anti-Suit Injunction in Georgia

Pursuant to the analysis in *China Trade*, after determining whether the two threshold requirements for obtaining an injunction against a foreign proceeding are met, the Court must then assess whether five equitable factors weigh in favor of such relief. The five factors are:

(1)   Whether allowing the foreign litigation would frustrate an important policy in the enjoining forum;

(2)   Whether the foreign action would be vexatious;

(3)   Whether the foreign action would pose a threat to the issuing court's jurisdiction;

(4)   Whether the foreign proceedings prejudice other equitable considerations; and

(5)   Whether allowing the foreign litigation would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*American Home Assurance Co. v. Insurance Corp. of Ireland Ltd.*, 603 F. Supp. 636, 642 (S.D.N.Y. 1984) (citations omitted).  One court in this district has described the equitable analysis as an exercise in "informed discretion."  *Motorola Credit Corp.*, 2003 WL 56998 at *3.

Of these five factors, two are considered the most significant:  whether the action threatens the issuing court's jurisdiction, and whether allowing the foreign action would conflict with the court's "'strong public policies.'"  *Karaha Bodas*, 500 F.3d at 119 (quoting *China Trade*, 837 F.2d at 36).  Plaintiffs' instant request satisfies both of the two most important factors, because protecting the jurisdiction of this court *is* an important public policy, and it also satisfies the three additional equitable factors supporting the grant of a preliminary injunction.

### a.   Protecting the Jurisdiction of this Court Is an Important Public Policy Worthy of an Anti-Suit Injunction

Although "[t]he standard for refusing to enforce judgments on public policy grounds is strict," *Laker Airways*, 731 F.2d at 931, courts have enjoined foreign proceedings to further the policy of protecting the jurisdiction of courts in the United States where the foreign court seeks to intrude upon "properly invoked United States concurrent jurisdiction."  *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V.,* 310 F.3d 118, 128 (3d Cir. 2002) (noting that the "policies that the *Laker Airways* court found to justify an anti-suit injunction were not those

motivating United States antitrust laws – the substance of the dispute – but instead 'that United States judicial functions have been usurped, destroying the autonomy of the courts.'" (quoting *Laker Airways*, 731 F.2d at 939)).  Protection of this Court's autonomy is an important public policy, and warrants an anti-suit injunction enjoining Mr. Kay from "usurping" this Court's jurisdiction.  Here, Mr. Kay apparently plans to seek an anti-suit injunction for the sole purpose of interfering with the jurisdiction of this Court and preventing Plaintiffs from vindicating their rights in this Court.

In determining whether to grant an anti-suit injunction, New York courts give strong consideration to whether the foreign action infringes upon the jurisdiction of the U.S. court.  "[I]f a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may … be necessary to protect the enjoining court's jurisdiction."  *China Trade*, 837 F.2d at 36 (concluding ultimately that there was no threat to the district court's jurisdiction as the foreign court had not attempted to enjoin the New York action); *see also Int'l Equity Invs. Inc. v. Opportunity Equity Partners Ltd.*, 441 F.Supp.2d 552, 563 (S.D.N.Y. 2006) (ruling that an anti-suit injunction is justified "when a party seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court." (quotations and citations omitted)).

In *Motorola Credit Corp.*, for example, the plaintiffs moved for an injunction to prevent defendants from further litigating a parallel civil action in Turkey in which the defendants had obtained an *ex parte* anti-suit injunction enjoining the U.S. proceedings.  Judge Rakoff held that the foreign court's injunction against the New York action clearly infringed upon that court's jurisdiction, given that the "Turkish injunction suit … purported to stay proceedings in, and to

nullify preliminary orders issued by, [the] [c]ourt…" *Motorola Credit Corp.*, 2003 WL 56998 at

* 6.

A similar holding resulted in *Laker Airways*, where the English Court of Appeal enjoined

the plaintiff from litigating its claims against the British defendants in the U.S. district court.  In

order to protect its jurisdiction, the district court enjoined other defendants in the case from

seeking similar injunctions from the English Court of Appeal.  On appeal, the D.C. Circuit

affirmed and found that:

> where the foreign proceeding is not following a parallel track but
> attempts to carve out exclusive jurisdiction over concurrent
> actions, an injunction may be necessary to avoid the possibility of
> losing validly invoked jurisdiction.

731 F.2d at 930.

As in the *Motorola* and *Laker Airways* cases, the anti-suit injunction apparently to be

sought by Mr. Kay is, by design, intended to "carve out" this Court's jurisdiction, as it would

prevent the very prosecution of this action.  This Court should protect its concurrent jurisdiction

and enjoin Mr. Kay from seeking an anti-suit injunction in the Georgia Action.

Furthermore, this action involves allegations of fraud by two New York residents (one of

whom is an attorney licensed by the State of New York) based on actions which took place, in

part, in New York.  At least two of the documents at issue were allegedly signed in New York

and were notarized by a New York-licensed attorney who is also licensed as a notary in New

York.  There is eyewitness testimony that calls into question the authenticity of those documents,

as Mr. Patarkatsishvili could not have signed the documents in New York on the dates on which

they were notarized.  Resolving claims of fraud with such strong ties to New York should be a

public policy priority of the Court, as these claims are well within its jurisdiction.

          **b.**       **The Other Equitable Factors Also Weigh in Favor of Granting the TRO and Preliminary Injunction**

Although the jurisdictional and public policy-related factors of the *China Trade* test are accorded particular significance, the remaining three factors of the test also weigh in favor of granting the narrow anti-suit injunction Plaintiffs seek here. *See Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389, 2008 U.S. Dist. LEXIS 19347, at *63 (S.D.N.Y. Feb. 21, 2008) (stressing that "*all* of the additional factors should be considered when determining whether an anti-suit injunction is warranted") (emphasis in original).

### i.      Vexatious

As defined in Second Circuit foreign anti-suit injunction cases, "vexatious" is a remarkably apt description of the Georgia Action. In *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157, 2006 U.S. Dist. LEXIS 90978, at *26 (S.D.N.Y. Dec. 15, 2006), the court granted an anti-suit injunction, in part because "[t]he foreign litigation here has been conducted in the most vexatious way possible," by which the court meant that the moving party "found its interests undermined by litigation to which it [was not] made a party, and of which it [had] not even received notice until after orders [had] been entered." The court found that the adverse party's maneuvers amounted to "a kind of stealth attack," which was not only vexatious, but also, in connection with the fourth factor, prejudicial to equitable concerns of fair play. *Id.* at *27.

The manner in which Mr. Kay filed his *ex parte* application and obtained an injunction against the Plaintiffs in the Georgia Action (and the unnecessary scope of that order) is a strong indication of the vexatious nature of the Georgia proceedings. *See Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389, 2008 U.S. Dist. LEXIS 19347, at *72 (S.D.N.Y. Feb. 21, 2008) (noting that defendants' prior tactics made it likely that the proceedings in Brazil

would be vexatious).  The Georgia Action purports to be a probate action, and under normal

circumstances, probate in Georgia is commenced by presenting original testamentary documents

to a notary in Georgia, rather than seeking declaratory relief from a court on the basis of

photocopied documents without explaining the absence of the originals.  In addition, the Georgia

Court granted relief to Mr. Kay far beyond what was necessary to preserve the status quo and

granted that injunction without requiring sufficient evidence to support his claims, contrary to the

typical procedure.  The Georgia Action is not merely inconvenient for the Plaintiffs, but colored

by bad faith and deception.

### ii.    Equitable Considerations

Other equitable considerations also support an injunction here because failure to enjoin

Mr. Kay's desired anti-suit injunction would "prejudice[] equitable considerations."  *See id.* at

*71-72.  Indeed, as described above, Mr. Kay has litigated the Georgia Action in an unorthodox

and prejudicial manner, obtaining an injunction against the Plaintiffs—Mr. Patarkatsishvili's

own immediate relatives—to prevent action with respect to his estate, and doing so without

providing notice to Plaintiffs.

An assessment of the Georgian Action also must take into account the current state of the

Georgian courts.  The judicial system in Georgia has generally been criticized as subject to

government pressure and lacking in independence.  *See, e.g.*, United States Dep't of State,

Bureau of Democracy, Human Rights, and Labor, *Georgia:  Country Reports on Human Rights*

*Practices – 2007*, at 8 (Mar. 11, 2008), http://www.state.gov/g/drl/rls/hrrpt/2007/100560.htm,

attached to the Cowan Decl. as Exhibit J; United Kingdom Foreign & Commonwealth Office,

*Human Rights Annual Report 2006*, at 148 (Oct. 2006), http://www.official-

documents.gov.uk/document/cm69/6916/6916.pdf, attached to the Cowan Decl. as Exhibit K;

United Nations Human Rights Comm., *Concluding observations - Georgia*, U.N. Doc.

17

CCPR/C/GEO/CO/3/CRP.1, at 4 (Oct. 19, 2007),

http://www2.ohchr.org/english/bodies/hrc/docs/CCPR.C.GEO.CO.3.CRP.1.pdf, attached to the

Cowan Decl. as Exhibit L. Plaintiffs are particularly concerned that the court may be influenced

by the contentious history between the current Georgian administration and Mr. Patarkatsishvili,

who was an opponent of the administration. Given this background, there are significant

questions as to whether Plaintiffs would be able to bring the claims pending in this action before

the Georgia Court (even if there were jurisdiction over Mr. Zeltser) and have a fair hearing.

These questions make the injunction sought by Plaintiffs particularly necessary.

### iii.  Delay

The anti-suit injunction pursued by Mr. Kay in Georgia would, by definition, delay the

action in this Court, which in all likelihood would have to be stayed indefinitely. *See Storm*

*LLC*, 2006 U.S. Dist. LEXIS 90978 at *28 (noting extensive delays caused by concurrent

litigation in the American and Ukrainian courts). In the instant action, if the Georgia Court were

to grant the injunction, to avoid legal jeopardy, Plaintiffs possibly would need to request an

indefinite stay of these proceedings, during which time Plaintiffs would fight the anti-suit

injunction. Such delay would be avoided by protecting Plaintiffs' right to pursue the current

proceedings by issuing the injunction requested here.

### C.  In the Alternative, Plaintiffs Have Raised Serious Questions Regarding The Merits and the Balance of Hardship Favors Plaintiffs

Plaintiffs have clearly established that they will likely succeed on the merits of their

request for a preliminary injunction. But even if they had not done so, for the reasons set forth

above, the alternative standard for a preliminary injunction has been met. *See Lusk,* 475 F.3d at

485 (citing *Bronx Household of Faith v. Bd. of Educ.,* 331 F.3d at 348-49). Plaintiffs have raised

serious questions regarding the merits of the anti-suit injunction that Mr. Kay intends to seek in

Georgia, and the balance of hardship favors Plaintiffs.  The preliminary injunctive relief sought by Plaintiffs is narrow; Plaintiffs seek only to block Mr. Kay from obtaining an injunction in Georgia that could put Plaintiffs in legal jeopardy if they continue to prosecute this lawsuit in this Court.

In contrast, if Mr. Kay is permitted to seek an anti-suit injunction in Georgia, and the court grants it, Plaintiffs will be severely harmed because they may not be able to take any action with respect to this lawsuit without putting themselves in legal jeopardy in Georgia.  If the relief sought by Plaintiffs is granted and Mr. Kay is prevented from seeking his injunction, he can still present his arguments about why this case should be dismissed to this Court as part of a motion to dismiss.  Mr. Kay will suffer no legitimate harm by making those arguments as part of a motion to dismiss in this Court, instead of being permitted to make an end run around this Court by seeking an anti-suit injunction in Georgia.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court grant a temporary restraining order and preliminary injunction enjoining Mr. Kay from seeking an injunction preventing Plaintiffs from pursuing this litigation in this Court.

Dated: New York, New York
June 16, 2008

Respectfully Submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ Christopher K. Tahbaz

Christopher K. Tahbaz
Jennifer R. Cowan
919 Third Avenue
New York, New York  10022
Tel. (212) 909-6000
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
INNA GUDAVADZE, LIANA ZHMOTOVA and IYA          :
PATARKATSISHVILI,                                :
                                                 :
                        Plaintiffs,              :
                                                 :
            v.                                   :   08-Civ-3363 (RJS)
                                                 :
JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI,           :
A/K/A JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI,      :
A/K/A IOSEB KAKIASHVILI) AND EMANUEL             :
ZELTSER,                                         :
                        Defendants        x      :
-----------------------------------------------------------------------

## CERTIFICATE OF SERVICE

I, Jennifer R. Cowan, am a member of the bar of the State of New York and of

this Court and counsel in the New York office of the law firm of Debevoise & Plimpton

LLP, attorneys for Plaintiffs Inna Gudavadze, Liana Zhmotova and Iya Patarkatsishvili.

I am over eighteen (18) years of age.  On June 17, 2008, per the Order to Show

Cause issued by Judge Sullivan on June 17, 2008, I caused to be served copies of the

within:

    i)        Memorandum Of Law In Support Of Plaintiffs' Application For An Order

                To Show Cause;

    ii)       Declaration Of Jennifer R. Cowan, Esq. In Support Of Application For

                Temporary Restraining Order And An Order To Show Cause For

                Preliminary Injunction

iii)    [Proposed] Temporary Restraining Order And Order To Show Cause For

Preliminary Injunction; and

iv)    Plaintiffs' Verified Complaint of April 4, 2008

by hand delivery upon Scott M. Himes, Esq., counsel for Defendant Joseph Kay,

at the following address:

>Scott M. Himes, Esq.
>Stillman, Friedman & Shechtman, P.C.
>425 Park Avenue
>New York, NY 10022

I also served copies by overnight courier on Harold M. Hoffman, Esq., counsel

for Defendant Emanuel Zeltser at the following address, per the request of Mr. Hoffman:

>Mr. Harold M. Hoffman, Esq.
>75 Grand Avenue
>Englewood, NJ  07631

I also sent an electronic copy of the Order to Show Cause as issued by Judge

Sullivan on June 17, 2008 via email to Mr. Hoffman's business email address and to Mr.

Himes' business email address.

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the

foregoing is true and correct.

Executed on June 18, 2008

>_/s/ Jennifer R. Cowan_
>Jennifer R. Cowan, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
INNA GUDAVADZE, LIANA ZHMOTOVA and IYA     :
PATARKATSISHVILI,     :
    :
            Plaintiffs,     :
    :
            v.     :   08-Civ-3363 (RJS)
    :
JOSEPH KAY (A/K/A JOSEPH KAKALASHVILI,     :
A/K/A JOSEPH KEJ, A/K/A IOSEB KAKALASHVILI,     :
A/K/A IOSEB KAKIASHVILI) AND EMANUEL     :
ZELTSER,     :
            Defendants     x
----------------------------------------------------------------------

## CERTIFICATE OF SERVICE

I, Jennifer R. Cowan, am a member of the bar of the State of New York and of

this Court and counsel in the New York office of the law firm of Debevoise & Plimpton

LLP, attorneys for Plaintiffs Inna Gudavadze, Liana Zhmotova and Iya Patarkatsishvili.

I am over eighteen (18) years of age. On June 17, 2008, per the Order to Show

Cause issued by Judge Sullivan on June 17, 2008, I caused to be served copies of the

within:

      i)      Memorandum Of Law In Support Of Plaintiffs' Application For An Order

              To Show Cause;

      ii)     Declaration Of Jennifer R. Cowan, Esq. In Support Of Application For

              Temporary Restraining Order And An Order To Show Cause For

              Preliminary Injunction

iii)    [Proposed] Temporary Restraining Order And Order To Show Cause For

        Preliminary Injunction; and

iv)    Plaintiffs' Verified Complaint of April 4, 2008

by hand delivery upon Scott M. Himes, Esq., counsel for Defendant Joseph Kay,

at the following address:

> Scott M. Himes, Esq.
> Stillman, Friedman & Shechtman, P.C.
> 425 Park Avenue
> New York, NY 10022

I also served copies by overnight courier on Harold M. Hoffman, Esq., counsel

for Defendant Emanuel Zeltser at the following address, per the request of Mr. Hoffman:

> Mr. Harold M. Hoffman, Esq.
> 75 Grand Avenue
> Englewood, NJ  07631

I also sent an electronic copy of the Order to Show Cause as issued by Judge

Sullivan on June 17, 2008 via email to Mr. Hoffman's business email address and to Mr.

Himes' business email address.

Pursuant to 28 U.S.C. § 1746, I certify under the penalty of perjury that the

foregoing is true and correct.

Executed on June 18, 2008

/s/ Jennifer R. Cowan
Jennifer R. Cowan, Esq.
